

U.S. Department of Justice

United States Attorney
Eastern District of New York

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 10, 2023

**By ECF**

Honorable Nina R. Morrison
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:   *United States v. Rare Breed Triggers, LLC, et al.*,
            No. 23-cv-369 (Morrison, J.) (Levy, M.J.)

Dear Judge Morrison:

      Pursuant to Local Civil Rule 37.3(c), the United States respectfully submits this letter in opposition to Defendants' February 9, 2023 Motion to Quash or Modify Subpoena (Defendants' Motion) (Dkt. 17). As discussed below, Defendants' Motion should be denied.

      Defendants are challenging personal jurisdiction. In so doing, they are putting into issue their contacts with New York. In other words, they are putting into issue their business transactions in New York. Such contacts include their financial accounts in New York, accounts that they chose to create, use, and direct their customers to use. That is what the subpoena to JP Morgan Chase is about.

      As noted in the Declaration of Special Agent Daniel Koneschusky filed with the United States' Complaint, in one month alone, Defendants sold over 1,300 triggers using a JP Morgan Chase account in New York. *See* Dkt. 7 at ¶ 21. These sales involved the wiring of funds from Defendants' customers to New York as per instructions written by Defendant Lawrence DeMonico, *see* Exhibits A, B, and according to Defendants' "process," *see* Exhibit C.

      Establishing personal jurisdiction here may require an analysis of New York's long-arm statute.[1] Under that statute, personal jurisdiction attaches to anyone who "transacts any business with the state." N.Y. C.P.L.R. § 302(a)(1). Proof of one transaction in New York is sufficient to

---

[1] As the United States will more fully explain in its opposition to Defendants' anticipated motion to dismiss for personal jurisdiction, establishing jurisdiction under New York's long-arm statute is only one of several ways that Defendants are subject to this Court's jurisdiction. For instance, 18 U.S.C. § 1345 states that "the Attorney General may commence a civil action in *any* Federal court" (emphasis added). This means that the relevant jurisdictional analysis is contacts with the *United States*, not a particular state. "When a national sovereign is applying national law, the relevant contacts are the contacts between the defendant and the sovereign's nation." *In re Oil Spill by Amoco Cadiz*, 954 F.2d 1279, 1294(7th Cir. 1994).

invoke jurisdiction. *See Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). And the Second Circuit has made clear that the use of a bank account in New York, by way of wire transactions, satisfies both New York's long-arm statute and Constitutional Due Process requirements. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167-74 (2d Cir. 2013).

The subpoena here merely seeks the very information relevant to determining personal jurisdiction pursuant to that law, information which, the Government contends, will further establish personal jurisdiction based on Defendants' use of New York financial accounts. Put simply, the information is relevant. *See In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) ("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)"). And Defendants have not met their burden to quash the subpoena. *See Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. 12-CV-6383 (Bianco, J.) (Tomlinson, M.J.), 2017 WL 1133349, at *3 (E.D.N.Y. Mar. 24, 2017) ("Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome.") (citations omitted).

That the subpoena asks for due diligence materials does not make it somehow overbroad. Defendants are challenging jurisdiction over two individuals. Knowing the relationship of these individuals to these accounts is vital. And, pursuant to due diligence regulations, banks must identify the beneficial owners of business accounts, which include persons who have certain ownership stakes in the account holder and persons who manage or control the account holder. *See* 31 C.F.R. § 1010.230(a), (d). Knowing who those people are, here, will establish which individuals availed themselves of the privilege of doing business in New York. *See Licci*, 732 F.3d at 168. Obtaining emails or other correspondence between Defendants and the bank, which Defendants also suggest is problematic, is similarly relevant to jurisdiction, and for the same reasons. Such correspondence will show who used the business accounts.

Additionally, the subpoena does not implicate privacy issues for the Defendants. Defendants raise general privacy concerns about the financial information that is subject to the subpoena. Notably, they cite to no authority to support their contention that such privacy interests apply to the material because such authority does not exist. There is no general privacy interest in financial information. *See United States v. Miller*, 425 U.S. 435, 442-43 (1976). An account holder "takes the risk, in revealing his affairs to another, that the information will be conveyed" further. *Id*. at 443. To the extent that there are privacy interests in financial accounts, those interests are enshrined in the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401, *et seq*.[2] But by its very terms, the RFPA does not extend privacy protections to accounts held by corporations or LLC's. *See* 12 U.S.C. §§ 3401(4), (5), 3403(a); *see also Giannone v. Bank of America, N.A.* 812 F.Supp.2d 216, 224 n.7 (E.D.N.Y. 2011); *Exchange Point LLC v. SEC*, 100 F.Supp.2d 172, 173-76 (S.D.N.Y. 1999). And in any event, the RFPA does not apply to the disclosure of financial information under the Federal Rules of Civil Procedure in connection with litigation to which the United Sates and the customer are a party. *See* 12 U.S.C. § 3413(e). In

