```
1                    UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3     UNITED STATES OF AMERICA,
                                        Case No. 1:23-cv-00369-NRM-RML
4                    Plaintiff,

5     v.                               Brooklyn, New York
                                        February 14, 2023
6     RARE BREED TRIGGERS, LLC, et      6:05 p.m.
      al,
7                                        via video
                     Defendant.
8

9          TRANSCRIPT OF DEFENDANTS' MOTION TO QUASH HEARING
                BEFORE THE HONORABLE NINA R. MORRISON
10                UNITED STATES DISTRICT COURT JUDGE

11    APPEARANCES:
      For the Plaintiff:          Joseph A. Marutollo, Esq.
12                                 Michael Blume, Esq.
                                   Paulina Stamatelos, Esq.
13                                 U. S. Attorney's Office
                                   271 Cadman Plaza East
14                                 Brooklyn, NY 1120111201

15    For the Defendant:          Caleb Kruckenberg, Esq.
                                   Steven Simpson, Esq.
16                                 Pacific Legal Foundation
                                   3100 Clarendon Blvd Suite 1000
17                                 Arlington, VA 20036-9005

18    Clerk:                      B.C.

19    Court Recorder:            Electronic Sound Recording

20    Transcription Service:     Chris Hwang
                                   Abba Reporting
21                                 PO Box 223282
                                   Chantilly, Virginia  20153
22                                 (518) 302-6772

23

24    Proceedings recorded by electronic sound recording;
      transcript produced by transcription service.
25
```

1          (Call to order at 6:05 p.m.)

2              THE COURT:  Good evening, everyone.

3              MR. KRUCKENBERG:  Good evening, Your Honor.

4              THE COURT:  Call the case, please.

5              THE CLERK:  Sure, Judge.  Civil cause for video

6      conference for case number 23-CV-369, United States of America

7      v. Rare Breed Triggers, LLC, et al.

8              Counsel, please state your appearance for the record,

9      starting with the Plaintiff?

10             MR. BLUME:  Good evening, Michael Blume for the

11     United States.

12             MR. MARUTOLLO:  Good afternoon, Joseph Marutollo for

13     the United States.

14             MS. STAMATELOS:  Good evening, Paulina Stamatelos

15     also for the United States.

16             MR. KRUCKENBERG:  And good evening, Your Honor, Caleb

17     Kruckenberg for the Defendants.

18             MR. SIMPSON:  Good evening, Your Honor, Steve Simpson

19     for the Defendants as well.  Thanks.

20             THE COURT:  All right, welcome, everyone and thank

21     you for your patience with my schedule.  I regret that I was

22     unable to convene us before today.

23             As you may know, I'm on trial in another matter and I

24     wanted to make sure that I had the time to fully review both of

25     your submissions, and the record, and the applicable law.

1          But I understand there is some urgency to getting

2     this resolved in the event that I don't quash the subpoena and

3     Chase needs some time to comply.

4          And I am sorry we got a little delayed tonight.  You

5     all know how trials go and we had some things we have to finish

6     up before I let everybody go home for the evening.

7          This is not being transcribed by a court reporter,

8     but it is being recorded if any of you require a transcript.

9          All right, so we are here on the Defendant's Motion

10    to Quash the Subpoena to the third-party Chase Bank.

11         My apologies if I'm using the shorthand for the third

12    party's actual long name, but I think you all know who I'm

13    referring to.

14         So I received the Defendant's motion and the

15    Government's response.  Defendants did not ask for leave to

16    reply or file one, but since you are the movant, let me give

17    you the last word before I begin asking questions and ask you

18    if there's anything you want to respond to in the Government's

19    submission that wasn't addressed in your initial motion?

20         MR. KRUCKENBERG:  Thank you, Your Honor.  And I think

21    the issue is relatively straightforward and it's something we

22    discussed the last time we all convened.  And really, it goes

23    to the scope of the third-party subpoena.

24         And I do want to just sort of note the good faith

25    requirements in meeting and conferring.  Obviously, our

1    intention is not to sort of evade the rules or I think our

2    being prompted to file the motion was really because of the

3    time frame and because it's third-party.

4              Because it's a subpoena sent to Chase, we're

5    concerned that --

6              THE COURT:  And I understand you needed to do more

7    than tell them hold off.  You needed to say we actually have a

8    motion on file so I --

9              MR. KRUCKENBERG:  Yes, Your Honor.

10             THE COURT:  -- understood that from the context, but

11   I appreciate it.  So let me just ask you this.

12             What, if anything, would be an acceptable scope of

13   discovery to Chase with respect to your client's bank records

14   from your perspective?

15             MR. KRUCKENBERG:  Well, Your Honor, sort of as we

16   discussed, and I think relevant to the Government's response,

17   as I understand the response and we've also been discussing

18   discovery, you know, unrelated discovery, I think the

19   Government is focusing on wire transfers that potentially were

20   routed through New York.

21             And we would agree that those records are relevant.

22   And to the extent that JP Morgan has records from my clients

23   showing wire transfers routed through New York, we have no

24   objection to that.

25             Our concern really is with the other items, the --

1    you know, the breadth of the subpoena, there is no territorial

2    limit, et cetera.

3            THE COURT:  Okay, so and when you say wire transfers

4    routed through New York, do you mean customers from a range of

5    other states and locations but because Chase is headquartered

6    in New York, the transactions go through there?

7            MR. KRUCKENBERG:  My understanding of what happened

8    is that my client's -- Rare Breed Triggers in particular made

9    certain wholesale sales to dealers using wire transfers.

