

U.S. Department of Justice

United States Attorney
Eastern District of New York

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 29, 2023

**By ECF**

Honorable Nina R. Morrison
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Rare Breed Triggers, LLC, et al.*,
              No. 23-cv-369 (Morrison, J.) (Levy, M.J.)

Dear Judge Morrison:

      Pursuant to the Court's March 22, 2023 Order to Show Cause (Dkt. 36) directing the parties to show cause why this action should not be transferred to another district, the United States respectfully submits this letter brief explaining why the appropriate venue for this action is the Eastern District of New York, where the case should remain.

      Importantly, newly discovered evidence establishes that Defendants *themselves* have sold and shipped FRT-15s and FRT-15 parts *directly* to consumers in the Eastern District of New York and in other parts of New York. These sales should dispense with any remaining doubts about the Court's exercising personal jurisdiction over the Defendants.

      Defendants have substantial contacts with New York and should have reasonably expected to be hauled into court within the state when illegally selling their inherently dangerous product: the FRT-15 machinegun conversion device. These devices have, undeniably, ended up in this district. Moreover, the Eastern District of New York is as convenient and appropriate a forum as any other. Defendants run a business and a website that operates nationwide and have the ability and willingness to litigate in districts across the country. Combining these considerations with the deference that the Court should afford the United States' choice of forum leads to the conclusion that the case should remain before this Court.

**I.    Relevant Background**

      As the United States detailed in its Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Opposition Motion) (Dkt. 24), Defendants repeatedly and habitually used banking services in New York. *See* Opposition Motion at 3-6. At their direction, between January 6, 2021 and December 30, 2022, at least 289 wire transfers—totaling over $6.2 million—traveled through JPMorgan Chase bank in New York City to effect the purchase of their illegal products. *See id.* at 5-15. Defendants created a national market for their products by way of extensive advertising and marketing, *see id* at 3, which allowed them to sell their products directly to

customers in over 40 states. In addition, Defendants sold their products to dealers who re-sold those products to customers in New York. *See* Opposition Motion at pp. 3-6. In all, Defendants have sold more than 80,000 illegal products and received over $29 million in revenue in a little over two years. *See* Complaint (Dkt. 1) at ¶¶ 112, 194.

Significantly, Defendant Rare Breed Firearms shipped FRT-15s directly into New York. Evidence of the content of these shipments was recently discovered by the United States. As the Court recalls, the United States offered evidence, gleaned from United States Postal Service records, that Rare Breed Firearms shipped packages into New York. *See* Opposition Motion at p.3. ATF Special Agents have now contacted several recipients of those packages—in the Eastern District of New York and elsewhere in New York State—and have interviewed those recipients. *See* Exhibit A (Declaration of Special Agent Dean Conigliaro).[1] Several of the recipients have confirmed receiving FRT-15s or FRT-15 parts directly from Defendants. For instance, two recipients stated that they purchased FRT-15s directly from Rare Breed Triggers and that the FRT-15s were shipped to locations in Queens, New York. *See id.* ¶¶ 7-21. In both instances, the recipients stated that they relied upon content provided on RBT's website prior to purchasing the FRT-15 and were not aware, at the time of purchase, that the FRT-15 was classified as a machinegun. *See id*. One of those recipients voluntarily divested the FRT-15 to ATF Special Agents; the other stated that he had already disposed of the FRT-15 as it was defective.[2] *See id.* This evidence—of Defendant Rare Breed Firearms' shipping illegal products directly into New York—further establishes that personal jurisdiction is proper over all the Defendants and that venue is appropriate here.[3]

In a third instance, a recipient in Rochester, New York, provided ATF Special Agents with the FRT-15—which was still installed in a rifle at the New York location where the interview took place—along with the envelope in which the FRT-15 was shipped. *See id.* ¶¶ 34-39. That envelope has a return label noting that it came from Big Daddy Unlimited, the company that, as the Court recalls, was Defendant RBT's exclusive dealer for FRT-15s for much of 2021 and that sold the FRT-15 directly to consumers across the United States. *See* Opposition Motion at 3-4. The mailing envelope confirms that Big Daddy's sales included customers in New York. The recipient also provided the ATF Special Agents with a second package. *See* Exhibit A ¶¶ 34-39.

