# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>- v. -<br><br>RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC; LAWRENCE DEMONICO; KEVIN MAXWELL,<br><br>                  Defendants. | 1:23-CV-00369<br>(NRM) (RML) |

## DECLARATION OF SPECIAL AGENT DEAN CONIGLIARO

I, Dean Conigliaro, have personal knowledge of the following facts set forth below, and if called as a witness I would testify as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and am currently assigned to the New York Field Division's Joint Firearms Task Force, where I investigate violations of federal firearms law relating to firearm trafficking, violent crime, and the illegal use, possession, shipment, and transportation of firearms.

2. The facts set forth in this declaration are based on my personal knowledge; knowledge obtained during my participation in this investigation; information from other individuals, including other law enforcement officers conducting investigations into defendants, confidential informants, and other parties; witness interviews; and my review of documents, public records, ATF records, and other sources. The information contained in this declaration is a summary and does not incorporate all facts known to me regarding this investigation.

3. This investigation involves the Rare Breed Triggers model FRT-15, manufactured, marketed and sold by defendants Rare Breed Triggers, LLC (RBF) and Rare Breed Firearms, LLC (RBF), Kevin Maxwell (Maxwell), and Lawrence DeMonico (DeMonico) (collectively,

Defendants). The investigation also involves the sale of the Wide Open Trigger (WOT) by Defendants.

4. This Declaration serves as a supplement to the Declaration of Special Agent Daniel Koneschusky filed with the complaint in this action on January 19, 2023 (Koneschusky Decl.). (Dkt. 7) and the Declaration of Special Agent Dean Conigliaro, dated February 23, 2023 (Dkt. 25).

**DEFENDANTS HAVE SOLD PRODUCTS DIRECTLY INTO NEW YORK**

5. Defendant RBF shipped packages directly to addresses in New York State. *See* Dkt. 25 at ¶¶ 9-11.

6. ATF Special Agents have visited several of those addresses in the Eastern District of New York, and elsewhere in New York, and spoken to the recipients identified in records provided by the United States Postal Service (USPS).

7. According to records obtained from the USPS, Defendant RBF shipped a package to an address in Maspeth, in Queens, New York, which was addressed to Recipient One (R-1). The shipping label was printed on October 14, 2021, at 9:16 a.m.

8. On March 23, 2023, I interviewed R-1 at the shipping address in Maspeth, Queens, identified in the USPS records, as part of the present investigation.

9. R-1 voluntarily informed me that R-1 purchased an FRT-15 from RBT's website in approximately September 2021 for approximately $325.00. R-1 learned about the item from YouTube videos.

10. R-1 stated that the FRT-15 was shipped to the address in Maspeth upon ordering it. This was the same address identified on the USPS records.

11. R-1 stated that when R-1 purchased the FRT-15 online, R-1 was unaware that the FRT-15 was classified as a machinegun. R-1 stated that R-1 relied upon content provided on RBT's website prior to purchasing the FRT-15.

12. Following the interview, I informed R-1 that the FRT-15 is, in fact, a machinegun. Upon learning from ATF that the FRT-15 is a machinegun, R-1 voluntarily turned the FRT-15 over to ATF and signed ATF Form 3400.1, Consent to Forfeiture or Destruction of Property and Wavier of Notice.

13. ATF secured R-1's FRT-15.

14. According to USPS records, Defendant RBF shipped a package to an address in Bayside, in Queens, New York, which was addressed to Recipient Two (R-2). The shipping label was printed on March 3, 2022, at 7:55 a.m.

15. On March 23, 2023, I interviewed R-2 in Queens, New York, as part of the present investigation.

16. R-2 voluntarily informed me that R-2 purchased an FRT-15 from RBT's website approximately one-and-a-half to two years ago for approximately $400.00.

17. R-2 stated that the FRT-15 was shipped upon ordering it to R-2 in Bayside, New York, at the same address identified on the USPS records.

18. R-2 stated that when R-2 purchased the FRT-15 online, R-2 was unaware that the FRT-15 was classified as a machinegun. R-2 stated that R-2 relied upon content provided on RBT's website prior to purchasing the FRT-15.

19. R-2 added that R-2 never used the FRT-15 because the FRT-15 broke and came apart very easily.

20. R-2 stated that R-2 attempted to reach out to RBT for a replacement FRT-15, but was informed that they no longer ship to New York.

21. R-2 stated that R-2 no longer has the FRT-15 because it broke and R-2 discarded it in the trash.

22. According to USPS records, Defendant RBF shipped a package to an address in Oceanside, in Nassau County, New York, which was addressed to Recipient Three (R-3). The shipping label was printed on December 7, 2021, at 10:12 a.m.

23. On March 23, 2023, ATF Special Agents telephonically interviewed R-3. R-3 voluntarily consented to an interview, during which R-3 confirmed the purchase of an FRT-15 from Rare Breed Triggers or Rare Breed Firearms several years prior. R-3 stated that after the purchase, R-3 began reading about the potential illegality of the FRT-15 and decided to give the FRT-15 to an employee of a gun store in Pennsylvania. On March 28, 2023, R-3 asserted, through counsel, that the FRT-15 was shipped to R-3 in Pennsylvania. When questioned further, counsel for R-3 stated that R-3 does not recall having anything delivered to New York and that the company did not ship to New York, but that perhaps R-3's billing address was confused for the shipping address.

