

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

EXECUTIVE DIVISION

Writer's Direct Dial: (212) 416-6556

March 29, 2023

**Via ECF**

The Honorable Nina R. Morrison
United States District Court for the Eastern District of New York
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Rare Breed Triggers, LLC, et al., No. 23 Civ. 369 (NRM) (RML)

Dear Judge Morrison,

I submit this letter on behalf of the State of New York. The State has a significant interest in the active and effective enforcement of federal firearms laws, including laws prohibiting the sale and possession of automatic weapons. The State submits this letter to explain its experience and concerns about the automatic conversion devices at issue in this case, which may inform this Court's evaluation of the proper venue for this dispute.

Federal law has banned automatic weapons, which fire continuously with a single pull of the trigger, for nearly a century. See National Firearms Act of 1934, 48 Stat. 1236 *et seq.*; see also 18 U.S.C. § 922(o). The United States Supreme Court has recognized that automatic weapons are "sophisticated arms that are highly unusual in society at large" and may therefore be restricted lawfully. District of Columbia v. Heller, 554 U.S. 570, 627 (2008).

Against the backdrop of the prohibition on automatic weapons, manufacturers have developed automatic conversion devices, which modify commercially available semiautomatic weapons to be capable of fully automatic fire. These devices range from tiny auto sears, a small piece of plastic or metal that can convert a Glock or similar handgun to fire automatically, to bump stocks of the type that a person in Las Vegas, Nevada used to fire indiscriminately into a crowd of concert goers, killing 60 people and wounding over 400. The Las Vegas shooting was the deadliest mass shooting in American history, and it would not have been possible without an automatic

conversion device. Automatic conversion devices have played a role in tragic shootings in New York as well.[1]

The number of automatic conversion devices is increasing nationwide and in New York. Statistics from the federal Bureau of Alcohol Tobacco, Firearms, and Explosives ("ATF") show that the number of automatic conversion devices recovered in connection with crimes between 2017 and 2021 represented a *570% increase* over the previous period.[2] A similar increase in New York led the state Legislature to pass landmark laws banning the sale or possession of any rapid-fire modification device in July 2019. See 2019 N.Y. Laws ch. 130; N.Y. Penal Law §§ 265.01-c, 265.10.

According to the United States's complaint, Defendants manufacture automatic conversion devices and ship them into New York, notwithstanding federal and state prohibitions on automatic weapons and conversion devices. See Complaint ¶¶ 8-13. Stopping the spread of these deadly devices is a major focus for New York State law enforcement. Several months ago, the New York Attorney General's Organized Crime Task Force, working in conjunction with the New York Police Department and the federal Drug Enforcement Administration, announced an indictment of three individuals operating in Queens and Suffolk Counties who constructed untraceable "ghost guns" using parts obtained from online firearms retailers and modified them with automatic conversion devices before selling them.[3] As part of this investigation, law enforcement recovered eighteen firearms modified to fire automatically, together with forty-six high capacity ammunition feeding devices.[4] Other New York law enforcement agencies have interdicted several similar operations in recent months, each of which utilized automatic conversion devices to create machine guns for the illicit market.[5]

The Complaint further alleges that Defendants utilized "a complex set of interlocking companies" and New York financial institutions to obscure their activities, see Complaint ¶¶ 74-85, and that Defendants used third-party dealers to sell their products to New Yorkers, see id. ¶¶ 106-07, 164. These allegations, if true, are consistent with a pattern of practice that New York law enforcement has encountered in other cases and investigations, in which companies seeking to profit from the market for illegal firearms utilize third-party entities, sometimes without any

---

[1] See, e.g., Bobby Welber, Illegal 'Machine Gun' Killed New York Father In Hudson Valley, Hudson Valley News, Oct. 5, 2022, available at https://hudsonvalleypost.com/illegal-machine-gun-killed-new-york-father-in-hudson-valley/ (discussing the murder of a Long Island man visiting his son at Marist College, carried out with a Glock handgun modified by an automatic conversion device).

[2] ATF, National Firearms Commerce and Trafficking Assessment (NFCTA): Crime Guns, Vol. 2, Part VII, at 4, *available at* https://www.atf.gov/firearms/docs/report/nfcta-volume-ii-part-vii-recommendations/download.

[3] See Press Release, Attorney General James and NY Drug Enforcement Task Force Take Down Ghost Gun Trafficking Ring, available at https://ag.ny.gov/press-release/2022/attorney-general-james-and-ny-drug-enforcement-task-force-take-down-ghost-gun.

[4] Id.

[5] See, e.g., WRGB Albany, Father, Son & third man arrested, dozens of guns, ammo recovered from Greenwich home, Aug. 19, 2022, available at https://cbs6albany.com/news/local/father-son-third-man-arrested-dozens-of-guns-ammo-recovered-from-greenwich-home (August 2022 takedown of Capital Region trafficking operation including "kits to convert firearms into fully automatic weapons"); Press Release, Queens County District Attorney, Queens Man Charged With Posssessing Arsenal of Illegal Weapons, Mar. 4, 2023, available at https://queensda.org/queens-man-charged-with-possessing-arsenal-of-illegal-weapons/ (March 2023 takedown of Queens trafficking operation including rapid-fire conversion device).

obvious affiliation, to distance themselves from activities that violate the state, federal, and local laws protecting New Yorkers from gun violence.

  For the reasons set forth above, the State welcomes civil enforcement actions such as this one, which complement the State's law enforcement efforts and ensure that federal firearms laws are effective in protecting the public from gun violence.

        Respectfully submitted,

        James M. Thompson
        Special Counsel for Second Amendment Litigation
        james.thompson@ag.ny.gov

Cc: All counsel of record (via ECF)