

March 31, 2023

**By ECF**
Honorable Nina R. Morrison
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v. Rare Breed Triggers, LLC, et al.*, No. 23-cv-369 (Morrison, J.) (Levy, M.J.)

Dear Judge Morrison:

Defendants write in reply to the United States of America's Response to this Court's Order to Show Cause why this matter should not be transferred. *See* ECF No. 40. For the reasons that follow, Defendants respectfully request that this matter be transferred to the U.S. District Court for the Western District of Texas.

**I. New York Is Not the Most Appropriate Forum for this Action**

The United States primarily argues that this case should simply stay where it is. ECF No. 40 at 3. But the Government's insistence that New York is the *best* forum, assumes the conclusion that it is a *permissible* forum. *See Calabrese v. Teoco Corp.*, 637 F.Supp.2d 160, 163 (S.D.N.Y. 2009) ("When considering whether the discretion to transfer should be exercised, the court considers first whether venue is proper in the proposed transferee district."). The point of Defendants' motion to dismiss is to stress that it is not a lawful forum to begin with.

But the potential transfer to a different forum is still a way to resolve this issue without deciding the difficult jurisdictional question entirely. Courts have "broad discretion" to evaluate whether transfer would promote justice and convenience, and consider such requests "on a case-by-case basis." *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). "This is true regardless of whether the court has personal jurisdiction over the defendant." *MDG Real Est. Glob. Ltd. v. Berkshire Place Assocs.*, LP, 513 F.Supp.3d 301, 308 (E.D.N.Y. 2021). In other words, transfer would still be appropriate without ruling on the existence of personal jurisdiction.

And, as Defendants have argued, New York is hardly the *best* forum. The Government insists that this Court owes "paramount" deference to its choice of forum, in part because it

argues that it has personal jurisdiction over Defendants under 18 U.S.C. § 1345. ECF No. 40 at 3-4. Once again, this premise assumes the validity of the Government's conclusion.

Moreover, courts have regularly concluded that *unlike* a normal plaintiff, "the Government is no more a resident of New York than it is of [another district], and so its choice of forum is not entitled to the additional deference that a resident plaintiff's choice of forum would receive under Second Circuit precedent." *United States v. Stamps*, No. 18-CV-1106 (BMC), 2018 WL 6031155, at *2 (E.D.N.Y. Nov. 16, 2018). Further, "the deference a court gives to the plaintiff's forum choice decreases where the operative facts ... bear little material connection to the chosen forum." *Hamilton Int'l Ltd. v. Vortic LLC*, 414 F.Supp.3d 612, 623–24 (S.D.N.Y. 2019) (citation omitted). As there's no dispute that the conduct at issue was aimed entirely outside of New York, from Defendants' operations center in Texas, the Government's insistence that its choice to litigate here anyway is not worth crediting.

Beyond its request for deference, the Government simply argues that the necessary difficulties with forcing Defendants to defend this matter far away from where all the witnesses live, the relevant records are kept, and underlying actions occurred wouldn't be too onerous, "given the virtual options available and the availability of the attorneys to travel." ECF No. 40 at 7. If that were all it took to defeat a transfer of venue, then it's hard to see that transfer would ever be proper. The question isn't whether it is *possible* to litigate this matter in New York, it is whether, in fairness to the parties, it *should be* litigated here. All of the relevant factors suggest that transfer to Texas would be appropriate.

## II. Transfer to Connecticut Would Be Inequitable

The Government's only direct response to this Court's Order to Show Cause is a brief suggestion that transfer to Connecticut might be permissible. *See* ECF No. 40 at 8-9. It mostly argues that transfer to that district would be *permissible*, but makes almost no effort to argue it would be *appropriate*. *See id.* Indeed, the Government simply says that Connecticut has roughly "the same" "public and private interests" in the lawsuit as New York. *Id*. at 9. As we've seen, those interests are highly attenuated, and come at the cost of the remaining equitable factors. Surely this litigation should be transferred to a district that bears a closer relation to the matter at hand.

## III. The Government's Hearsay Allegations Going to Disputed Jurisdictional Facts Should Be Rejected Wholesale

The Government's main argument, it seems, is that it should succeed in its effort to resist Defendants' motion to dismiss, and relies on what it claims to be new evidence. *See* ECF No. 40 at 1-2. Not only is this the wrong time and place for the Government to make such an argument, its presentation of anonymous hearsay statements should be rejected. These allegations are simply false.

Recall that "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). While a plaintiff can discharge this burden by pleading facts in declarations, "[i]f the defendant contests the plaintiff's factual allegations, then a hearing is *required*, at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (emphasis added). And when there is a factual dispute, this Court presumptively considers the motion as it would a motion for summary judgment under Rule 56. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). But, of course, a movant's burden to establish even a prima facie case on summary judgment requires presentation of "admissible evidence" of the material facts—not hearsay. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 44 (2d Cir. 2000); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

The parties have already been through these standards as it relates to Defendants' motion for dismissal. And the Government agreed that there was no dispute of facts warranting a hearing. But now, to address the separate question of equitable transfer of venue, the Government presents hearsay accounts of anonymous witnesses to try to discharge its burden. Procedurally, the Government's tactics shouldn't be rewarded. Regardless, the Government certainly hasn't presented any admissible evidence for its new factual assertions, and, even if it had, this Court would be required to hold an evidentiary hearing to resolve the disputed facts.

Initially, the Government's claims in its letter brief aren't supported by the evidence it has submitted. The Government sets up a bait-and-switch. It claims that "newly discovered evidence establishes that Defendants *themselves* have sold and shipped FRT-15s and FRT-15 parts *directly* to consumers in the Eastern District of New York and in other parts of New York." ECF No. 40 at 1. And it states: "Defendant Rare Breed Firearms shipped FRT-15s directly into New York." *Id.* at 2. The bait has been set.

