```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

---------------------------------X  Docket#
UNITED STATES OF AMERICA,         : 23-cv-369(NRM)(RML)
                                  :
             Plaintiff,           :
                                  :
   - versus -                     : U.S. Courthouse
                                  : Brooklyn, New York
RARE BREED TRIGGERS, LLC, ET AL,  :
                                  : April 4, 2023
             Defendants           : 12:03 p.m.
---------------------------------X

      TRANSCRIPT OF CIVIL CAUSE FOR VIDEO CONFERENCE
         BEFORE THE HONORABLE NINA R. MORRISON
              UNITED STATES DISTRICT JUDGE
```

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**

| | |
|---|---|
| <u>For the Plaintiff</u>: | **Michael S. Blume, Esq.**<br>**Paulina Stamatelos, Esq.**<br>**Joseph A. Marutollo, Esq.**<br>U.S. Attorney's Office<br>271 Cadman Plaza East<br>Brooklyn, NY 11201 |
| <u>For the Defendant</u>: | **Steven Simpson, Esq.**<br>**Caleb Kruckenberg, Esq.**<br>Pacific Legal Foundation<br>3100 Clarendon Blvd., Ste 1000<br>Arlington, VA 22201 |
| <u>Transcription Service</u>: | **Transcriptions Plus II, Inc.**<br>61 Beatrice Avenue<br>West Islip, New York 11795<br>RL.Transcriptions2@gmail.com |

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

Proceedings

2

1          THE CLERK:  Civil Cause for Video Status
2   Conference for case number 23-cv-369, *United States of*
3   *America v. Rare Breed Triggers, LLC, et al.*
4          Counsel, please state your appearance for the
5   record starting with the government.
6          MR. BLUME:  Good afternoon.  It's Michael Blume
7   for the government.
8          MR. MARUTOLLO:  Good afternoon.  Joseph
9   Marutollo for the United States.
10         MS. STAMATELOS:  Good afternoon.  Paulina
11  Stamatelos also for the United States.
12         MR. KRUCKENBERG:  And good afternoon, your
13  Honor.  Caleb Kruckenberg for the defendants.
14         MR. SIMPSON:  Good afternoon, your Honor.
15  Steve Simpson for the defendants.
16         THE COURT:  All right.  Good afternoon,
17  everyone.  Let me first relieve any anticipation any of
18  you may have.  I'm not going to rule today on either the
19  personal jurisdiction issue or the potential for change
20  of venue.
21         I called this conference because I wanted to
22  talk about what comes next particularly in light of the
23  government's recent submissions based on their additional
24  investigation of products sold by RBF and/or RBT sent
25  directly to customers in New York and defendant's request

Proceedings

3

1  for an evidentiary hearing on the issues raised by those.
2          So what I really want to do, to be perfectly
3  candid, is talk to the defendants about whether an
4  evidentiary hearing is necessary and really the bigger
5  issue of whether you have any arguable ground to contest
6  personal jurisdiction at this point.
7          I have reviewed the authority on when I am
8  required to hold an evidentiary hearing.  I don't think
9  it's as straightforward as any time a party requests it.
10 It really seems to be only when there are material facts
11 in dispute.  And I'm not clear at this stage what facts
12 are really disputed.  I saw actually the first round of
13 submissions that you had argued that much of it was based
14 on what you referred to as anonymous hearsay, but there
15 were also some things in the record that enabled your
16 clients to go cross check those records.
17         And then in the most recent submission I was
18 quite surprised to see, given defense counsel's earlier
19 representations at oral argument and in your briefing
20 that there was actually a screenshot submitted by the
21 government from one of these purported buyers with
22 confirmation directly sent from RBF that specifically
23 listed, and I'm looking at the -- I'll show you on the
24 screen.  There's probably another one.  You can't see it
25 really but there it is.  It's the screenshot that comes

Proceedings

4

1  directly after the Conigliaro declaration indicating
2  specifically that, if this is a correct representation of
3  what was sent, that there's an FRT-15 locking bar spring,
4  specifically identifies it as something for the FRT-15,
5  shipped by RBF in 2021 from RBF to both a shipping and a
6  billing address for someone who appears to be a buyer,
7  the name's blocked out, in Collins, New York.
8           So you know, Mr. Kruckenberg, Mr. Simpson, I
9  recognize you took this case on very short notice.  I
10 have no doubt that at the time you filed your briefs you
11 believed what your clients had told you about RBF sending
12 only, as you put it, tee shirts and other swag to New
13 York or maybe some design elements but nothing that
14 really had to do with the operability of the triggers
15 that are at the heart of this dispute.  Given that this
16 document at the very least allows you to confirm whether
17 RBF actually shipped at least one FRT-15 locking bar
18 spring to someone in New York, I'm wondering if you've
19 spoken with your clients about whether they wish to
20 withdraw the motion and proceed to the merits or how do
21 you wish to proceed at this point?  And I know you
22 haven't had a chance to reply since you got this latest
23 submission so that's part of why I wanted to give you the
24 opportunity.
25           MR. KRUCKENBERG:  Your Honor, and I think the

