UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
--------------------------------X  Docket#
UNITED STATES OF AMERICA,         : 23-cv-369(NRM)(RML)
                                  :
                 Plaintiff,       :
                                  :
      - versus -                  : U.S. Courthouse
                                  : Brooklyn, New York
RARE BREED TRIGGERS, LLC, ET AL, :
                                  : May 4, 2023
                 Defendants       : 2:30 p.m.
--------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR VIDEO CONFERENCE
BEFORE THE HONORABLE NINA R. MORRISON
UNITED STATES DISTRICT JUDGE

**\* PUBLIC PORTION \***

**A  P  P  E  A  R  A  N  C  E  S:**
**(VIA VIDEO/AUDIO)**


**For the Plaintiff**:        **Michael S. Blume, Esq.**
                              **Paulina Stamatelos, Esq.**
                              **Joseph A. Marutollo, Esq.**
                              U.S. Attorney's Office
                              271 Cadman Plaza East
                              Brooklyn, NY 11201


**For the Defendant**:        **Kevin Maxwell, Pro Se**
                              **Lawrence DeMonico, Pro Se**


**Transcription Service**:    **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1        THE COURT:  All right.  We are back on the

2   record.  Let's start a new record since this is the

3   public portion of today's proceedings in this case.  So

4   Freddie, why don't you call the case again for the sake

5   of this record?  Thank you.

6        THE CLERK:  Yes, Judge.  Civil Cause for Video

7   Conference for case number 23-cv-369, *United States of*

8   *America v. Rare Breed Triggers, LLC, et al.*

9        Would the parties please state their appearance

10  for the record starting with the government?

11       MR. BLUME:  Good afternoon.  Michael Blume for

12  the United States.

13       THE COURT:  Good afternoon.

14       MR. MARUTOLLO:  Good afternoon.  Joseph

15  Marutollo for the United States.

16       THE COURT:  Good afternoon.

17       MR. MAXWELL:  Kevin Maxwell on behalf of myself

18  here.

19       THE COURT:  Good afternoon, Mr. Maxwell.

20       MR. DeMONICO:  Lawrence DeMonico, named

21  defendant and president of Rare Breed Triggers and Rare

22  Breed Firearms.

23       THE COURT:  All right.  Ms. Stamatelos?  Excuse

24  me, I botched your name again.  Same it one more time.

25  I'll learn it before this case is over.

3

Proceedings

1          MS. STAMATELOS:  Stamatelos.

2          THE COURT:  Stamatelos.  Thank you.  Why don't

3   you enter your appearance?  I think you got cut off there

4   for the --

5          MS. STAMATELOS:  Assistant U.S. -- oh, I'm

6   sorry.  Assistant U.S. Attorney Paulina Stamatelos for

7   the government.

8          THE COURT:  All right.  So earlier today I held

9   an ex parte hearing with the agreement of the parties and

10  granted defense counsel's motion to withdraw from this

11  case.  So as a result of that ruling which was unopposed

12  by the individual defendants, Mr. Maxwell and Mr.

13  DeMonico are here currently appearing pro se.

14          We briefly discussed in that hearing whether

15  the conflict that was the basis for the withdrawal would

16  in any way preclude the defendants from serving some

17  portion of the discovery that was to be due on May 3rd.

18  I asked defense counsel specifically whether he could

19  remain on the case notwithstanding the conflict he

20  identified for purposes of serving responses to at least

21  some of that discovery and he indicated that he could

22  not.  But he did tell me, and the individual defendants

23  authorized me to convey to the government that the

24  material that is responsive has by and large been

25  collected and reviewed and there remains some questions

4

Proceedings

1   of privilege logs and other things that need to be done

2   and assessed before it can be turned over.  And I was

3   persuaded that that could not be done piecemeal without

4   invading the privilege.

