

50 Park Place, Suite 1105
Newark, NJ 07102

Josiah Contarino
Phone: 917-423-7221
jcontarino@dhillonlaw.com

VIA ECF  June 9, 2023
Honorable Nina R. Morrison
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    *United States v. Rare Breed Triggers, LLC, et al.*
               Civil Action No. 1:23-cv-00369-NRM-RML

Dear Judge Morrison:

      Defendants, Rare Breed Triggers, LLC ("RBT"), Rare Breed Firearms, LLC, Lawrence DeMonico and Kevin Maxwell, through undersigned counsel, hereby move to modify a protective order pursuant to Fed. R. Civ. P. 26(c), to redact from all documents requested by Plaintiff, United States of America, the personal identifying information of Defendants' customers, who are innocent third parties to this litigation, to quash subpoenas that sought this personal identifying information pursuant to Fed. R. Civ. P. 45, and/or to maintain the confidentiality of such information at this stage of the litigation.[1] This is an issue to which this Court has been sensitive in prior stages of this case, and to which Defendants have remained steadfast. Despite the Court's sensitivities, at a meet and confer on June 8, 2023, it became apparent to undersigned counsel that the United States had obtained information about Defendants' customers as part of discovery and could not commit to using the information for this litigation only, indicating that at some future point the information could be used by ATF agents to approach RBT's customers' homes. Apparently, USPS records obtained outside of this litigation have been used by ATF agents to approach RBT's customers' homes.

      It is helpful to briefly recite the Court's sensitivities toward information that would reveal identifying information of RBT's customers, and the United States' apparent disregard for same. At the February 14, 2023, oral argument on Defendants' motion to quash a bank subpoena, the Court was grappling with how identifying information of RBT's individual customers could be protected. The Court suggested that the bank could "redact the addresses and leave just zip codes of the customers," or for the United States to employ a taint team. (Hearing Tr. 6:24 - 7:20, Feb. 14, 2023, ECF No. 22.) When it was revealed that the bank subpoena dealt with dealers of firearms, not individual customers, the Court's concern was in some sense abated. (Hearing Tr. 9:7-8, ECF No. 22 (DOJ representing that customers at issue in the JP Morgan Chase subpoena are dealers, not individual customers).)

      Nevertheless, two days later, on February 16, the United States subpoenaed UPS, demanding the "name, address, telephone number and email address" of RBT's customers.[2] (Exhibit A, attached.) The

---

[1] In accordance with Local Civil Rule 37.3(a), Defendants met and conferred with Plaintiff on these issues on June 8, 2023, and now file this letter pursuant to Local Civil Rule 37.3(c).
[2] So even though the United States said at the February 14 hearing that it wasn't "going to totally dismiss those concerns for the customers of Rare Breed Triggers," it appears by February 16 that it had. (Hearing Tr. 11:5-9, ECF No. 22.)

United States advised during the meet and confer that, unsurprisingly, the response to this subpoena includes voluminous records of RBT's customers. And for some unknown reason, instead of copying the attorney charged with primary responsibility of Defendants' representation, the United States emailed the subpoena to the attorney acting essentially as local counsel. (*Compare* Ex. A, *with* Exhibit C, attached.) That is, while Caleb Kruckenberg was predominantly handling Defendants' defense, and even though the copy was addressed to Caleb Kruckenberg, only Jon Houghton was emailed the UPS subpoena. Defendants maintain they were not aware of this subpoena until after prior counsel withdrew.

The next subpoena filed by the United States seeking identifying information of RBT's customers was an April 5, 2023, subpoena issued to Chase Paymentech, RBT's credit card processor. (Exhibit B, attached.) The United States has advised that the records returned in response to this subpoena includes all of the credit card numbers of RBT's customers. And while it would apparently take some resources to do so, those credit card numbers could be used to identify RBT's customers. The charge back documents responsive to this subpoena include customer names. A meet and confer was apparently held between prior defense counsel and the United States regarding this subpoena on or about April 10 or 11. Prior counsel took away from the meet and confer that the subpoena was not seeking customer information. It was.

The identities of RBT's customers are irrelevant to the determination of Defendants' liability in this matter and such disclosure is unduly prejudicial to both Defendants and their customers. Defendants are contractually bound to keep this information private, and it comprises Defendants' valuable and sensitive business proprietary information. Allowing the federal Department of Justice to use this civil lawsuit—before even a preliminary determination of any violation—as a means to identify numerous individuals to target separately with potential claims that they are lawbreakers, is unnecessary and would be an abuse of the truncated pre-preliminary injunction discovery process. This is especially true where, as here, the Department of Justice has chosen to use civil litigation to discover information about the conduct of Defendants and their customers that, according to the United States' erroneous interpretation, would be criminal, thus circumventing the protections and limitations of a criminal investigation.

Federal Rule of Civil Procedure 26(d) allows the Court to control the sequence and timing of discovery, particularly where resolution of a preliminary matter may decide the entire case. *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18CIV4476LJLSLC, 2020 WL 1166047, at *5 (S.D.N.Y. Mar. 11, 2020) (citation omitted). At the preliminary injunction phase, the identities of RBT's customers are not relevant. The Court appears to agree with this. While acknowledging that there could be some relevance to who was purportedly defrauded, at the March 8, 2023, hearing the Court said "the issue of the customers and where the firearms are currently" "really seems to go to how you would enforce a preliminary injunction if I granted your request for one and not to your likelihood of success on the merits of your fraud claims." (Hearing Tr. 19:23 – 20:19, Mar. 8, 2023, ECF No. 33.) Defendants concede that they marketed the FRT-15 as a legal mechanism, while also giving notice of their dispute with the ATF. Relevant evidence would address whether Defendants were correct when they made that representation, and whether Defendants had the requisite specific intent to defraud their customers or the United States. If the Court determines that the FRT-15 is legal, it would be unduly prejudicial for the United States, or the public, to be able to invade Defendants' privacy and discern the identity of RBT's customers, for any purpose.