---

[2] The RFPA was passed in response to the *Miller* case.

short, "sensitive financial information is generally discoverable in federal court." *In re Rule 45 Subpoena Issued to JP Morgan-Chase, N.A.,* 319 F.R.D. 132, 134 (S.D.N.Y. 2016) (Rakoff, J.)

Nor does the subpoena implicate privacy issues for the Defendants' customers. First, as noted above, there is no general privacy interest in financial information. Second, the RFPA does not extend its protections to the customers of an account holder, even if the account holder is entitled to protections under the Act (and, here, the account holder is not). Third, there is something of an irony in Defendants' seeking to keep their customers' information from law enforcement. After all, as the United States has alleged, Defendants misled their customers about the legality of their products, many of whom do not want to purchase or possess illegal items.[3] Fourth, Defendants themselves have taken no steps, as far as the United States is aware, to protect the privacy interests of their customers. Defendants have freely shared their customers' information with shippers like the United States Postal Service and UPS, and have required their customers to share their information with banks and credit card companies in order to purchase products from them.

Defendants' focus on *Silverstone Holding Group, LLC v. Zhongtie Dacheng*, 2023 WL 163256 (S.D.N.Y. 2023) is inapt.[4] In the case, a party to a foreign arbitral award sought financial records of an account held by a financial services company. That company was not a party to the arbitral award, and the financial information in the subpoenaed account held no information about the finances of any party to the arbitral award. There was no connection between the financial information and the arbitration. Such is not the case here. The information that JP Morgan Chase holds is Defendants' information. And it is information specifically about the sales that Defendants made of the products at issue in this case.

The United States is prepared to argue Defendants' motion at any time prior to the currently scheduled hearing date on February 15. The United States is concerned about the ability of JP Morgan Chase to respond to the subpoena in a timely fashion, which could cause prejudice. Moreover, Defendants chose to ignore relevant local and federal rules, *see e.g.*, Local Rule 37.3(a) and Fed. R. Civ. P. 37(a)(1), and the Court's February 3 Order directing the parties to resolve any disputes before bringing a motion to the Court. Instead, Defendants brought a motion and, at the same time, requested that JP Morgan Chase "not comply with the subpoena pending resolution of the motion to quash or modify, or unless ordered to do so by the court." *See* Exhibit D.[5]

---

[3] Defendants make some vague allegations about government harassment. They do so without citing any specific instance. Nor can they, as the government has not "harassed" any individual purchaser of one of Defendants' products.

[4] For the purposes of the current motion only, the United States is not challenging Defendants' standing to bring a motion to quash. The United States reserves its right to make such a standing challenge in any future motion to quash that Defendants may bring.

[5] Defendants' make mention of *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023). That mention is a red herring. First, as noted in *The United States of America's Memorandum of Law in Support of its Motion for a Temporary Restraining Order and Preliminary Injunction*, *Cargill* is an outlier among the Circuit Courts of Appeals. *See* Dkt. 5 at pp. 2-5. Second, even if the regulation at issue here and in *Cargill*

                                      Respectfully submitted,

                                      BREON PEACE
                                      United States Attorney

By:    */s/ Michael S. Blume*
            Michael S. Blume
            Joseph Marutollo
            Paulina Stamatelos
            Assistant U.S. Attorneys
            (718) 254-6479 / 6288 / 6198
            Michael.Blume@usdoj.gov
            Joseph.Marutollo@usdoj.gov
            Pauline.Stamatelos@usdoj.gov

---

is invalid (it is not), Defendants' products are illegal under the relevant statutes. Third, *Cargill* dealt with non-mechanical bump stocks used to modify firearms. These bump stocks do not in any way change the triggers on firearms, unlike the products at issue here, which are entirely new triggers that alter the mechanical functioning of the firearms into which they are installed. Fourth, *Cargill* goes to the merits of Defendants' anticipated argument, not to an issue involving a discovery dispute. The United States will address the case more fully should it be necessary and at the appropriate time.