10           And I think there's a dispute, but there is an

11   allegation from the Government that those were routed through a

12   New York routing number and a New York address.

13           And so, to the extent that the Government is asking

14   for records about that routing number dealing with my clients,

15   I think that is relevant.  I think we would agree to that.

16           THE COURT:  Okay, what about the Government's

17   allegations that there are individual customers who reside in

18   the state of New York, who purchased these devices from your

19   client and that your client may have used the account at Chase

20   Bank to receive their money or otherwise process the

21   transaction?

22           I know you have some privacy concerns about the

23   information being released, but do you agree that at least if

24   there were one or more customers who reside in the state of the

25   New York who had purchased these devices, regardless of where

 1     they were shipped, that that would at least be relevant to the

 2     jurisdictional analysis and your forthcoming motion to dismiss

 3     for lack of personal jurisdiction?

 4              MR. KRUCKENBERG:  I think we would agree that that's

 5     relevant.  I think our concern is simply about how it's worded.

 6              And I can certainly make the representation, we don't

 7     believe there are any such customers, but I think it would be

 8     relevant and it would be reasonable for the Government to ask

 9     JP Morgan if there are any records of customers who had New

10     York addresses that made transactions with my clients.

11              THE COURT:  Okay, so I think, I want to hear from the

12     Government on this, but one concern I can imagine them raising

13     is that if we had all the time in the world, Chase could go

14     through its records and sift through them.

15              But since we don't, because we have a couple of

16     deadlines coming up, one is your jurisdictional motion and the

17     other is the motion for a preliminary injunction, we could

18     certainly give Chase more time to comply, but that would

19     require moving up the rest of the schedule.

20              And since as of a week or two ago, your clients had

21     only consented to keep the TRO in place through the end of

22     April, we have a bit of a hard stop at that point, which moves

23     everything else up.

24              So, you know, I have thought about some ways short of

25     revealing the names and addresses directly to the Government

1    that this could be accomplished.

2              One way might be for Chase to provide all of the

3    requested records, but to redact the addresses and leave just

4    zip codes of the customers, their billing address and zip codes

5    to the extent they have it as part of their records.

6              I'm not sure if that's how they store it, but that

7    may be one option or city and state or just the state if that's

8    revealed.  I really don't know how the particular records for

9    these particular transactions are kept.

10             The other possibility would be if Chase doesn't have

11   the resources or the ability to do the redactions quickly and

12   it's their staff time that's being taken up, one option would

13   be to do some version of what is done in criminal cases or

14   others where there are privilege concerns or national security

15   concerns and have the unredacted records sent to the U.S.

16   Attorney's Office with someone other than the trial team for

17   this case doing the review, making the redactions, and then,

18   destroying the original records when those are done.  So that

19   would take the legwork out of Chase's end and we could agree on

20   what the scope of that would be.

21             Those are just a couple of routes that come to mind,

22   but if it really were all of the purchases and all the sales

23   and transactions, and then only, you know, to the extent there

24   are any of those with zip codes in the state of New York, or if

25   they showed the state, that's even easier, because then they

1  don't have to figure out which zip code is which, but something

2  along those lines.

3  So, Mr. Kruckenberg, what's your response to those

4  possibilities?  I know you don't know how quickly or feasibly

5  Chase could do that, but in theory, if the redactions could be

6  done in a timely fashion, would that be an issue?

7  MR. KRUCKENBERG:  I -- Your Honor, I think that would

8  resolve our concerns.  And you know, obviously that -- this is

9  all going to depend on what Chase -- how they keep the records

10  and how they respond.

11  I mean, I think our request is that the subpoena be

12  limited to those -- that information.  And then, if Chase

13  decides that it is infeasible or they have -- they can't

14  respond in that fashion, then I think it is appropriate to sort

15  of craft some sort of other remedy, whether that's having Chase

16  redact it or we could do sort of other process things that you

17  discussed such as having a, you know, a separate team at the

18  United States Attorney look at it or something like that.  I

19  think we're amenable to that.  I just --

20  THE COURT:  Okay, so that's the issue.  Let's put

21  that to the side for a moment and come back to it.  That's sort

22  of one bucket of information covered by the subpoena, but not

23  all.

24  Before I move on, though, let me just on that issue

25  hear from the Government briefly as to both whether you think

1    for jurisdictional purposes you have any need for information

2    beyond the zip codes or state from which these purchases are

3    made if they are from the state of New York.

4         And if you do, tell me why and if you don't, tell me

5    how you propose to get the redacted information and what you

6    think might work best?

7         MR. BLUME:  The short answer's yes.  And the longer

8    answer is that these are dealers.  What -- at least with

9    respect to the wires.

10        THE COURT:  Say that again?  These are --

11        MR. BLUME:  I'm sorry, these are dealers.

12        THE COURT:  Dealers.

13        MR. BLUME:  It -- with respect to the wire transfers.

14   And the dealers re-sold products with the full knowledge of

15   Rare Breed Triggers.

16        In other words, Rare Breed Triggers knew full well,

17   according to testimony that we've included in our papers, that

18   their dealers were selling all over the country.

19        So the limiting -- the information about where the

20   dealers are doesn't necessarily speak to whether Rare Breed

21   Triggers was taking advantage of New York customers.

22        The other -- just to highlight one other -- two other

23   issues.  One, I think you're correct, Your Honor, in that the

24   logistical point of this is going to be difficult.

25        Well, you know, let me say that differently.  I don't

1    know if it's going to be difficult and I think that the

2    figuring out whether it's going to be difficult is going to

3    take some time.  And there are time limitations here.

4          And so, the remedy of redacting information or

5    creating what we call here a taint team, which is what you're

6    suggesting to some degree, we think is inappropriate, doesn't

7    quite fit for the main reason that, as we've noted to you,

8    these are -- this -- there really isn't a privacy interest here

9    to keep this information from the Government.