---

[1] Exhibit A does not set out the street addresses to which RBF shipped products in New York. The United States is seeking to protect personal information associated with third parties. The United States has separately provided Defendants with a spreadsheet that identifies the street addresses referenced in Exhibit A. The United States can provide the address information to the Court provided that appropriate measures are in place to the protect the information. The United States can confer with Defendants and the Court, as necessary, should the Court wish to be given the address information.

[2] The individual who received the defective FRT-15 stated that he contacted Defendant Rare Breed Triggers for a replacement but was told that the company no longer shipped products into New York. *See* Exhibit A ¶ 20.

[3] As set forth in its Opposition Motion, the New York Long-Arm Statute is a "single act" statute, in that proof of one transaction in New York is sufficient to invoke jurisdiction, even if the defendant never steps foot in New York, provided that one transaction is purposeful and related to the claim asserted. *See* Opposition Motion at 14-15.

Significantly, that package came from Rare Breed Firearms itself and was shipped directly to New York. *See id.* The package contained FRT-15 components, namely a lock bar and three springs, which the recipient had purchased because the recipient had become aware that those FRT-15 parts were susceptible to breaking. *See id.* ¶37.

In total, of seven recipients of packages from Defendants contacted by ATF to date, five confirmed receiving an FRT-15 directly in New York State, two of whom also received FRT-15 parts.[4] Such evidence is on top of the evidence of FRT-15s having been re-sold by Defendants' dealers to customers in New York and several FRT-15s and Wide Open Triggers (WOTS) having been recovered in the Eastern District of New York. *See* Opposition Motion at 19.

Given this recently discovered evidence, the United States is confident that discovery will uncover additional contacts between Defendants and New York. For instance, Defendants have *not* provided the United States their customer lists, asserting in response to discovery requests and to the Court that they did not find documents recording any sales or transfers of FRT-15s or WOTs into New York. It is now clear that such sales or transfers did occur, and it is incumbent on the Defendants to provide the United States—and the Court—the details about those sales and transfers.

## II. Legal Standard for Transfer of Venue

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action" to a district where it could have been brought in the first place. 28 U.S.C. § 1404(a). Analyzing whether a transfer of venue is appropriate is a three-step process: (1) deference given to the plaintiff's choice of forum; (2) the availability of an alternative forum; and (3) the balancing of public and private interests in the litigation. *See, e.g., Lust v. Nederlandse Programma Stichting*, 501 Fed. App'x 13, 14 (2d. Cir. 2012). A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer. *See In re Warrick*, 70 F.3d 736, 741 (2d Cir.1995).

## III. Venue is Proper in the Eastern District of New York

### A. The United States' Choice of Venue is Paramount

The Court should afford significant deference to the United States' choice of this forum. As a general matter, "[t]he Second Circuit has consistently held that 'a plaintiff's choice of forum is presumptively entitled to substantial deference.'" *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009) (Chin, J.) (citing *Gross v. BBC*, 386 F.3d 224, 230 (2d

---

[4] Two individuals in New York stated that they purchased the FRT-15s directly from Rare Breed Triggers' website, *see* Exhibit A ¶¶ 7-21; one individual stated that the purchase, along with the purchase of parts, was from a firearms forum, *see id.* ¶¶ 27-30; one individual stated that the purchase was from firearms broker website, *see id.* ¶¶ 31-33; and one individual purchased the FRT-15 from a dealer and FRT-15 parts directly from Defendants, *see id.* ¶¶ 34-39. One individual, through counsel, stated that the FRT-15 was shipped to Pennsylvania, not to the recipient's address in New York, as indicated by USPS records, and surmised that perhaps the recipient's billing address was confused for the recipient's mailing address. *See id.* ¶ 22-23. Another recipient stated that only t-shirts were purchased from RBF. *See id.* ¶¶ 24-25.

Cir. 2004)); *see also Brown v. Marriott Int'l, Inc.,* No. 14-CV-5960, 2017 WL 4484194 at *3 (E.D.N.Y. Sept. 29, 2017) (Townes, J.) (citation omitted).