24. According to USPS records, Defendant RBF shipped a package to an address in Glen Head, in Suffolk County, New York, which was addressed to Recipient Four (R-4). The shipping label was printed on September 3, 2021, at 9:47 a.m.

25. On March 23, 2023, ATF Special Agents interviewed R-4 at the shipping address identified in the USPS records. R-4 informed the ATF Special Agents that R-4 purchased two t-shirts. R-4 stated that R-4 made no other purchases from "Rare Breed".

4

26. According to USPS records, Defendant RBF shipped a package to an address in Niskayuna, New York, in the Northern District of New York, to Recipient Five (R-5). The shipping label was printed on June 15, 2021, at 11:38 a.m.

27. On March 24, 2023, an ATF Special Agent and an ATF Task Force Officer (TFO) telephonically contacted R-5 who confirmed purchasing an FRT-15 approximately four years prior. R-5 agreed to be interviewed in person.

28. On March 27, 2023, the ATF Special Agent and ATF TFO interviewed R-5 in person. R-5 stated the purchase of the FRT-15 was via mail order from a firearms forum, but could not recall the exact forum. The transaction was completed online and paid for with a credit card. The total cost was approximately $500. The FRT-15 was shipped to R-5 in a non-descript white box. R-5 had an additional contact with the seller in order to purchase a spring kit for the FRT-15 after the FRT-15 was purchased.

29. R-5 stated that all correspondence received prior to purchasing the FRT-15 claimed the item was legal. R-5 confirmed not wanting the FRT-15 and stated further that R-5 would not have purchased the FRT-15 had the manufacturer been honest with the marketing of the FRT-15.

30. R-5 voluntarily turned the FRT-15 over to ATF and signed ATF Form 3400.1, Consent to Forfeiture or Destruction of Property and Wavier of Notice.

31. According to USPS records, Defendant RBF shipped a package to an address in Rochester, New York, in the Western District of New York, to Recipient Six (R-6). The shipping label was printed on May 10, 2021, at 7:20 p.m.

32. On March 28, 2023, ATF Special Agents interviewed R-6 at the address identified in the USPS records. R-6 admitted to purchasing the FRT-15 and stated that the FRT-15 was destroyed by R-6 after new laws were enacted in New York.

33. R-6 stated that the FRT-15 was purchased through the website GunBroker.com, a website on which firearms and associated parts and accessories are commonly sold. R-6 stated the purchase was completed online and the purchase price was approximately $340, with payment made by credit card. R-6 confirmed that the FRT-15 was shipped in a small box through USPS. R-6 no longer possessed the box. R-6 stated further that R-6 made no further purchases from the seller and had no further contact with the seller beyond the purchase transaction.

34. According to USPS records, Defendant RBF shipped a package to address in Rochester, New York, in the Western District of New York, to Recipient Seven (R-7). The shipping label was printed on May 7, 2021, at 3:10 p.m.

35. On March 27, 2023, ATF Special Agents contacted R-7 at the address identified in the USPS records. R-7 confirmed the purchase of the FRT-15 and stated further that the FRT-15 was still installed in a rifle owned by R-7 at the location where the interview took place. The ATF Special Agents informed R-7 that the FRT-15 is classified as a machinegun and is illegal to possess. R-7 agreed to be interviewed.

36. R-7 stated that R-7 still had the original packaging from the shipment and agreed to show the packaging to the ATF Special Agents so that photographs could be taken. R-7 also stated that the FRT-15 could be removed from R-7's rifle in approximately 30 minutes. R-7 was provided time to do so while the ATF Special Agents waited outside. A short time later, R-7 exited the location with (i) the FRT-15; (ii) the original bubble mailer envelope for the FRT-15 with the shipping label indicating it had been shipped from Big Daddy Unlimited to R-7 in Rochester, New York on March 4, 2021; and (iii) a small square box with the shipping label indicating it had been shipped from Rare Breed Firearms to R-7 in Rochester, New York, and which contained three (3) additional lock bar springs and (1) additional lock bar (FRT-15 components). Photographs of the

6

packaging are attached hereto at Attachments 1 and 2.  R-7 stated the springs and lock bar in the box with the RBF shipping label were purchased because R-7 had read reviews online that those FRT-15 parts were susceptible to breaking.

37.     The shipping label on the RBF package addressed to R-7 is consistent with the information contained in the USPS records.

38.     R-7 confirmed the FRT-15 was purchased from Big Daddy Unlimited and that R-7 has learned of the seller from YouTube.  The purchase was made online at an approximate cost of $200 to $300, with payment made by credit card.  R-7 was unaware that ATF had classified the FRT-15 as a machinegun.

39.     R-7 voluntarily turned the FRT-15 over to ATF and signed ATF Form 3400.1, Consent to Forfeiture or Destruction of Property and Wavier of Notice.

## DEFENDANTS HAVE SOLD PRODUCTS DIRECTLY INTO CONNECTICUT

40.     Defendant RBT shipped packages containing WOTs.  *See* Dkt. 7 at ¶¶ 102-07.  The shipping labels on the packages indicated that they came from "Red Beard Treasures."  *See id.*

41.     Defendant RBT shipped such packages directly to addresses in Connecticut.  According to USPS records, RBT shipped 16 packages to Connecticut recipients.  This includes one recipient who received two packages, and one recipient who may have received multiple WOTs in a single package based on the package weight.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on March 29, 2023.

By: _____
Dean Conigliaro
Special Agent

# Attachment 1



# Attachment 2