But then comes the switch. Special Agent Conigliaro's declaration reveals the truth—RBF shipped products directly to New York, *but those weren't FRT-15s*. Special Agent Conigliaro shifts so rapidly between *which* entity is involved, it's easy to reach assumptions that aren't supported. He claims, accurately, that "RBF shipped packages directly to addresses in New York State." ECF No. 40-1 at ¶ 5. And then he lists each shipment from RBF with a date and time. *See id.* at ¶¶ 7, 14, 22, 24, 26, 31, 34. The special agent also notes that six of these customers also purchased FRT-15s from RBT. *See id.* at ¶¶ 9, 16, 23, 28, 33, 36. A careless reader might conclude that RBF was sending the FRT-15s. Surely that was the inference the Government hopes one might

draw, and is what it has declared to be a fact in its letter brief. But of the seven anonymous RBF customers, the special agent omits entirely what *RBF* shipped to five of the customers. The two he discusses were T-shirts and springs, the latter of which the Government claims were spare parts for the FRT-15. *See id.* at ¶¶ 25, 36. Of course, the government doesn't claim that these springs were prohibited, or even regulated items. The Government seems to just hope that one will draw an incorrect conclusion from its presentation of facts.

To be sure, the special agent does present hearsay statements from six of these anonymous customers, that they had obtained FRT-15s at one point or another. But yet again, this relies on a highly misleading presentation. For one customer, we learn that "the FRT-15 was shipped to [him] in Pennsylvania." *Id.* at ¶ 23. One said the "purchase of the FRT-15 was via mail order from a firearms forum, but could not recall the exact forum." *Id.* at ¶ 28. The next "stated that the FRT-15 was purchased through the website GunBroker.com, a website on which firearms and associated parts and accessories are commonly sold." *Id.* at ¶ 33. Yet another purchased the trigger from "Big Daddy Unlimited," which is a non-party to this suit. *Id.* at ¶ 36. These purchases are simply irrelevant.

This leaves two anonymous customers, "R-1" and "R-2," who the special agent claims said purchased the FRT-15 directly from RBT—one in September 2021, the other "approximately one-and-a-half to two years ago." *See id.* at ¶ 9-10, 16-17. This anonymous hearsay, presented *after* the Government agreed there were no material disputes of fact, is a tenuous basis to cling to this district's jurisdiction.

Fortunately, the rules contemplate this kind of hearsay presentation—allegations like this can't discharge the relevant burden. There is no *admissible* evidence in the declaration that could discharge the Government's burden to show these alleged jurisdictional facts. *See Ball*, 902 F.2d at 197. Indeed, Special Agent Conigliaro's declaration relies entirely on inadmissible hearsay from anonymized sources. *See* FRE 801(c); 802. The only relevance to the assertions allegedly made by these unknown people to the special agent is the claimed truth of RBT's selling practices. But inadmissible hearsay can't be used as the sole basis to establish a material fact. *See Weinstock*, 224 F.3d at 44.

The anonymous allegations also happen to be false. RBT never sold FRT-15s or WOTs to customers who provided addresses in New York. Attachment A at ¶ 5. And to try to prove the negative, the defendants have reviewed RBT's records and can confirm that no items were ever shipped to either of those addresses. *Id*. at ¶ 9. It also reviewed RBF's customer records associated with these two addresses, which reveal that customer "R-1" purchased springs and customer "R-2" purchased T-shirts from RBF—not triggers. *Id.* at ¶ 10. The defendants even reviewed the names of the RBF customers associated with those addresses, and note that customer "R-1" was never a customer of RBT, while a customer that shares customer "R-2"'s last name purchased an

FRT-15 using a billing and shipping address in North Carolina. *Id.* at ¶ 10. In short, even if they possessed them, these customers didn't order FRT-15s directly to New York, they either had them shipped to addresses outside this jurisdiction or purchased them from someone else.

But even if this Court is willing to overlook all of these problems with the Government's newfound arguments, it cannot rely on the new allegations to find the Government has met its burden to prove personal jurisdiction without holding an evidentiary hearing. These facts are very much in dispute, and thus an evidentiary hearing must be held before they can support jurisdiction. *See Dorchester Fin. Sec., Inc.*, 722 F.3d at 85. It would be reversible error to find jurisdiction without such a hearing. *See id.*

\* \* \*

We now come full circle. This Court issued its Order to Show Cause to explore the possibility of avoiding the difficult jurisdictional questions at issue by transferring this case to a more appropriate forum. The Government has resisted that invitation, mostly by arguing that its position on jurisdiction was correct all along, and presenting the hearsay statements of two anonymous persons as new evidence for its jurisdictional argument. There's no reason to double-down on the jurisdictional question though. As the Government seeks to complicate this case further, transfer to the district with the most obvious connection to this matter—the U.S. District Court for the Western District of Texas—is an even more appropriate resolution.

Respectfully submitted,

*/s/Caleb Kruckenberg*
CALEB KRUCKENBERG*
D.C. No. 1617890
STEVEN M. SIMPSON*
D.C. Bar No. 462553
Pacific Legal Foundation
3100 Clarendon Blvd.
Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747
CKruckenberg@pacificlegal.org
SSimpson@pacificlegal.org

JONATHAN M. HOUGHTON
E.D. N.Y. ID No. JH 5334
N.Y. Bar No. 2955326
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
JHoughton@pacificlegal.org

*Attorneys for Defendants*
*\*Admitted Pro Hac Vice*

cc: All Counsel of Record (By ECF)