Proceedings

1 material dispute and the point that we were making in the
2 breathing deals with FRT, or sorry, RBT versus RBF, the
3 Rare Breed Triggers versus Rare Breed Firearms.
4          I think, your Honor, there is not a dispute
5 having spoken with the clients about the accuracy of the
6 government's mission with respect to Rare Breed Firearms,
7 that it does appear that they shipped these locking bars
8 and springs.
9          And so the question now for personal
10 jurisdiction is whether that establishes personal
11 jurisdiction by itself.  I think the dispute is there was
12 an allegation that Rare Breed Triggers had delivered
13 directly the trigger mechanism, the FRT itself, to two
14 customers.  That was the initial declaration and I think
15 the United States responds.
16          And your Honor, I do want to address my
17 comments earlier and the statements at the hearing.  I
18 was under the impression that the only products they sold
19 were the swag and the tee shirts, the things that are on
20 their website.  And I think there was just a
21 miscommunication about the factual record.  I don't have
22 any dispute about the government's statements about the
23 springs and the locking bars.
24          So in light of that and in light of this
25 Court's sort of representations, I can't say in this call

Proceedings

6

1   whether we're looking to withdraw the motion but I
2   certainly understand this Court's position.  And I think
3   there is no need for an evidentiary hearing to the extent
4   that the decision on the motion would turn on the sale of
5   the locking bar and the springs.
6               THE COURT:  So I appreciate that.  Thank you.
7   I think in my mind there's still a couple of open issues
8   that may impact how we proceed on that issue.  One is you
9   all I think need to talk to each other and to your
10  clients about whether the locking bar versus the full on
11  fully ready to go FRT-15 itself is a distinction with or
12  without a difference for purposes of jurisdiction.  And
13  similarly, whether there really is a distinction between
14  RBT and RBF for this particular purpose of jurisdiction.
15  I'm sure you won't be surprised to hear that I was a
16  little surprised and frustrated that we've been tying
17  ourselves into intellectual knots over Chase Bank wire
18  transfers from Florida to New York when there was
19  documentary evidence that your clients had all along
20  about at least these component parts that you shipped
21  directly to New York.  You were certainly entitled to
22  make your argument on that but I think obviously your
23  clients have a much more uphill battle at this point and
24  that's before we even get to the evidence of potentially
25  RBT having shipped the full on devices directly to New

                                                                    7
                            Proceedings

1  York.
2              If your clients intend to proceed with the
3  motion, they're entitled to make that argument or have
4  you make any arguments about the legal distinctions.
5              I do think though you should be aware I
6  certainly see what we have previously had your clients
7  assert as not just one but two slips of the tongue,
8  inadvertent errors from the Demonico deposition about his
9  knowledge of devices either being sold by third party
10 dealers to New York or whether they were shipping
11 directly to New York all along.  That's somewhat more
12 questionable even though the government had conceded it
13 based on the information they had at the time
14 particularly on the latter point about their knowledge of
15 third party dealers given that they are now selling, at
16 least RBF which is the sister company, servicing people
17 in New York who through some force or another had FRT-
18 15s.  I realize that your client's affidavits or
19 declarations were pretty carefully worded to say we don't
20 know of any specific instance where these were shipped
21 from dealer A to New York buyer X, but given that they
22 now know that they are servicing New Yorkers who have
23 these devices from some source or another, it's not a
24 huge inferential leap.  And that goes to various prongs
25 of the statute and to due process.

8

Proceedings

1        So even before we get to the question of were
2   they shipping the FRT-15s directly, as at least a couple
3   of the buyers identified by the government, although they
4   haven't testified yet, seem to recall, I'm not sure we
5   need to go there.
6        The other thing I just want to advise your
7   client, and this is really not like this is what happens
8   in a consequences way, just this is the logical extension
9   of the position thinking on my part is that I know we've
10  had a dispute which to date I've sided with you on about
11  whether the government gets access to the client list or
12  not.  I think if they are going to contest jurisdiction
13  at this point, I think the government's made a much more
14  compelling case than they had previously that the client
15  lists really are relevant to the question of personal
16  jurisdiction.  And especially if there's going to be a
17  hearing, they should be able to talk to more people than
18  just the few they've been able to identify through the
19  clerk's office to do that investigation.
20        And I know your clients have an interest in not
21  disclosing those lists and I think there's a difference
22  between not for jurisdictional purposes and for any
23  merits discovery because I am at least at this point
24  inclined to stand by my earlier ruling that it may not
25  be, or at least my inclination, that it may not be as