5         So I am not going to set a new deadline for the

6   individual defendants to comply until they have had some

7   additional time to get counsel.  They did explain to me

8   some of the efforts that they've made so far even prior

9   to me holding a hearing on the motion to withdraw over

10  the last week to get new counsel and I do believe that

11  they are diligently attempting to do so.  I know it is in

12  their interest to do so.  Nevertheless, this case has

13  been pending for some time in a preliminary injunction

14  posture so there is some urgency to set a hearing and

15  have some certainty as to the schedule.

16        What I'm going to do at this juncture is

17  first -- let me also add that the defendants also

18  indicated that they are willing to extend the TRO for as

19  long as necessary to allow new counsel to be on board,

20  get up to speed, and accommodate the Court's calendar

21  when we hold the hearing.  The government had previously

22  made some representations that I also believe are in good

23  faith and have some force as to the interest served by

24  the public and in furtherance of enforcement of the law

25  by a prompt hearing.  So I'm going to do my best to

5

Proceedings

1  balance those interests as well as of course my own

2  calendar.

3          So at this time, first I'm going to talk about

4  the hearing date and then we'll talk about remaining pre-

5  hearing discovery and other filings.

6          I am going to reset the preliminary injunction

7  hearing for July 18th and 19th.  There is some

8  possibility I could move it to the first week in August.

9  The last week of July is out.  But for now, my

10  inclination is to set it for essentially three weeks past

11  the already extended hearing date that we had for late

12  June.

13          It's my expectation that if the defendants are

14  able to get counsel relatively soon that will be more

15  than sufficient time to complete discovery and do the

16  necessary briefing before the hearing and actually gives

17  the parties substantial cushion.  Of course when new

18  counsel is on board or if the defendants are unable to

19  find new counsel in the near future, they are welcome to

20  make an application, but just keep in mind that I am

21  inclined to keep that as a firm date.  And you should

22  advise your prospective counsel that that is the

23  currently set date for the hearing.

24          In terms of discovery, I am going to relieve

25  the defendants of their obligation to answer the

6

Proceedings

1    currently pending discovery demands until they obtain new

2    counsel or until I rule otherwise.  Let's set a

3    preliminary status conference date for Friday, May 26th

4    in the morning.  We can do it at 10:30 eastern.  Move it

5    back a little later if folks are on the west coast and

6    want to start a bit later, but we can start it then for

7    now.

8           And if counsel enters an appearance and you're

9    in discussions and come up with a new agreed upon

10   schedule, we won't need to hold that hearing, but I'd

11   like to hold that as a date two and a half or so weeks

12   from now.  At that point it's my hope that there will be

13   new counsel on board and things will already be moving.

14          The one outstanding issue I still need to deal

15   with is this question of third party discovery.  Let me

16   hear from the government.  Are you asking for third-party

17   depositions or simply paper and electronic discovery.

18          MS. STAMATELOS:  So with respect to third party

19   discovery, we served -- there are several outstanding

20   third-party subpoenas to which previous counsel for

21   defendants did not object.  They had in fact objected to

22   a couple and we were able to meet and confer and we

23   didn't have to bring anything to the Court's attention.

24          But with respect to a couple of outstanding

25   third-party subpoenas, we have been in communications

7

Proceedings

1  with the third party as to their objections.  In other

2  words, we have no objections from defendant's counsel.

3  So we would like to proceed.  And if we proceed by a

4  motion to compel or if we proceed by additional meet and

5  confers with that third party, that's something that we

6  would not want to be delayed for obvious reasons at this

7  point.

8       THE COURT:  So let me ask this.  I think you

9  answered this question, but all of the third-party

10  discovery that we're talking about and that remains

11  outstanding are demands that you have already served.