The United States had maintained that customer identifying information was relevant because Defendants were challenging this Court's personal jurisdiction. And at the April 4, 2023, hearing, the Court explained that "there's a difference between not [providing customer identifying information] for jurisdictional purposes and for any merits discovery because I am at least at this point inclined to stand by my earlier ruling that it may not be, or at least my inclination, that it may not be as relevant to merits discovery because it doesn't go to the merits of the grounds for seeking an injunction as I understand it at this point though it may eventually be relevant if this Court or another Court were to grant the injunction." (Hearing Tr. 8:6 – 9:5, Apr. 4, 2023, ECF No. 45.) The Court encouraged prior counsel to advise Defendants of how the customer list information could be implicated if they were to continue to challenge jurisdiction. (The entire time the United States knew it already had customer information from the UPS records.) That same day, Defendants withdrew their motion to dismiss for lack of personal jurisdiction. (Dkt. No. 44.) Included in the calculus to withdraw the motion was the concern over the customer identification information.

Moreover, Defendants are contractually bound to maintain the privacy of their customers. RBT affirmatively represented to its customers that their identities would be kept private, on which RBT's customers reasonably relied. The United States' official curiosity or other motives should be insufficient to force Defendants to breach that promise as to innocent third parties. In addition to compelling Defendants to violate their obligations, this would needlessly destroy Defendants' commercial and personal reputations. "Keeping such data private assuredly promotes better relations with, and retention of, a [business]'s users." *Airbnb, Inc. v. City of New York*, 373 F.Supp.3d 467, 484 (S.D.N.Y. 2019). Defendants also have a privacy interest in the identity of their customers because "[k]eeping such data confidential keeps such information from rivals… who might exploit it." *Id.* Client lists can contain "confidential and commercially sensitive information" and can "constitute a protectable trade secret." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F.Supp.2d 498, 517 (S.D.N.Y. 2011); *see also North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43-46 (2d Cir. 1999) (affirming finding that "list of client contacts was a protectable trade secret" with citations to other authorities).

In sum, disclosure of the identity of customers will unduly harm Defendants, as well as injure the privacy interests of innocent third parties. Both the possibility of exploitation, as well as intrusion into the privacy of individuals not named in the subject litigation, have been held by courts in this circuit to satisfy the particularized injury requirement under Rule 26(c). *See Gelb v, American Tel. & Tel. Co.*, 813 F.Supp 1022, 1035 (S.D.N.Y. 1993); *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 72-74 (S.D.N.Y. 2010). And while we anticipate that the United States will challenge the timing of this motion as it relates to the UPS and Chase Paymentech subpoenas, and while the record is somewhat unclear on this issue, the Court appeared to leave open to Defendants the opportunity to at least assert such a challenge. At the May 4, 2023, hearing on prior counsel's motion to withdraw, Defendants were asking for the opportunity to review with new counsel all of the third-party subpoenas. (Hearing Tr. 8:4 – 9:7, May 4, 2023, ECF No. 53.) Of course, the Court did not predetermine any challenge, but under the circumstances described above Defendants believe it would be proper for the Court to modify the protective order to prevent the Government's misuse of the customer information it obtained from UPS and Chase Paymentech. *See See United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 176–77 (D.D.C. 2015) ("In civil cases, a motion to quash is not necessarily rendered moot by production of the requested materials because '[w]hile a court may not be able to return the parties to the *status quo ante* ... a court can fashion *some* form of meaningful relief.'" (alteration in original) (quoting *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992))). "Specifically, the Court may 'order[ ] the Government to destroy

or return any and all copies it may have in its possession.'" *Id.* at 177 (quoting *Church of Scientology*, 506 U.S. at 13).

THEREFORE, we respectfully request the following relief:

For a modification of the protective order (ECF No. 47_1) to require that all documents produced as a part of discovery in this civil action be redacted to preserve the privacy and confidentiality of Defendants' customers at this stage.[3] We also request an order that the United States delete any customer identifying information that they have received through this civil action, not share that information or use it outside of this case, reverse any actions taken based on that information, and be enjoined from using any customer identifying information obtained as part of this civil action unless and until the merits of this action have been decided. Finally, we request that paragraph (l) be removed from the parties' stipulated protective order, as the United States is using that paragraph to prospectively ignore paragraph (d) of the protective order for the potential use "confidential" or "attorney's eyes only" information outside of this litigation.

Respectfully submitted,

DHILLON LAW GROUP INC.

By: _____/s/_____
David A. Warrington (*pro hac vice*)
Michael A. Columbo (admission forthcoming)
Josiah Contarino

cc: All Counsel of Record (via ECF)

---

[3] The United States has agreed to permit Defendants to redact customer identifying information in the records Defendants produce in response to the United States' discovery demands, so the redaction relief requested in this motion need not encompass those documents. The United States has reserved the right to revisit the issue at a later date, thus Defendants reserve the right to seek Court protection at a later date should same be necessitated.