10          Now there may be, I suppose for argument's sake, a

11   privacy interest in disclosing the information beyond providing

12   it to us, but it's not privileged material.

13          There is no general privacy interest.  There's no

14   statutory privacy interest either for Rare Breed Triggers, who

15   it seems like has the -- is the account holder.  That's an

16   assumption we're making.  I'm not too sure about that.  Or for

17   their -- the customers of the customer.  So I don't think a

18   taint team works or that kind of model really works here.

19          THE COURT:  And do you think that's really covered by

20   Miller even though that's a 4th Amendment case?

21          MR. BLUME:  Yeah, oh, yeah.  And I think that's --

22          THE COURT:  It has it related to a subpoena, not a

23   warrant?

24          MR. BLUME:  Yes, and in fact, that's why in response

25   to Miller, the Right to Financial Privacy Act, which set out

1    the scope of the privacy interests in financial information

2    held by banks was very clear that it didn't include information

3    sought through the Federal Rules of Civil Procedure.  So I

4    don't see where the privacy issue is.

5         That's not to say that we're going to totally dismiss

6    those concerns for the customers of Rare Breed Triggers, but

7    that's a separate question as to whether Chase or JP Morgan,

8    whatever you want to call them, provides that information to

9    us.

10        THE COURT:  All right, let me just ask them a quick

11   point of law.

12        Mr. Kruckenberg, do you agree at least that the Right

13   to Financial Privacy Act doesn't cover the third-parties whose

14   interests the customers, whose interests you're asserting here

15   because this is information sought through discovery under the

16   federal rules in the civil action?  At least that statute is

17   not one that would protect them?

18        And if that's not the case, then what other, other

19   than a that I personally feel is a generalized privacy interest

20   and perhaps I'd have the discretion to narrow it to something

21   no more intrusive than necessary, is there legal authority

22   which says that there is some recognized interest that I need

23   to not just take into account, but defer to in ordering the

24   production of what I would otherwise conclude would be

25   information relevant to a civil dispute?

1          MR. KRUCKENBERG:  Yes, Your Honor.  So it's kind of a

2     big question, right?  And when we're talking about Miller v.

3     United States, we recognize that that is relevant to the extent

4     that we're talking about a 4th Amendment analysis.

5          There can still be legitimate interests and

6     legitimate privacy interests from both my clients and the

7     account and the recipients and the rest of sort of the

8     information.

9          I mean, part of what we're talking about in the

10    subpoena is emails between my clients and the bank, credit

11    worthiness, evaluations.  You know, there's a lot of other

12    documents that they've requested.

13         THE COURT:  Yeah, I do want to -- I'm sorry, I don't

14    mean to cut you off.  I do want to get to those, but let's

15    just -- let's go through -- I'm just going to tell you the

16    categories I'd like to talk about.  There may be others, but

17    first is the customer information.

18         I understand that there's at least a pool of what

19    some refer to as wholesale or some refer to as dealers, but

20    individuals who purchase these devices from Rare Breed Triggers

21    in some sort of bulk quantity and then may re-sell some or all

22    of them to third-parties or fourth parties.

23         And that those transactions may have gone through

24    Chase.  I understand the Defendants have conceded that to the

25    extent they -- those individuals are in New York, where they

1    sell to people in New York, or their transactions go through a

2    New York account, that those would be relevant.

3           So let's just talk about those financial -- those

4    consumers or customers' privacy interest if any, that I need to

5    consider if I want to limit the scope of what is produced as to

6    them.

7           The second category has to do with emails and

8    contacts between Chase and Rare Breed Triggers and its

9    principals, including but not limited to this due diligence

10   inquiry.  So I want to talk with you all about what that might

11   show and why it's relevant.

12          And I think those were the two major categories.  I'm

13   trying to remember if there's anything else, but I think those

14   were it.

15          So let's stick with the customers for a moment or the

16   wholesalers, and then, we can go to -- and just on the customer

17   note actually, does the Government believe that there were any

18   individual purchasers for whom the transactions went through

19   Chase or was that through some other way, like credit card --

20          MR. BLUME:  It's our understanding.  We -- based on

21   what we know and I certainly don't want to put words in Mr.

22   Kruckenberg's mouth, because we did have some discussions about

23   this very issue yesterday, and I'm just -- I'm going to rely to

24   some degree on those.

25          And please correct me if I'm wrong, Mr. Kruckenberg,

1    but it's our understanding that individuals typically bought

2    through the website and it was a different system that what

3    these wires were for were specifically for dealers who were

4    buying more in bulk.

5            THE COURT:  Okay.  All right, so Mr. Kruckenberg,

6    please continue where you left off.  You were talking about

7    Miller and as it relates to the wholesalers or dealers?

8            MR. KRUCKENBERG:  Yes, Your Honor.  And so, we're

9    certainly not arguing a 4th Amendment type interest, but I

10   think what we are arguing and the cases that we discussed in

11   the motion -- and I'm referencing the Silverstone case just as

12   an example of that is the case in the Southern District of New

13   York, that was citing similar types of cases.

14           And I think the recognition has been that under

15   Rule -- under the Rules of Federal Civil Procedure, there's at

16   least an understanding that personal financial affairs are a

17   private matter and that there at least has to be a reason to

18   look into those documents.  I mean, that's really I think what

19   the courts are talking about.

20           And for sure, this is a discretionary decision by the

21   Court.  And there's nothing that limits this Court's discretion

22   to matters that are only as narrow as possible for the inquiry

23   facing the Court.