The United States' choice is afforded even greater deference in this case because venue is established pursuant to 18 U.S.C. § 1345. As a general matter, venue is governed by 28 U.S.C. § 1391. By its very terms, however, § 1391 does not apply if a federal statute otherwise provides venue. *See id.* § 1391(a)(1) ("*Except as otherwise provided by law* … this section shall govern the venue of all civil actions brought in the district courts of the United States." (emphasis added)). Put another way, § 1391 only applies where a more specific venue provision does not exist. *See, e.g., Atlantic Marine Const. Co. v. U.S. Dist. Court for the Western Dist. of Tx.*, 571 U.S. 49, 55 n.2 (2013). Section 1345 has a more specific provision that covers venue (along with personal jurisdiction). *See* 18 U.S.C. § 1345. The statute states that "the Attorney General may commence a civil action in *any* Federal court" to enforce its provisions. 18 U.S.C. § 1345(a)(1) (emphasis added). Therefore, venue is proper in this Court (as it would be in any other federal district court). Section 1345 therefore displaces § 1391. *See* 14D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, *Federal Practice and Procedure*, § 3803 (2013).[5]

That venue is governed by a special, expansive statutory provision means that Congress intended for the plaintiff—here, the United States—to have great flexibility in where to bring a case. In such circumstances, courts have afforded maximum deference to the plaintiff's choice of forum. *See, e.g., Wellens v. Daiichi-Sankyo Co., Inc.* 2013 WL 3242294 at *3 (N.D. Cal. 2013). What is more, the Court should not give less deference to the United States because of any allegation that it is "forum shopping," in the negative sense. The Court should start with the assumption that the plaintiff chooses a forum because it is more convenient than any other alternative. *See* 14D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, *Federal Practice and Procedure*, § 3828.2 (2013). That assumption is borne out here.

New York City is in the midst of a gun violence epidemic, with illegal firearms flooding our streets from sellers located in states outside of New York. As the President stated when he visited New York City Police Department headquarters in 2022, "guns that are used to kill people

---

[5] During the March 17, 2023 oral argument, the Court expressed some concern over the reach of § 1345, positing a hypothetical circumstance in which a defendant that has *no* contacts with a given judicial district is forced to litigate a § 1345 action in that district nonetheless. Such a concern is heightened should that hypothetical defendant be hauled from across the county to defend itself. Valid though that concern is, it is of no moment in this case; the Court need not reach it. First, Defendants had significant contacts with New York. Second, the venue transfer rules can protect such a hypothetical defendant, as appropriate. Third, Due Process may provide some limit on the ability of the United States to bring a § 1345 action anywhere under any circumstance. There may be, in other words, some extreme context in which the location of such an action offends traditional notions of fair play or substantial justice. Courts have not defined when that may be, as yet, *see, e.g.,* Peter L. Markowitz & Lindsay C. Nash, *Constitutional Venue*, 66 Fla. L. Rev. 1153, 1187-97(2019) (discussing Due Process issues associated with statutes allowing national service of process), and this Court need not do so here. Wherever the bounds of Due Process may be, the facts here fit comfortably within them. As described herein and elsewhere in this matter, Defendants are a sophisticated, well-funded group with a national presence who had extensive contacts with New York in relation to a dangerous product that is highly regulated throughout the nation. To conclude that it is so offensively unfair as to violate Due Process to have them litigate in New York is insupportable.

in New York City [] aren't made in New York City [and] aren't sold in New York City. They are sold in other places."[6] The United States Attorney's Office for the Eastern District of New York aims to reduce the dangers associated with the circulation of these illegal guns through all available tools, including actions brought pursuant to § 1345. And as noted above, Defendants should have expected to be hauled into a court in New York since, as the Court noted at the May 17, 2023 oral argument, courts have held that if a defendant's "product is by nature inherently dangerous, then the defendant can more reasonably expect to be hauled into a forum where the product ends up even if they don't market it directly or sell it directly to someone in that jurisdiction." March 17, 2023 Transcript (Tr.) at 91 (referencing *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 335 (E.D.N.Y. 2007) ("[W]here a defendant deals in [ ] inherently dangerous products, a lesser showing than is ordinarily required will support jurisdiction . . . [A] commercial defendant who deals in handguns should expect to be held accountable on a lesser showing than one who sells something as harmless as rubber bands. It is the type of product in which the state will have an inherent interest.")) (citations omitted). The inherently dangerous FRT-15s and WOTs sold by Defendants are already present in this district, and each day that they remain on the streets here, they make a dire situation even worse.