                                                                 9
                            Proceedings

1    relevant to merits discovery because it doesn't go to the
2    merits of the grounds for seeking an injunction as I
3    understand it at this point though it may eventually be
4    relevant if this Court or another Court were to grant the
5    injunction.
6              But if we go backwards to the jurisdictional
7    question, that's I think back on the table and pretty
8    squarely on one side of the table at this point in my
9    mind.  So I trust you'll advise them of that and then let
10   us know how you wish to proceed.
11             MR. KRUCKENBERG:  Yes, your Honor.  I certainly
12   understand those issues.  And what I can advise the Court
13   is we can certainly -- I can speak to the clients today.
14   We can let the Court know by tomorrow.
15             THE COURT:  That would be great.  Yes.  I was
16   hoping you would say tomorrow.  End of the day tomorrow
17   would be great.  If they need a bit more time, you know,
18   Thursday morning is okay but I think not after that.  So
19   why don't we say 6 p.m. Eastern tomorrow.  If they need a
20   bit more time, they can take it, but not push it past
21   Thursday morning.
22             MR. KRUCKENBERG:  Understood.
23             THE COURT:  And then if we do need a hearing
24   and they say we're going to dig in and contest
25   jurisdiction and we do need a hearing, I would hope that

10

Proceedings

1   you all could confer with counsel for the government
2   about the scope of that and what would be needed and what
3   the issues are really in dispute.  There is some
4   question, because I'm going to be out of town for about
5   ten days.  I'll be working remotely.  Remote hearings of
6   an evidentiary nature are a little tricky sometimes.  And
7   the week of the 17th is pretty packed for me.  So I think
8   the earliest I can do it would probably be the week of
9   the 25th.
10              There's a possibility that Magistrate Judge
11  Levy could take the testimony and write up a pretty quick
12  R&R for me on some of the factual issues.  It's also
13  possible if you need to that you could do depositions
14  while I'm gone.  But again, if the government's going to
15  get the client list, they may want some more time to do
16  investigation and they may not be ready for a hearing
17  until the end of the month anyhow.  So just talk with
18  each other about that if we do proceed.
19              MR. KRUCKENBERG:  I will, your Honor.  We'll
20  discuss and try to minimize any if we do need a hearing.
21              THE COURT:  Yes.  Okay.  Let me just say having
22  been a lawyer of a nonprofit organization, as you know,
23  for most of my career, the vigorous advocacy and the
24  limitations of resources can sometimes not always be
25  served in the same instance but sometimes they can.

<pre>
                                                                11
                          Proceedings
 1            So in any case, I think then the question
 2   becomes if we do have a contested motion, when I would
 3   decide that and after a hearing.  But in the meantime, I
 4   will let you all know that I am construing, unless they
 5   tell me otherwise, defendant's response to my order to
 6   show cause as a more affirmative application for a change
 7   of venue.  And I will certainly consider that and rule on
 8   that either in lieu of a motion to dismiss for personal
 9   jurisdiction, lack of personal jurisdiction, or at the
10   same time, or some other way relatively quickly.
11            I think in light of the fact that venue is
12   clearly appropriate somewhere in the United States and
13   the TRO is only in effect until the end of June unless I
14   decide for the reasons defendants have stated to vacate
15   that TRO, then it does seem safe to presume that some
16   court somewhere will probably have an evidentiary hearing
17   on the merits before the end of June.  And I think that
18   makes it appropriate to grant the government's request
19   for expedited merits discovery at this time.  So if you
20   haven't done so already, you can serve one another with
21   your demands.
22            I would just say while you're free to preserve
23   the issue of the client list, I'm not going to order that
24   until I hear from the defendant about the jurisdictional
25   issue.  But you're welcome to see if you can come to some
</pre>

```
                                                             12
                         Proceedings
 1   agreement on potentially some of the client lists or for
 2   what purpose.  And if you can't, either Judge Levy or I
 3   will resolve that.  All right?
 4              Anything else that either party wishes to raise
 5   at this juncture?
 6              MS. BLUME:  No.  Thank you, your Honor.
 7              MR. KRUCKENBERG:  And nothing from the defense,
 8   your Honor.
 9              THE COURT:  Okay.  All right.  Thank you, all.
10   Have a good weekend.  I will look forward to hearing from
11   the defendants by letter tomorrow or Thursday.  Thank
12   you.
13              MR. KRUCKENBERG:  Thank you, your Honor.
14                       (Matter concluded)
15                            -oOo-
16
17
18
19
20
21
22
23
24
25
```

13

# C E R T I F I C A T E

      I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

      I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

      IN WITNESS WHEREOF, I hereunto set my hand this **4th** day of **April**, 2023.

*Mary Greco*
Transcriptions Plus II, Inc.