12  Correct?

13       MS. STAMATELOS:  That's correct.  We had wanted

14  to serve additional third party subpoenas on JPMorgan for

15  associated LLCs for the LLCs that we had actually

16  identified in our complaint that had received payment

17  from RBT or RBF in connection with the sale of the

18  FRT-15.  We had been waiting for defendant's responses to

19  discovery demands which were quite straightforward that

20  implicated their financial records just to make sure that

21  we had the universe of LLCs that we needed to subpoena

22  instead of doing it piecemeal as we had been doing at the

23  time.  That has been delayed and we were hoping to go

24  forward with that.  In other words, those are the Rule 45

25  subpoenas that we would like to serve.  In other words,

8

Proceedings

1   JPMorgan for the accounts held by the LLCs identified in

2   the complaint, so there could be no surprise to

3   defendants at this point.

4          THE COURT:  So let me see if I understand you

5   correctly.  With respect to -- it seems like we have

6   three categories of third-party discovery.  First are the

7   ones that were already served to which defense counsel

8   made no objection after conferring with their clients.

9          MR. MAXWELL:  (Indiscernible) --

10         THE COURT:  I'm sorry, hold on.  Mr. Maxwell?

11         MR. MAXWELL:  As I told your Honor earlier, I

12  found out about the third-party requests today.

13         THE COURT:  Okay.  You don't need to disclose.

14  I understand that.  All right.

15         So let me just note for the record I understand

16  now that defense counsel asked me earlier and I can state

17  on the record here that the defendants are asking for the

18  opportunity, the individual defendants are asking for the

19  opportunity to have new counsel review all of the third-

20  party discovery demands to see if they wish to make

21  objections to those prior to the time that they are

22  complied with.

23         So even though there are some with prior

24  objections, given Mr. Maxwell's representation that he

25  was not aware of those before, I'm not going to make a

Proceedings

1    finding one way or another about whether that happened or

2    not.  I'll just note that that's his position and

3    consider whether that is something.  But I certainly will

4    note that that is their position that they need some time

5    to confer with counsel or would like some time to confer

6    with counsel to determine if they should make objections

7    to those.

8            Then it's my understanding, please tell me if

9    I'm incorrect on the government's side, that there are

10   some other third-party discovery demands that you are in

11   the process of discussing with the third party subjects

12   of those subpoenas or demands in terms of the scope and

13   compliance.  Is that right?  This is --

14           MS. STAMATELOS:  That's correct.  So there is a

15   party --

16           THE COURT:  -- (indiscernible) --

17           MS. STAMATELOS:  Sorry, your Honor, for

18   interrupting you.  There is a party with whom we served a

19   third-party subpoena.  The time for defense counsel to

20   object has passed.  They did not object.  We have been

21   meeting and conferring with that third party and we had

22   their position, their final position so to speak, and we

23   are considering moving to compel and/or whatever other

24   options we have.  We're obviously looking -- there's a

25   lot going on with discovery right now so we are trying to

10

                              Proceedings

1    determine if we are going to move to compel.

2            We have served -- and we also have a couple of

3    outstanding requests for third-party subpoenas.  So those

4    are --

5            THE COURT:  When are those responses, I'm

6    sorry, when are the outstanding ones, when are those

7    theoretically due if discovery wasn't stayed?

8            MS. STAMATELOS:  In the next three weeks.

9            THE COURT:  Okay.  All right.  So let's do

10   this.  I think, and I'm not sure if this is technically

11   possible, but I think the most fair solution here is to

12   not enter a general stay of discovery such that the third

13   parties do not continue at least their internal processes

14   of evaluating to what extent they possess information

15   that is responsive and confer with their own counsel as

16   to whether they can or should turn those things over.

17   And I certainly don't want to moot any potential

18   objections by the defendants upon hiring new counsel to

19   object to the production of those third-party materials.

20   But I don't want to slow things down unduly so that the

21   third parties need additional time and we're all waiting

22   for them when the hearing is approaching.