24           And so, we're not arguing that it's illegitimate to

25   find the transactions that occurred in New York or the

1    customers that are in New York if those exist.

2           That is relevant and I think we would agree that

3    whatever privacy interests those customers have probably gives

4    way to that other interest.

5           What our concern is is I think there is a recognized

6    privacy interest just in financial affairs and just in doing

7    business with the company.

8           And there's no reason to intrude on that just in case

9    just so that we have this list for some other reason that is

10   irrelevant in our view to the jurisdictional question.

11          MR. BLUME:  Your Honor, if I may?

12          THE COURT:  Do I have your -- no, I'll withdraw that.

13   Go ahead.

14          MR. BLUME:  If I may?

15          THE COURT:  Yes.

16          MR. BLUME:  Okay.  The cases that -- first of all,

17   the Silverstone case deals with something that just has no

18   bearing.  The records at issue just had nothing at all,

19   nothing, to do with the underlying claim.

20          As you'll likely recall, the bank account at issue

21   held the assets of a company and -- that company was not a

22   party to anything.

23          The argument that those seeking the records that put

24   forth was that the individual at issue was a signatory, but it

25   wasn't his records.

1          So now that said, I think we simply would point to

2     the case that we point to in our letter, which was in re: Rule

3     45 issued to JP Morgan Chase, where the Southern District --

4     well, at least the one judge in the Southern District was very

5     clear.  There's no privacy interest here.  None.

6          That's not to say that, you know, you can seek to be

7     limited based on what's relevant, but there is no privacy

8     interest.  And financial information is frequently exchanged in

9     discovery.  That's made -- that's made fairly clear.

10         This generalized notion of protecting financial

11    interests really is based on nothing other than a generalized

12    notion and nothing more.

13         THE COURT:  All right, let's talk about the emails

14    and communications.  Mr. Blume, tell me what do you expect or

15    have some reasonable basis to think might be found in there

16    that is relevant to jurisdiction?

17         And is there any limitation on the scope for this

18    purpose that you would agree to?

19         MR. BLUME:  As I understand the case law, the fact

20    that an account is used only goes so far.  And if you're

21    seeking to -- if a court, the party is seeking to invoke the

22    court's jurisdiction over an individual, based in part on the

23    use of a bank account, you have to show that that person's knew

24    about the bank account, knew about what was happening in the

25    account.  And --

1          THE COURT:  I'm sorry, say that again, that

2    they -- the part that --

3          MR. BLUME:  That they knew what was happening in the

4    account.  It wasn't some incidental use of a bank account that

5    a particular individual had no idea was happening.

6          THE COURT:  Right.

7          MR. BLUME:  That's just not -- you know, we'll

8    readily concede that's not sufficient.  And so, what these

9    communications will show are the individual people who

10   communicated with JP Morgan about this particular account and

11   in fact about the wires.

12         And that will help bolster the evidence that we

13   already have about the individual Defendants' use of this

14   account.

15         And we already have, although I don't know that we

16   included this in our letter to you, there are indications and

17   records that we have that individuals communicated with Chase

18   about this account, about how to do the wires and how to work

19   it, how the process works.

20         We want to know who those -- we believe at the very

21   least there, Mr. Demonico.  We suspect that there were several

22   others.

23         And we want to know who those folks are and that

24   these communications would help us to further prove that.  We

25   already have some indication that that's true.  And that's what

1    we're really looking for.

2              THE COURT:  So not that they necessarily traveled to

3    New York to meet with Chase executives about due diligence or

4    anything like that, but simply that they communicated about the

5    mechanics of how using a New York-based wire transfer based

6    system would work would be enough to establish jurisdiction in

7    your view because it goes to the requisite knowledge?

8              MR. BLUME:  Yes, yeah, it goes to their use, you

9    know, the term in jurisdiction.  It's their purposeful

10   availment of the -- of New York is that they're the reaching

11   out to New York knowing that New York is involved and dealing

12   with it.

13             And by the way, I want to make clear one thing

14   because you mentioned the due diligence.  That's a separate

15   category in our view from communications.  I'm happy to address

16   that.  I don't know if you want to do that now.

17             THE COURT:  Sure, yeah, I had lumped them together,

18   but break it down for me.

19             MR. BLUME:  Okay.

20             THE COURT:  What -- so if one category is all

21   communications about the account --

22             MR. BLUME:  Right.  The other -- and for the same

23   reasons, we're seeking the due diligence and know who your

24   customer is.  Again, it goes to the jurisdictional question as

25   to who knows about the count and who controls it?

1          And the rules associated with know your customer,

2   they're requirements on the bank to understand who is

3   controlling this account, who had -- who is the beneficial

4   owner of it, who was managing the -- because this -- it's our

5   understanding, our understanding, this account is in name is

6   Rare Breed Triggers.

7          It may not be --I'm not sure about that, because we

8   haven't seen it, but assuming that it is an entity, then the

9   bank itself has to understand what individuals at that entity

10  are interacting with this account, have control over it.

11         And that's what the due diligence and know your

12  customer rules are all about.  And that's why we'd like to see

13  that information as well for the same reasons about the

14  communications.

15         THE COURT:  I still am not sure I'm connecting the

16  dots maybe because I'm not as familiar with the nitty gritty of

17  the due diligence inquiry as you are.

18         But I understand you're arguing about wire transfers

19  and the purposeful engagement.  Why is it that any

20  communications exchanged during the due diligence inquiry you

21  have reason to believe that that would go to jurisdiction

22  specifically?

23         MR. BLUME:  Because one of the main inquiries of that

24  a bank has to make about an entity's account is who are the

25  individuals who will either own the account, you know, are the

1    beneficial owners of it or who have some control or management

2    in the entity, such that they effectively control the account.