Ultimately, after a thorough investigation, including an assessment of facts supporting the jurisdiction and venue in the Eastern District of New York, the United States filed suit in this district. Deference should be accorded to the United States' choice of forum in the Eastern District of New York.

### B. The Availability of an Alternative Forum is Not Controlling

The availability of an alternative forum alone is insufficient to mandate transfer of venue. *See EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012) (Bianco, J.) (denying motion to transfer venue where the parties did not dispute that the action could have been brought in the Northern District of California); *EMR (USA Holdings), Inc. v. Goldberg*, No. 18-CV-7849, 2019 WL 5537878, at *13 (S.D.N.Y. Oct. 25, 2019) (Ramos, J.) ("[T]he availability of an alternative forum is not dispositive."). In short, even if venue can lay elsewhere, that factor alone does not warrant a transfer of venue. As discussed below, there is no single venue that stands alone as an ideal forum for the matter, nor is there a forum any better suited than the Eastern District of New York to litigate the case.

### C. Public and Private Interests in the Litigation Do Not Overcome the United States' Choice of Forum

In considering the public and private interests in the litigation, a court should examine (1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based

---

[6] *See* https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/02/03/remarks-by-president-biden-at-a-gun-violence-prevention-task-force-meeting/.

on an assessment of the totality of material circumstances.  *See, e.g., JB Aviation v. R Aviation Charter Services, LLC,* 143 F. Supp. 3d 37, 48-49 (E.D.N.Y. 2015).

Given the deference that is to be afforded the United States' choice here, the Court should only transfer venue if other relevant factors far overwhelm that choice.  *See* 14D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, *Federal Practice and Procedure*, § 3828.2 (2013) ("[D]ismissal is the exception, not the rule, and … there must be a strong showing that the alternative forum would be significantly more convenient and better serve justice than the one chosen by the plaintiff, that the present forum imposes an undue burden.").  They do not.  Defendants simply cannot meet their "heavy burden of showing that transfer is proper under the circumstances."  *Pahmer v. Supermarkets Commc'n Sys., Inc.*, No. 95-CV-093, 1996 WL 32144, at *1 (S.D.N.Y. Jan. 25, 1996) (Parker, J.) (denying motion to transfer venue).

1.      With respect to the convenience of the parties, Defendants themselves are located in three separate states (Florida, Texas, and North Dakota).  The individually named Defendants are sophisticated litigants.  They have affirmatively chosen to commence, and actively pursue, federal lawsuits in Florida, North Dakota, Ohio, and Oklahoma.  *See* Opposition Motion at 24 and n.17.  They cannot credibly argue that it would be exceptionally inconvenient to travel to New York City given their prior litigation in regions across the country.

2.      With respect to the convenience of the witnesses, "[c]ourts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer."  *Schuyler v. Sun Life Assurance Co.*, No. 20-CV-10905 (RA) (BCM), 2021 WL 5853991, at *3 (S.D.N.Y. Dec. 9, 2021) (cleaned up).  The aim of this factor is not necessarily to tally the number of witnesses in each proposed forum, but to assess the materiality of their anticipated testimony.  *See Williams v. Swack*, No. 12-cv-1552, 2013 WL 5423791, at *4 (E.D.N.Y. Sept. 26, 2013) (Amon, J.).  Here, witnesses, whether for the United States or the Defendants, come from all over the country (New York, Florida, Michigan Texas, Utah, Virginia, and West Virginia).  *See* Opposition Motion at 24 and n.18.  Consumer witnesses too come from across the country, including from New York.  Judging from Defendants' submissions, the witnesses most important to them will likely be the individuals who can explain whether, from a mechanical standpoint, the FRT-15 is lawful.  Those witnesses, including an expected witness for the United States, are located in Florida, Michigan Texas, Virginia, and West Virginia.  Two of those individuals, one from Texas and one from Michigan, have already shown that they will travel to participate in litigation; they appeared personally to testify on behalf of one of the Defendants at a litigation in Florida.  *See id.*  Defendants have also secured representation from a nonprofit legal organization based in Virginia that handles litigation nationwide.  Defendants' attorneys have six cases in New York;[7] indeed, one of Defendants' attorneys brought suit in this district last year.[8]  Given the availability of virtual options for witness testimony, as well as the attorneys' ability to physically travel, as necessary, for witness depositions, any inconvenience to witnesses will be minimal.