23            So in light of that, what I think I would like

24   to do is permit the government to continue to meet and

25   confer with those third parties, keep those existing

Proceedings

1    deadlines in place, but have any production that those

2    third parties agree to not go to the government

3    litigators who are handling this case.  We could have

4    them produce it directly to the Court.  I do not usually

5    like to be the repository of discovery but we're not

6    talking about a long period of time.  Or my preference

7    would be if there is a secure location with the U.S.

8    Attorney's Office where they can be produced and the

9    government attorneys would ensure that they themselves do

10   not have access to it.  And of course we'd return

11   anything if I ultimately quashed the production.  That is

12   the defendants wouldn't be waiving any right to file a

13   motion to quash and I would still be able to order the

14   return of those materials if I granted it.  That would

15   seem to be a more logistically feasible solution.

16          So let me hear from the government as to

17   whether you think that is technically possible and if

18   that's been done in any other cases that you're aware of.

19          MS. STAMATELOS:  I have not done that but my

20   colleagues may have done that.  So on the spot I can't

21   answer that question.  But I think that our goal is to

22   keep going, is to move forward with at least third-party

23   discovery consistent with the letter that we filed two

24   days ago.  So we will look into it.  And if we could

25   inform the Court at some point either today or tomorrow

Proceedings

1   about whether this is feasible?

2               THE COURT:  Okay.

3               MS. STAMATELOS:  Because on the spot I can't

4   answer it.

5               THE COURT:  The other thing we can do is we

6   could direct all the third parties and let them know that

7   I've ordered that they shall prepare their responses and

8   have the materials that they deem responsive to which

9   they are not filing objections of their own ready by the

10  date to which the subpoenas were due and await further

11  instructions as to whether and when they should be

12  produced.  That might be the simplest thing.  So we

13  can --

14              MS. STAMATELOS:  Your Honor --

15              THE COURT:  -- do that if you think that would

16  be enough to keep the clock going.

17              MS. STAMATELOS:  I can't speak for the third

18  parties.  Generally speaking, they're never eager to

19  share information with the government.  Some of them are

20  out of state so I'm not sure that that's something that

21  would solve the problem.  But to the extent that someone

22  in our office can receive information produced by third

23  parties to the extent that they want to wood to the

24  extent that they agree to, then that I think is the

25  correct solution.

13

Proceedings

1      THE COURT:  Okay.  Another possibility might be

2   if they're out of state and none of them are within New

3   York to have them produced to the U.S. Attorney's Office

4   for the district where they reside which would, you know,

5   be some physical distance.  They could do paper copies.

6   It wouldn't be any concern or suggestion about

7   inadvertent cross-sharing, that sort of thing, or if it's

8   electronic, submit it to an entirely different office

9   obviously part of one Justice Department and one

10  government, but that might be the easier solution.

11      Mr. Maxwell, Mr. DeMonico, do you think that

12  accommodates your concerns and still preserves your right

13  to make objections when you get counsel?

14      MR. MAXWELL:  Your Honor --

15      MR. DeMONICO:  Your Honor (indiscernible).

16  Yes, go ahead.

17      MR. MAXWELL:  I like your second suggestion far

18  better that the third parties can still collect but hold

19  off on the submission until given further direction.  And

20  that way they're still collecting the data.  The data

21  will be prepared.  But I won't have to be able to find a

22  way for my new counsel to un-ring a bell if it's been

23  submitted, it's been reviewed.  The effect of it is all

24  in the hands of the Department of the Justice and then

25  your Honor decides to quash that, they'll have the

14

Proceedings

1  data --

2           THE COURT:  I'll take that under consideration.

3  I think my concern, even though it was my suggestion, I

4  have with that is that without them having to actually

5  produce it, there is no way to ensure that it's actually

6  ready on time and then we may get additional delays on

7  the back end.  I want to think about some other options

8  that would actually involve production though not

9  necessarily to these government lawyers.  But let me give

10  that some thought.