3    That's the what the regulations require the bank to do.

4          So what it gets at are who are the individuals who

5    know about this account and can control it?  And again, it goes

6    back -- it's the same idea.  It goes back to the question of to

7    the extent that we need to prove which individual people avail

8    themselves of this account, which is running through --

9          THE COURT:  Oh, I think I understand.  So you're

10   anticipating the Defendants, because I haven't seen their

11   motion to dismiss, may make an argument to dismiss for lack of

12   personal jurisdiction, not just over Rare Breed Triggers as the

13   company --

14         MR. BLUME:  Yes, yes.

15         THE COURT:  -- but over (indiscernible) individuals?

16         MR. BLUME:  But the -- yeah, I'm sorry I should have

17   started from that --

18         THE COURT:  Right.

19         MR. BLUME:  -- there's four Defendants and two of

20   them are individuals.  This account as best (indiscernible) you

21   have.  I don't need to repeat what you just said.

22         THE COURT:  Okay.  All right.  Mr. Kruckenberg,

23   anything else you want me to consider on those issues, the due

24   diligence or the communications?  What's your specific concern

25   and what's your argument for narrowing the scope or splitting

1     this all together?

2             MR. KRUCKENBERG:  Well, Your Honor, I don't see

3     there's any reason why those requests can't be narrowed.  If

4     the concern is about the wire transfers, particularly the wire

5     transfers that were potentially routed through New York, then

6     if there are communications that address those wire transfers

7     or setting it up in New York or address the interaction with

8     New York, somehow that is potentially relevant, but my concern

9     is that there's a request for every communication, period.

10            THE COURT:  Right, I think the issue is that the

11    Government has indicated, and I think not incorrectly, that

12    just because something is relevant doesn't mean it's get them

13    over the hurdle of establishing or for me to find personal

14    jurisdiction.

15            So I could say that one category of evidence may be

16    be more relevant than another, but until we see it, we don't

17    know how much there is.

18            And if you are able to decide the motion based on

19    what's in category 1, you know, if we had endless time, we

20    could look at category 1 and see if that's enough.  If the

21    parties don't agree or if I have a question, I could go to 2

22    and then 3.

23            But because we are on this expedited time table, we

24    have -- since we don't know what's behind proverbial doors

25    number 1, 2, and 3, you know, we just don't know if that's

1    going to be enough.

2            So I think I appreciate your candor on the relevancy

3    point, but I'm not sure that that answers the question about

4    the scope.

5            But in the interest of trying to keep this as

6    reasonably tailored as possible, do you have a specific

7    proposal on the communications and on the due diligence

8    documents that you think would address your concern?

9            And then, let me ask you, just if I forget, I'll just

10   circle back to your question about your position as to RBT

11   generally versus the individual three other Defendants, but why

12   don't you address the first part first, which is the due

13   diligence and the communications and whether that scope could

14   be narrowed?

15   MR. KRUCKENBERG:  Well, Your Honor, with respect to

16   the communications, I do not think we would have an objection

17   with communications about this particular routing address.

18           Because I mean, that's -- sort of to narrow it, I

19   mean, that's really what we're talking about.  There's this one

20   particular routing address that I think is at issue.

21           And I think it's relevant if Chase has records about

22   that routing address, but I don't -- again, my concern is all

23   communications about everything, it's just too broad.

24           The other sort of issue with due diligence or with

25   beneficial ownership interests, I can appreciate the

1    Government's concern.

2              And I don't think it is unreasonable to ask JP Morgan

3    who the beneficial owners are of the account if that's really

4    all the Government is concerned about.

5              Again, I'm talking about credit worthiness questions

6    and any sort of background investigations.  And there's a lot

7    of information out there that has nothing to do with what we're

8    really talking about because if --

9              THE COURT:  Well, let me ask it this way.

10             MR. KRUCKENBERG:  Yeah.

11             THE COURT:  Would it be your position as counsel for

12   all four Defendants that -- and this may be a way to avoid

13   additional discovery on this point, that if I were to find

14   sufficient contacts or other grounds to have Rare Breed

15   Triggers draw -- personal jurisdiction over Rare Breed Triggers

16   as an entity for purposes of this action, that knowing what you

17   know about the relationship of your other three clients to the

18   company, and you know, their status as beneficial owners, that

19   that would decide the question for all of them?

20             MR. KRUCKENBERG:  I --

21             THE COURT:  That is, if I were to find for one, it's

22   sort of off all for one, one for all.  Because if you're not

23   going to make arguments about them as individuals, there is

24   more force to your point that the discovery on the due

25   diligence documents may not be necessary.

1    MR. KRUCKENBERG:  Well, Your Honor, let me answer it

2    this way.

3    I think we would agree with respect to Mr. Demonico

4    and Mr. Maxwell as it relates to Rare Breed Triggers.  So that

5    is one corporate entity.  We agree that Mr. Demonico is the

6    president.  Mr. Maxwell is an owner.  And my understanding is

7    that they are both -- they both have control over that account.

8    That is not the case with Rare Breed firearms, which

9    is a distinct corporate entity, which we don't believe has any

10   relevance to this case.  So that is -- that's all sort of couch

11   my answer.

12   THE COURT:  Okay, remind me again because I haven't

13   looked at this part lately, Mr. Blume, what's the Government's

14   allegation in a nutshell as to the relationship between Rare

15   Breed firearms and Rare Breed Triggers?  Is this the second

16   company that was created to evade detection allegedly for the

17   first one or is it something else?

18   MR. BLUME:  No, it's slightly different.  It -- Rare

19   Breed firearms is a company that Mr. Demonico owns or runs or

20   both.