---

[7] *See About Pacific Legal Foundation*, PACIFIC LEGAL FOUNDATION (Mar. 27, 2023) https://pacificlegal.org/about/.

[8] *See Roberts v. Bassett*, No. 22-CV-710 (Garaufis, J.) (Levy, M.J.) (E.D.N.Y.).

3. With respect to the relative means of the parties, "[a] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Federman Assocs. v. Paradigm Medical Indus., Inc.*, No. 96 Civ. 8545, 1997 WL 811539, *4 (S.D.N.Y. Apr. 8, 1997). Based on the limited discovery obtained thus far, Defendants can make no such showing. They have grossed millions of dollars as part of their business operations. The costs of limited travel to New York City for hearings in court will be nominal.

4. With respect to the locus of operative facts and the relative ease of access to sources of proof, relevant documents are likely in at least six states (New York, Florida, North Dakota, Texas, Utah, and West Virginia). *Cf. U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F.Supp.3d 517, 540 (S.D.N.Y.2014) ("Courts in this district recognize that '[t]he location of documents, is neutral in today's era of photocopying, fax machines and Federal Express.'") (citation omitted). Some of the operations of Defendant Rare Breed Triggers was in Florida; some in Texas; some in North Dakota. Key activity was in Utah, where the FRT-15 was manufactured and where Defendant DeMonico interfered with a federal search warrant. Banking occurred in New York. The ATF classified the FRT-15 as a machinegun in West Virginia. Consumers from all over the nation were misled.

5. With respect to the attendance of witnesses, as noted above, given the virtual options available and the availability of the attorneys to travel, as needed, for depositions, any inconvenience related to the attendance of witnesses will be minor.

6. With respect to the weight accorded the United States' choice of forum, as noted above, deference should be given to the United States' choice of the Eastern District of New York. A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70 (2d Cir.2001) ("'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'") (citation omitted).

7. With respect to calendar congestion, for the 12-month period ending December 31, 2022, the statistics for the Eastern District of New York showed that there were 8,956 cases pending, and that the median time for resolution of a civil case was 5.9 months. *See* Exhibits B, C. While this district is one of the busiest districts in the nation, the United States believes that a speedy resolution of this matter is likely, especially given the expedited nature of the relief sought, the submissions already raised before this Court, and the advocacy on both sides. *Cf. Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998) ("[w]hile differences in docket crowding are entitled to some weight, this factor is . . . accorded little weight in this district.").

8. With respect to the desirability of having the case tried by the forum familiar with the substantive law to be applied, the United States did not choose this forum to take advantage of some favorable law; after all, the United States' action rests on national fraud and firearms laws applicable nationwide. What is more, the Eastern District of New York has extensive experience litigating § 1345 actions addressing a wide variety of unlawful conduct. *See, e.g.,* The United States of America's Memorandum of Law in Support of its Motion for a Temporary Restraining Order and Preliminary Injunction, (Dkt. 5) at 17-18, 36 (highlighting § 1345 cases in the Eastern District of New York).

Defendants seem to imply that the United States brought this matter in New York to avoid a recent Fifth Circuit decision concerning the relevant regulation that defines a machinegun. Not so. That decision, *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), was issued mere days before the United States filed this action. What is more, at least four other U.S. Circuit Courts of Appeals have ruled on the relevant regulation and upheld it, including the Eleventh Circuit, which governs Florida, the former location of Defendant RBT and home of Defendant Kevin Maxwell. The Second Circuit has not, however, ruled directly on the regulation at issue. And as the United States is prepared to establish when appropriate, *Cargill* simply does not apply to this case. Nonetheless, "[a] forum's familiarity with the governing law [. . .] is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 550-51 (S.D.N.Y. 2008) (denying motion to transfer venue).