11          I think as a preliminary step, why don't we

12  have the government investigate what the options might be

13  and you can file a letter on the docket this week and let

14  me know if there are some options for production that

15  would accommodate the concerns that we've raised.

16          MS. STAMATELOS:  Thank you, your Honor.  Just

17  one more point.  The government is ready to serve expert

18  disclosures on Friday and we will be filing a reply

19  consistent with the briefing schedule.

20          I guess the question that we have is

21  procedural.  Who do we serve?  How do we serve it, the

22  expert disclosures, and whether or not Mr. Maxwell and

23  Mr. DeMonico anticipate honoring that deadline.  It's our

24  understanding that there was a possibility that we would

25  be getting served with expert disclosures this Friday.

15

Proceedings

1      THE COURT:  Mr. Maxwell and Mr. DeMonico, are

2  you able to share if you have retained your experts yet

3  and are prepared to disclose basic information and expert

4  reports, anything at this juncture?

5      MR. MAXWELL:  I believe the government already

6  has the reports from the previous two litigations.  Those

7  are going to be the same experts.  I think I have one

8  month to secure the services of but they are the same

9  four experts that have appeared on the record in the

10  middle district case and then the North Dakota case.

11      THE COURT:  Okay.  Am I right, Ms. Stamatelos,

12  that the Friday disclosures were going to be simultaneous

13  or was it just your disclosures that we were talking

14  about?

15      MS. STAMATELOS:  Simultaneous, your Honor.

16      THE COURT:  Okay.  All right.  So let's do

17  this.  Yes, the government can serve them.  I think it

18  will be information coming in on a rolling basis that the

19  defendants can share with their prospective counsel.

20  They can certainly review it.  Let's keep this moving.

21  The government can serve their disclosures unless you

22  have an objection to potential unilateral disclosures.  I

23  would just ask Mr. Maxwell and Mr. DeMonico that you

24  provide the names, and you can always not use them, but

25  the names of the experts that you intend to use and the

16

Proceedings

1   ones you reasonably anticipate calling, their names and

2   if you have CVs for them, you can do that as well.  If

3   you don't have reports ready, I'll relieve you of your

4   obligation to do so right now but that would at least

5   give the government some time to do the usual review of

6   their backgrounds and prior testimony and that sort of

7   thing.

8              MR. MAXWELL:  Your Honor, I have --

9              MR. DeMONICO:  I have a question.

10              THE COURT:  Yes.

11              MR. DeMONICO:  Without counsel and/or the

12   ability to meet and confer with the government on third-

13   party subpoenas, is it appropriate for me to ask can we

14   get a list of who has been served with a third-party

15   subpoena and who they plan to serve with a third-party

16   subpoena?  Because at this time I don't think we've even

17   got a partial list.

18              THE COURT:  What's the government's position on

19   sharing that information at this juncture.

20              MS. STAMATELOS:  My understanding is that that

21   would be part of the attorney file that belongs to them

22   as they transition from one attorney to another.

23              So I just want to raise a broader point.  I

24   don't want this issue to -- we're concerned that this

25   issue will come up again, I don't have this information

17

Proceedings

1   but my previous attorney should have given me or notified

2   me of.  I don't think that's helpful to any party

3   including the defendants.

4          So for myself, I have no problem sharing

5   information that I have already shared with defense

6   counsel but we would like some explanation as to why

7   defense counsel cannot do that for them only because in

8   the future this might just keep coming up.

9          THE COURT:  Why don't we not anticipate

10  problems that we don't have yet.  I think we're --

11         MS. STAMATELOS:  Okay.

12         THE COURT:  So I think, you know, in general

13  when there's a change of counsel there's always some

14  disruption.  Even the best counsel in a complicated case

15  isn't always able to give all of the timely information

16  they need to especially when there is a conflict that

17  leads to the withdrawal.