21   It sells firearms, accessories, and other things.  It

22   existed as we understand it prior to the existence of Rare

23   Breed Triggers.

24   And that Mr. Demonico used Rare Breed firearms prior

25   to the creation of Rare Breed Triggers.  It was through really

1    Rare Breed firearms that he was searching for a product like

2    the FRT-15 to sell.

3              So it is -- it's the company that at least initially

4    was maybe this is too strong of a word, but the vehicle through

5    which Mr. Demonico's envisioning selling FR -- the FRT-15.

6              The Rare Breed Triggers is a company who was created

7    a bit later.  And the way Mr. Demonico has described Rare Breed

8    Firearms is that it is a sister company, that's his words I

9    believe, sister company to Rare Breed Triggers.

10             And there is some cross-marketing that goes on

11   between the two companies in that -- this gets into a little

12   bit of the weeds, but their websites are linked.  The

13   information about Rare Breed Triggers, it triggers themselves.

14   You can find them on the Rare Breed firearms website.  The --

15   some of the materials they use --

16             THE COURT:  Okay, I think thank you.  I asked a very

17   broad question.  So you're not wrong --

18             MR. BLUME:  I see.

19             THE COURT:  -- you're not wrong to answer it that way

20   --

21             MR. BLUME:  I'll stop, but --

22             THE COURT:  -- but let me get to the point of this.

23   What basis does the Government have to believe that there might

24   be information held by Chase Bank with respect to Rare Breed

25   Firearms?

1    MR. BLUME:  We don't.  And in fact, they're not

2    mentioned in the subpoena.

3    THE COURT:  Okay.

4    MR. BLUME:  We think this is a Rare Breed Triggers

5    account and that it -- at the very least, Mr. Demonico had deep

6    involvement with it.  We think Mr. Maxwell did as well, but we

7    don't think there's anything.

8    I mean, look, if we see it in discovery, okay, but we

9    don't have an independent basis to believe that Rare Breed

10    firearms as Rare Breed firearms had a connection to this

11    particular account.

12    THE COURT:  Okay, so it's --

13    MR. BLUME:  That's why they're not answering the

14    subpoena.

15    THE COURT:  So let me ask this.  If since Mr.

16    Kruckenberg has just agreed that any information you obtain

17    from other material subpoenaed from Chase that are sufficient

18    to confer personal jurisdiction over Rare Breed Triggers would

19    also necessarily mean that this Court has personal jurisdiction

20    over Mr. Demonico and Mr. Maxwell, and he's only kind of

21    putting to the side or making a distinction between Rare Breed

22    Firearms with respect to that question, am I right that then

23    the due diligence records, which you represented were really

24    necessary to establish the beneficial ownership for

25    jurisdictional purposes of Mr. Maxwell and Mr. Demonico, might

1    be something we could exclude from the subpoena at this time?

2              MR. BLUME:  It -- I want to make sure we're clear.  I

3    think the short answer is yes.  Let me give a longer answer is

4    I want to make clear that what this --

5              THE COURT:  I like the short answers so much, but you

6    can go ahead.

7              MR. BLUME:  But I just want to make clear what you're

8    suggesting that if you find jurisdiction over Rare Breed

9    Triggers, that you have also found jurisdiction over Mr.

10   Maxwell and Mr. Demonico, period.

11             THE COURT:  I think that is right.  Mr. -- let's just

12   pause here and say, Mr. Kruckenberg, did I understand that

13   correctly?

14             MR. KRUCKENBERG:  I believe that's correct, Your

15   Honor.

16             THE COURT:  Okay.

17             MR. BLUME:  If there --

18             THE COURT:  I'll note it in the text order from

19   today.  So it will be noted in ECF.

20             MR. BLUME:  Then yes, we don't need those

21   communications for jurisdictional purposes.

22             THE COURT:  Okay.

23             MR. BLUME:  That's not to say that we won't seek them

24   later for different reasons on the merits.

25             THE COURT:  Okay.

1       MR. BLUME:  But for jurisdictional purposes, if --

2   and again, I wasn't making one other assumption --

3       THE COURT:  Yeah.

4       MR. BLUME:  -- which is that this account is held by

5   Rare Breed Triggers itself.

6       THE COURT:  Yeah.

7       MR. BLUME:  As opposed to some other company that we

8   may not know about, but assuming that to be the case, and

9   jurisdiction over rare view triggers loops in those two

10  individual Defendants, then no, we really -- that's the reason

11  why we wanted that information for jurisdictional purposes just

12  to be clear.

13      THE COURT:  Yes, okay.  Understand.  And it may be

14  relevant at some point in the litigation --

15      MR. BLUME:  Yes.

16      THE COURT:  -- for something else?

17      MR. BLUME:  Yes.

18      THE COURT:  Okay, so then I think we're left with the

19  other communications.  And I think now my question to you, Mr.

20  Blume, is given what we've just established about the

21  interrelationship for jurisdictional purposes between Rare

22  Breed Triggers and the individuals, if I were to order Chase to

23  comply with or deny the Motion to Quash the Subpoena as to the

24  wholesale or/dealers financial transactions, is there anything

25  else that you think you would need with respect to the

1    communications between Chase and the principals?

2              MR. BLUME:  Short answer no.  The --

3              THE COURT:  All right.

4              MR. BLUME:  That's why we want it.  And if that's --

5    if it rises and falls on Rare Breed Triggers, then that's

6    enough.

7              THE COURT:  Okay, let's take a five minute recess and

8    I'm going to look at a couple things and we'll come back and

9    I'll have a decision for you.  Thank you.

10        (Recess taken 6:48 p.m., commencing at 6:50 p.m.)