9. With respect to any practical difficulties, any such difficulties would only seem to arise from a transfer of venue. The United States brought this action on an emergency basis, secured a temporary restraining order following an emergency hearing, and has engaged in multiple hearings with the Court to address substantive legal issues related to this case. Transferring venue—which may also mean that there will be newfound challenges to the temporary restraining order that is currently in place only through June 30, 2023 (Dkt. 37)—will further delay the United States' efforts to obtain a preliminary injunction in this matter.

10. And finally, with respect to how best to serve the interest of justice, based on an assessment of the totality of material circumstances, the interests of judicial economy would best be served by keeping this case with the same court that has already reviewed numerous briefs in this matter, heard hours of oral argument, and evaluated the United States' initial motion for a temporary restraining order.

### IV. **Alternative Recommendation**

In its Order to Show Cause, the Court asked each party to recommend a district to which this matter could be transferred if the Court were to do so. While the United States asserts that the Eastern District of New York is the proper forum, the United States respectfully submits that, should the Court decide to transfer venue, the District of Connecticut is also an appropriate forum.[9] Defendants appeared to concede that Connecticut was a proper forum at the March 17, 2023 oral argument. *See* Tr. at 49-50 (Defendants' attorney noted that he "would readily agree that the United States has personal jurisdiction for any of those states wherever their customers are located, wherever the dealers are located."). Indeed, Defendant Rare Breed Triggers sold WOTs directly

---

[9] The District of Connecticut would have personal jurisdiction over the Defendants. First, § 1345 confers that district with jurisdiction. Second, in the alternative, should the Court look to Connecticut's long-arm statute, per Federal Rule of Civil Procedure 4(k)(1)(A), there would be jurisdiction. Connecticut's long-arm statute confers jurisdiction over anyone who "[t]ransacts any business within the state." Conn. Gen. Stat. § 52-59b(a)(1). A single transaction will satisfy the statute. *See, e.g., Mystic Days, LLC v. Chhatrala Mystic*, LLC, 2021 WL 619682 *2 (D. Conn. 2021). Defendant RBT sold WOTs in Connecticut. *See* Exhibit A ¶¶ 40-41. Because the United States does not yet have access to the Defendants' customer lists, the United States does not yet have evidence that the Defendants sold FRT-15s into Connecticut, although there is no indication in the record that the Defendants tried to avoid doing so.

to consumers in Connecticut, thereby establishing a clear nexus with the forum. *See* Exhibit A ¶¶ 40-41.[10]

Further, given its proximity to New York, these machinegun conversion devices that have been sold to consumers in Connecticut continue to represent a danger to the people of the Eastern District of New York. The same reasons that the public and private interests associated with the case establish that the Eastern District of New York is an appropriate venue also establish that the District of Connecticut would be an appropriate venue. The District of Connecticut is also not burdened by extreme docket congestion. According to statistics from the Administrative Office of the United States Courts, as of December 31, 2022, the District of Connecticut had 1,897 civil cases pending. The median time from commencement of a civil case to resolution was 8.8 months. *See* Exhibits B, C.

In sum, venue is proper and appropriate in the Eastern District of New York. The case should remain here. The United States thanks the Court for its consideration of this matter.

                                                Respectfully submitted,

                                                BREON PEACE
                                                United States Attorney

By:     */s/ Michael S. Blume*
          Michael S. Blume
          Joseph A. Marutollo
          Paulina Stamatelos
          Assistant U.S. Attorneys
          (718) 254-6479 / 6288 / 6198
          Michael.Blume@usdoj.gov
          Joseph.Marutollo@usdoj.gov
          Pauline.Stamatelos@usdoj.gov

Encl.

cc: All Counsel of Record (By ECF)

---

[10] As the Court will recall, in November 2022, Defendant Rare Breed Triggers obtained a supply of WOTs, which are a copy of the FRT-15s. Defendant Rare Breed Triggers sold them directly to consumers and shipped them under the name "Red Beard Treasures." *See* Complaint ¶¶ 177-82.