18         So let's do this.  You know, we're trying to

19  kind of do two things at once.  On the one hand, keep the

20  train moving, and on the other not duplicate efforts and

21  go back to things that were previously done in this

22  hopefully short period of time where the defendants do

23  not have counsel.  So if we're going to keep things

24  moving, then I'm going to ask the government to

25  occasionally duplicate prior efforts and share things

18

Proceedings

1  with the individual defendants just as you would any pro

2  se litigant who asks for information that they may not

3  have or may have misplaced or not have available.

4          If it gets to be too burdensome, you can come

5  to me but I anticipate the communications will be

6  relatively minimal at this point and there will soon be

7  counsel on board.  And I have no doubt that the attorneys

8  from Pacific Legal will be available to new counsel to

9  answer questions to the extent their clients authorize

10  them to do so and ease the transition.

11          MR. MAXWELL:  Yes, your Honor.

12          THE COURT:  All right.  So on the disclosures,

13  let's do this.  We'll have the government provide you

14  with a list of the third parties and even copies of the

15  third-party subpoenas that they've already served which I

16  think would help speed things along.  And then I will

17  weigh the government's proposal as to how we can best

18  accommodate the concerns discussed earlier with

19  production but not disclosure of the third-party subpoena

20  information.

21          As for motions to compel, I think you're

22  welcome to file those.  I probably will not rule on them

23  until the defendants have counsel or had an opportunity

24  for everybody to be heard on those, but if you want to

25  start preparing those and getting them ready to file if

19

Proceedings

1    they're necessary.  But you can let the third parties

2    know that discovery is continuing and so any obligations

3    under the rules that they would have to review their

4    submissions, review their files to see if the material is

5    responsive continues.  The only thing they'll be relieved

6    of at this point is the obligation to actually produce

7    them to you until further notice.

8             MS. STAMATELOS:  Okay.  I think just one more I

9    guess housekeeping issue is the expert report that we

10   would like to exchange with Mr. Maxwell and Mr. DeMonico,

11   and we would also ask for their official contact

12   information, the email addresses that they want to use

13   for this litigation, is we anticipate having to file a

14   letter with your Honor either today or tomorrow because

15   we need to present some information in the expert report

16   redacted consistent with some laws pertaining to I

17   believe tax disclosures.  I could be wrong, but I think

18   that's the statute that applies here.  So I'm just

19   highlighting that.

20            THE COURT:  Okay.  So Mr. Maxwell, Mr.

21   DeMonico, let me explain this to you.  If things are

22   moving and discovery is continuing, sometimes the parties

23   will have questions for me or need my permission to do

24   something and usually when both sides have lawyers often

25   these are things that are not terribly controversial like

Transcriptions Plus II, Inc.

20

Proceedings

1  redacting confidential bank information or tax

2  information, that sort of thing.  I'm a little hesitant

3  to have the government do anything or ask me anything

4  when you don't have lawyers who could possibly object.

5  On the other hand, if I say that they can't do that, then

6  they're going to just be able to hold back the expert

7  reports and not give them to you.  And my sense is that

8  you will want them sooner rather than later.

9        So essentially, we can do one of two things.  I

10 can either tell the government you don't need to serve

11 your expert disclosures and we'll hold off on that for

12 now, or at least the ones that don't require redactions,

13 or I can say serve them, go ahead and make a proposal to

14 me about what you want redacted and I'll rule on them

15 notwithstanding that the defendants don't have counsel.

16 So do you understand what I'm asking you?  Do you have a

17 position on that?

18        MR. MAXWELL:  I do, your Honor.

19        THE COURT:  Okay.  Go ahead.

20        MR. MAXWELL:  I don't think I've got any

21 objection with the disclosures.  I am curious as to what

22 particular tax information that might be disclosed

23 through the expert report because I'm not sure how -- I

24 don't understand the framework of how or what would need

25 to be redacted with regards to taxpayer information from

21

Proceedings

1    an expert disclosure report.  So if we're talking about

2    taxes due and owing for manufacture 922, that's one

3    thing.  If we're talking about taxpayer information on a

4    form 4 or a form 1 ATF standard form, that's a different

5    issue.