11             THE COURT:  All right, I'm back.  I'll give you all a

12   moment to turn on your screens and your microphones.

13             All right, so in light of the party submissions as

14   well as argument today, I am going to deny the motion to quash

15   by the Defendants with respect to the -- what I'm going to

16   refer to very generally and then we can talk specifics as the

17   financial records of customers that were made through the

18   account with the routing number specified in the subpoena at

19   Chase.

20             The basis for my ruling is of course Defendant's

21   concession, which I appreciate that there may well be relevant

22   material in there to the question of personal jurisdiction,

23   specifically transactions that took place through the state of

24   New York or potentially wholesalers or dealers, who continued

25   to deal or sell those items to customers that they knew and

1  rare view triggers knew were within the state of New York as

2  discussed more fully of course in the party submissions,

3  particularly the Government's.

4       While I have given serious consideration to the

5  privacy interests asserted by the Defendants on behalf of these

6  third-parties, for several reasons, I find that they do not

7  trump the Government's legitimate need for this material and my

8  need as the ultimate arbiter of the jurisdictional question,

9  particularly because there is neither a statute nor any case

10  law from the U.S. Supreme Court or the 2nd Circuit established

11  and that there is a right to privacy in these records on behalf

12  of these individuals or third-party dealers.

13       And I think it would be substituting my judgment for

14  that of Congress and the higher courts to say that there was

15  one, particularly in a case where the relevance is clear.

16       In addition, the fact that these are -- both parties

17  seem to agree that they are, though no one knows for sure, all

18  but certain to be larger scale dealers or wholesalers who have

19  more awareness of the risk that this could be an issue in

20  commercial litigation or litigation under the relevant civil

21  statutes lessens my concern that there you might have a

22  reasonable expectation of privacy in those records.

23       I will, I think the technical term may be to grant as

24  unopposed or dismiss as moot the Motion to Quash the remaining

25  aspects of the subpoena, specifically with requests -- with

1    respect to communications between Rare Breed Triggers and its

2    principals or agents and the bank involving things other than

3    the technical use of the account or the customers'

4    transactions, and specifically, general communications or

5    communications related to the due diligence inquiry done by

6    Chase.

7              I did during our break pull the actual original

8    subpoena served by the Government, which was document 17.1 on

9    ECF in this case.  And I'm now looking at page 9, which lists

10   the documentary material.

11             It looks as though the first category, which is

12   paragraph number 1, seems to be covered by my ruling as

13   something that Chase would still need to produce.

14             I wasn't quite sure, and I just read it over again

15   briefly, about 2 and 3 and the pages there after.  I guess what

16   I'm asking the parties is what is the most efficient and

17   accurate way to communicate the substance of my ruling to

18   Chase, so that they are not any more confused than the rest of

19   us are by what that ruling might mean and how to comply with

20   it.

21             I also -- it occurred to me that it might be simpler

22   to have the Government serve another subpoena, but I don't know

23   if that would necessarily extend the time to comply or not.

24             Mr. Blume, you're shaking your head, so I think that

25   would probably not accomplish it?

1          MR. BLUME:  No, I -- what I envision, and of course,

2    I welcome anybody else to -- from either side to jump in.  What

3    I envision is our contacting Chase by phone after we provide

4    them with the documents and say this is limited.  This is

5    limited by a court order.

6          Here's the Court -- you know, we'll send them the

7    court order.  And we'll try to get an understanding of whether,

8    first of all, whether they understand it, whether they can

9    comply with it in a, you know, in a way that we all envision.

10         THE COURT:  I don't have a problem with that.  I

11   think the question is what the order should actually say.  My

12   job is write the orders, but I don't know how well Chase will

13   understand it.

14         Let me ask you this.  Looking at page 9 of this

15   document 17.1, are you able to parse based on what was already

16   in the subpoena what categories of information are covered in

17   terms of what they would need to produce or not or does it

18   require a more fine pen between them?

19         MR. BLUME:  And again, I -- with your indulgence,

20   Your Honor, I'd welcome others on who may have been closer on

21   the drafting of this --

22         THE COURT:  Sure.

23         MR. BLUME:  -- to jump in if I'm saying something

24   incorrect, but I believe that category 1 is covered that, in

25   other words, that Chase should comply with category 1, period.

1          That to the extent that the definitions that would

2     might use in earlier pages, we talk about general

3     communications that we can make clear that that's not covered.

4          I also believe that category 3, which really only

5     goes to credit card accounts, given the discussion that that is

6     not covered, that it's just category 1.

7          The question I suppose really is category 2, which is

8     broader than category 1 with respect to this bank account or

9     this routing number bank account.

10         Well, even with respect to this bank account, because

11    it may include -- we don't know what's in the account itself.

12    We don't -- we don't know whether this account simply held

13    wires in and out or there was something broader.

14         I -- as best as I can tell from your -- from the

15    discussion here, that you would -- that your intent is that the

16    information we're seeking is just about the wires, but not the

17    broader information, but I don't know what else is in them.  I

18    hope that makes sense --

19         THE COURT:  Yeah.

20         MR. BLUME:  -- that last point.

21         THE COURT:  It does, although I know in general what

22    you're seeking, but I think we established that for this

23    purpose, inquiry with respect to Rare Breed Triggers' financial

24    transactions that implicate contact with the state of New York

25    could be established through transactions that occurred through

1    this routing number, rather than the generalized documents and

2    information related to the account.

3              I'm just not sure, because I am not as conversant as

4    some of you with what that means to be associated with the

5    routing number, which of the things in paragraph 2 are covered

6    and what we should tell Chase with regard to that.  So emails,

7    no.  But what about things like electronic funds transfer,

8    banking documentation?