6              THE COURT:  Let's do this.  Rather than have

7    you guess or me guess, why don't we ask the government to

8    very briefly, because I do want to get into too much on

9    this call, explain to us the general nature of the

10   redactions you're proposing.  Mr. Blume, do you want to

11   address that?

12             MR. BLUME:  Sure.  I think I do.

13             THE COURT:  You looked like you were about to

14   un-mute yourself.

15             MR. BLUME:  Yeah.  Thank you, your Honor.

16   Because of the history of the ATF and where it sits and

17   used to sit, much of its authority is governed by the IRS

18   code.  And so disclosure of the identify of certain

19   taxpayers is protected under the code.  And by that I

20   mean in this particular instance these expert reports

21   reference -- there's one expert report.  It deals with

22   the FRT-15 and it references some other companies who

23   have submitted requests for classification from the ATF.

24   It is the identity of those other companies that would be

25   redacted.  They'd be very small redactions.  But under

22

Proceedings

1  the code, I believe I'm correct, that if we get an order

2  from the Court, we can provide them to you.  But it's

3  going to be, you know, for illustrative purposes a ten-

4  page report, you know, six words or ten words.  But

5  that's it.  That's what we're talking about.  And we

6  fully expect to be able to produce the names of those

7  folks immediately.  We just need an authorization from

8  the Court.

9        THE COURT:  Mr. Maxwell, any concerns based on

10  what they've just said?

11        MR. MAXWELL:  I don't think so, your Honor.

12        THE COURT:  Okay.  So the government's going to

13  submit that with the requested redactions with any

14  permissions they need from me and with an eye towards

15  having the disclosures exchanged on Friday and I'll leave

16  that up to you.

17        I know the government counsel's contact

18  information is listed on the docket.  Mr. Maxwell and Mr.

19  DeMonico, do you have that information so that you can

20  reach out to them directly and let them know how they can

21  reach you?

22        MR. MAXWELL:  I can send them a responsive

23  email with my email address on it.

24        THE COURT:  Okay.  Sounds good.  And then

25  separate and apart from that, just make sure in this

Transcriptions Plus II, Inc.

23

Proceedings

1   period when you're not represented by counsel that my

2   deputy, Mr. Valderrama, has each of your contact

3   information in case we need to reach you.  And we also

4   will provide you, with your consent, electronically any

5   notifications.

6            So for example, after today, I'll enter what's

7   called a minute entry memorializing what happened in

8   these proceedings and you'll be able to get those

9   automatically.  All right?

10           MR. MAXWELL:  Good, Judge. Thank you.

11           THE COURT:  Okay.

12           MR. DeMONICO:  Thank you, your Honor.

13           THE COURT:  All right.  Anything else either

14  party wishes to take up before we adjourn today?

15           MS. STAMATELOS:  No, your Honor.

16           THE COURT:  Defendants, anything from you

17           MR. MAXWELL:  I don't believe so, your Honor.

18           THE COURT:  All right.

19           MR. DeMONICO:  No.

20           THE COURT:  Thank you all very much for your

21  time.  We'll keep things moving.  And I will await entry

22  of appearance by defense counsel and we'll go from there.

23           MR. MAXWELL:  Thank you, your Honor.

24           MS. STAMATELOS:  Thank you very much.

25           MR. MAXWELL:  Having nothing further, may I be

24

                              Proceedings

1   excused?

2            THE COURT:  You may indeed.  All right.  We're

3   adjourned.  Thank you.

4            MR. BLUME:  Thank you, your Honor.

5            THE COURT:  All right.  Take care.

6                      (Matter concluded)

7                           -oOo-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **4th** day of **May**, 2023.

*Mary Greco*

Transcriptions Plus II, Inc.