9              MR. BLUME:  Well, the electronic funds transfers,

10   that's effectively -- that's sometimes a wire.

11             THE COURT:  Yes.

12             MR. BLUME:  It's -- I guess what I'm raising, to the

13   detriment of my side, is that I don't know personally sitting

14   here today whether that account is a general business account

15   that includes things like checks for, you know, Rare Breed

16   Triggers checks for the, you know, the rent.

17             Although and I don't know what your view of that

18   would be.  I suspect given the discussion here that obviously,

19   you know, you tell me when I'm wrong that, you know, if they're

20   just paying rent on a building in Florida that has nothing to

21   do with New York, that we're not -- you wouldn't want us to get

22   that.

23             THE COURT:  Right.

24             MR. BLUME:  But I don't know whether the other --

25   what that other information is there.  I just don't know.

1          THE COURT:  Right.  Well, why don't we do this?  I

2     think we could go one of two ways.  I mean, one option would be

3     for me to give you the Government some time to draft some

4     language to include in a proposed order for me that you think

5     would cover the scope of my ruling with respect to the wire

6     transfers that would essentially be a direction to Chase as to

7     which parts of the existing subpoena we need to comply with or

8     not.

9          The other option would simply be for me to issue a

10    general order, noting the ruling with respect to these

11    particular financial records in very general terms, issue that

12    order, and then, direct counsel for both sides to confer with

13    Chase about how to comply with it and perhaps you get on the

14    phone with them and get some clarity as to what they have.  I'm

15    not sure if that would be easier than just telling them to

16    produce it and letting them go to you if they have questions.

17         And I guess the third would be that we do nothing

18    tonight.  You get Chase's representative on the phone tomorrow

19    and ask them what they would need and what makes sense.

20         MR. BLUME:  I -- before I answer, let me just make --

21    ask clarifying question, which is -- and I think I know the

22    answer to, which is that your intent, Your Honor, is that we --

23    that Chase provide us with information about the wires that

24    went in and out of this account?  Is that correct?

25         THE COURT:  Yes.

1          MR. BLUME:  Okay.

2          THE COURT:  I think to the extent, and I don't mean

3    to make it more complicated than it is, but to the extent that

4    you think you need other information from Chase to get at this

5    jurisdictional question about purchases of their products from

6    customers, wholesalers, dealers, than just broadly speaking,

7    the wire, that's fine.

8          But I at least for now am persuaded that we don't

9    need to get into given the concessions that Mr. Kruckenberg

10   made about the relationship between the principals and the

11   company, all of their communications.

12         Now I don't think there's any harm if it happens to

13   be a rent check or something else.  If what we want are

14   transactions, that's fine, but it may be quicker to get them if

15   you simply get wire transfers and we could see what's produced,

16   and then, retain a subsequent subpoena if we need it.

17         So it may be in the interest of speed of just giving

18   them something more narrowly defined, rather than have them

19   have to go through every single piece of paper and see what

20   category it falls into.

21         I don't know, having never done discovery on behalf

22   of a bank before what's the easiest for them, but.

23         MR. BLUME:  Well, I will make one suggestion thinking

24   out loud to some degree, Your Honor, if you'll indulge me,

25   which is it may be worth it for us to ask Chase the question

1    that -- and see what they can do, and then propose some

2    language to you.

3              THE COURT:  Okay, and I think that makes sense.  So

4    let's do this.  I will issue a text order with the very broad

5    generalities of the ruling.  Essentially with -- with respect

6    to the wire transfers as we discussed and customer information

7    and sales of the devices.

8              And not obviously limited to these specific devices,

9    but sales of their products, generally, you know.  I think it's

10   fairly clear that you're principally at least, if not

11   exclusively, in the business of making one particular product.

12             But we'll figure out the language.  I'll issue that

13   order, so that you'll have it on ECF to let Chase know that

14   I've reviewed.

15             And I'll include in there some specific direction for

16   the parties to confer with Chase about how best to communicate,

17   you know, how best to effectuate the order and facilitate

18   Chase's compliance with the relevant limiting terms of the

19   subpoena.

20             And then, you're free to propose a subsequent order

21   or if they need some direction from (indiscernible).

22             MR. BLUME:  Okay, and as I understand it, Your Honor,

23   that if Chase is able to answer the question without further

24   involvement from you, you don't need further involvement?

25             THE COURT:  Right.

1          MR. BLUME:  And -- okay.

2          THE COURT:  If they look at the text order and I

3  magically come up with the words and they understand what it

4  means, that's fine.  If they would like some further

5  clarification, you can come back to me.  And that sounds fine,

6  all right?

7          MR. BLUME:  Okay.

8          THE COURT:  Good.  I'm not terribly confident my

9  ability to do it the first time around, but we'll see.  Lucky

10 -- sometimes we all get lucky.

11          All right.  All right, well, thank you all very much.

12 And have a good evening.  And we will be in touch after I

13 receive your briefing.

14          MR. BLUME:  Thank you, Your Honor.

15          MR. KRUCKENBERG:  Thank you, Your Honor.

16          MR. MARUTOLLO:  Thank you, Your Honor.

17          THE COURT:  All right, take care.

18          MS. STAMATELOS:  Thank you.

19      (Proceedings concluded at 7:05 p.m.)

20

21

22

23

24

25

1                              **CERTIFICATE**

2

3

4            I, Chris Hwang, court approved transcriber, certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9

10

11

12

13    _____          February 16, 2023

14    Chris Hwang                  Date

15    Court Reporter

16

17

18

19

20

21

22

23

24

25