Case 1:23-cv-00369-NRM-RML Document 66 Filed 06/16/23 Page 1 of 6 PageID #: 1492



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 16, 2023

**By ECF**
Honorable Nina R. Morrison
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: *United States v. Rare Breed Triggers, LLC, et al.*,
       No. 23-cv-369 (Morrison, J.) (Levy, M.J.)

Dear Judge Morrison:

  Pursuant to Local Civil Rule 37.3(c), the United States respectfully submits this letter in opposition to Defendants' June 9, 2023 letter motion (Motion). Dkt. No. 62 (Mot.). First, Defendants seek to modify the April 16, 2023 Stipulation and Order for the Protection of Materials and Information (Protective Order) to redact "personal identifying information" "from all documents requested by Plaintiff." Mot., 1. Then, Defendants bring an untimely motion "to quash subpoenas that sought [such] personal identifying information."[1] *Id.* Next, Defendants appear to ask for relief, in the alternative, "to maintain the confidentiality of such information at this stage of the litigation." *Id.* The United States interprets Defendants' Motion to seek: (i) the redaction of *any* information that could possibly be used to identify the tens of thousands of Defendants' customers by name who purchased an illegal machinegun; and (ii) an order from this Court directing the United States Attorney's Office to withhold information from other federal agencies, notably the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). As discussed more fully below, Defendants' Motion should be denied.

**I.  Relevant Background**

  Defendants' prior counsel and the United States negotiated and jointly proposed the terms of the Protective Order. Under the Protective Order, the parties agreed that documents including "customer lists" and "Sensitive Personal Data, such as personal identifiers" would be designated Confidential. Dkt. No. 47-1 at 1-2. All records served on the United States by UPS and Chase Paymentech have been designated Confidential by the United States. By designating these records Confidential, the parties agreed that this information will be filed under seal and otherwise be withheld from public disclosure. The Protective Order further provides that "[n]othing in this

---

[1] Defendants challenge the production of documents by the United Parcel Service (UPS Subpoena) and JPMorgan Chase Paymentech (Paymentech Subpoena) in response to the United States' subpoenas served on those entities under Federal Rule of Civil Procedure 45.

Order shall prohibit or limit the United States or any of its agencies or employees from using or disclosing materials or information designated as 'Confidential' as the United States, its agencies and its employees would otherwise be authorized to do by law absent entry of the Order." Dkt. No. 47-1.

## II. Rebutting Defendants' Counsel's Assertions about Prior Events in this Case

As an initial matter, in Defendants' June 9, 2023 motion, Defendants' new counsel assert – or at least strongly imply – that the United States tried to hide the UPS Subpoena from Defendants' prior counsel. They assert that the Unites States deceived the Court about what documents it had received pursuant to the UPS Subpoena. And they assert that the United States misled Defendants' former counsel about what information the Paymentech Subpoena sought.

None of Defendants' counsel's assertions is true. It appears that Defendants' counsel have not reviewed the relevant documents – particularly email communications between the United States and Defendants' former counsel – prior to making these assertions. Had they done so, they would have learned that their accusations are baseless. The United States acknowledges that Defendants' current counsel are relatively new to the matter, having filed notices of appearance three weeks ago. But Defendants' counsel had ample opportunity to discuss these issues with the United States during two meet and confers. Given the chance, the United States would have pointed Defendants' counsel to the emails that would have cleared up any misunderstandings that now seem to underlie this motion.

### A. The UPS Subpoena was Served on Defendants' Former Lead Counsel

Defendants' counsel suggest that the United States sought to hide from Defendants a subpoena it served on UPS by failing to notify Defendants' former lead counsel of the subpoena. This suggestion is, unequivocally, wrong. Defendants' counsel's suggestion is belied by the email exchanges between the United States and Defendants' former counsel. On February 16, 2023, the United States emailed Caleb Kruckenberg – Defendants' former lead counsel – and attached the very UPS Subpoena that Defendants' current counsel claim was not sent to him. *See* Exhibit A[2]. Later that same day, Mr. Kruckenberg acknowledged receipt of the email. *See* Exhibit B.[3]

### B. The United States Acted Properly with Respect to the UPS-Subpoenaed Documents

Defendants' counsel goes on to claim that the United States misled the Court by failing to disclose, during an April 4, 2023 hearing, that it had obtained customer information responsive to the UPS Subpoena. The problem with Defendants' claim is that the United States did not have that information on April 4, 2023. Indeed, the United States did not obtain such information until

---

[2] The United States has highlighted the relevant portions of the emails attached as Exhibits to this letter.

[3] Note, too, that in a follow up email, the United States included Mr. Kruckenberg's colleagues on the original email. *See* Exhibit C.

three weeks *after that hearing*, on April 25, 2023. *See* Exhibit D. On that same day, April 25, the United States informed Defendants' former counsel by email that it had received information from UPS and that the information "appear[s] to include shipping records, including names and addresses, of RBT customers." Exhibit E. The United States went on to say, "[p]lease let us know if you want to discuss further." *Id*. The United States received no response from prior counsel regarding the UPS Subpoena. Accordingly, Defendants waived any objection to the UPS Subpoena.

Defendants argue that the subpoenaed information provided by UPS is afforded some kind of privacy protection because it includes details about their customers.[4] Defendants, however, point to no constitutional provision, no statute, and no judicial opinion that states that shipping records of a business, held by a third party, are confidential.[5] Nor could they. Once information is provided to a third-party commercial shipping business, no one can expect that such information will remain private, particularly where, as here, these customers purchased firearms. *See, e.g.*, *Parkey v. Bowling*, 2008 WL 2169007, *8 (N.D. Indiana May 22, 2008) (addressing claim that a government agency violated an individual's rights by obtaining UPS shipping records).[6] The cases to which the Defendants cite in their letter are not to the contrary; in fact, in each case, the records at issue where those kept by the party itself, not records that were shared with a third party.[7]

### C. Defendants' Former Counsel was Aware that the Chase Paymentech Subpoena Sought Customer Information, and Explicitly Did Not Object

Defendants' counsel claim that the United States somehow misled former counsel into believing that the Chase Paymentech subpoena was not seeking customer information. Again, the emails tell the true story. To simplify a bit, the Paymentech Subpoena sought two categories of material: (1) information about credit card transactions for Rare Breed Triggers (RBT) and (2) information about instances in which RBT customers sought refunds for their purchases, referred to as "chargebacks". In phone discussions and email exchanges, the United States advised

---

[4] Defendants' claim that they are contractually bound to keep their customers information private based on affirmative representations they made to these customers. Mot., 3. These claims are unsupported in the motion; Defendants point to no contract or statement that corroborates these claims. It is impossible, therefore, to evaluate the legal significance, if any, of such representations, to the extent that they were made at all.

[5] The shipping records at issue are qualitatively different from financial records held by third parties, which, under some circumstances, may be confidential pursuant to statute. The Court will recall that the parties briefed that issue in connection with the United States' subpoenas to JP Morgan Chase. *See* Dkt.17, 18.

[6] Note, too, that the UPS terms of service effective in 2021 specifically state, at page 33, that UPS has "no special confidential . . . relationship with any Shipper . . . ." Exhibit F.

[7] It appears from the UPS records that the products at issue were shipped from Defendants' contract manufacturer in Utah to the customers. Assuming that is the case, there is thus even less support for an argument that the shipping information was private, or meant to be so, as yet another third party was privy to it.

3

Defendants' former counsel that the information about the credit card transactions would include customers' credit card numbers, but would not include their names or addresses.  Defendants' former counsel had no objection to the United States' obtaining that information because the credit card numbers *had no associated customer names or addresses*.  *See* Exhibit G.  The United States did obtain the information, and can represent that it does not include customer names or addresses, only credit card numbers.

As for the information about requests for refunds from RBT customers, the United States was clear that it sought the names and contact information of RBT customers who had complained about their purchases.  Again, Defendants' former counsel had no objection to the United States' obtaining that information.  *See* Exhibit H ("As we discussed, we also don't object to targeted requests for *non-anonymous* information related to chargebacks, returns or customer complaints." (italics in original)).

Nor would any such objection be valid.  Customers who complained about their purchases are potential witnesses for the United States; they are the very people whom RBT defrauded.  Take, for example, the customer who, seeking a refund, stated that "[n]owhere on your website does it say that the ATF has issued a cease and desist order for all sales of the FRT 15," and that "[y]our company's failure to disclose that it is CURRENTLY ILLEGAL for you to sell your product is a deceptive business practice at best, more realistically fraud, our personal opinions regarding ATF over reach [sic] are irrelevant."  Exhibit I (all caps in original) (redactions added).  And, seemingly angered that RBT hesitated in issuing him a refund because, as RBT put it, doing so would "prevent us from being able to afford what's sure to be a very costly legal battle," this customer told RBT that "[y]our threats not withstanding [sic], I am totally willing to let VISA sort out the legalities of charging back the cost of an unusable product, the sales price of which you seem to be requesting as a donation to your company's legal defense fund." *Id*.

### III. Defendants' Motion to Quash the Subpoenas is Untimely

Defendants' Motion, which is effectively a motion to quash, is untimely.  The UPS Subpoena was served on February 18, and had a compliance date of March 2; the Paymentech Subpoena was served on April 5, and had a compliance date of April 21.  Any motion to quash must be timely brought, s*ee* Fed. R. Civ. Pro. 45(d)(3)(A), which means prior to the deadline for compliance.  *See, e.g., Ireh v. Nassau Univ. Med. Ctr.*, 2008 WL 4283344 at *2 (E.D.N.Y. Sept. 17, 2008).  It is well past those dates.  And given the history of these subpoenas – especially the communications between the parties – there is no reason for the Court to nonetheless consider the merits of the Motion.

### IV. Defendants' Motion Seek Inappropriate Relief

Finally, Defendants request, without any legal support, that this Court order that the United States "not share [customer identifying] information or use it outside of this case, reverse any actions taken based on that information, and be enjoined from using any customer identifying information obtained as part of this civil action unless and until the merits of this action have been decided."  The broader implications of such a broad and wide-ranging injunction are troubling, and potentially raise separation of powers concerns.  As a preliminary matter, it would prevent a

4

government agency that learns of criminal activity from taking steps to stop that activity.[8] In the instant litigation, such an order would prevent this Office from working with its client-agency to effectively prosecute this case.

It is therefore not surprising that the Defendants have cited to no authority that supports their request. There is, however, authority in analogous contexts that holds that such sharing is proper. In the so-called "stalking horse" cases, the Second Circuit has repeatedly held that it is proper for a probation officer, who may obtain information about an individual without a search warrant, to share such information, indeed coordinate with, law enforcement officers, who would otherwise need a search warrant for the same information. *See, e.g., United States v. Chandler*, 164 F. Supp. 3d 368, 380-82 (E.D.N.Y. 2016) (discussing "stalking horse" cases).

Sharing information among government agencies, even information that may be used to support a criminal investigation, is common, appropriate, and legal. *See, e.g., United States v. Fiore*, 381 F.3d 89, 94 (2d Cir. 2004) ("[T]here is no general rule preventing the SEC's sharing of evidence acquired through civil discovery with criminal prosecutors."); *United States v. Simcho*, 326 Fed. Appx. 791, 792 (5th Cir. 2009) ("[t]here is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions by different federal agencies against the same defendant involving the same transactions . . . The simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions even though it attempts to vindicate several interests simultaneously in different forums."); *United States v. Stringer, III*, 535 F.3d 929, 933 (9th Cir.2008) ("Federal securities laws authorize the SEC to transmit evidence it has gathered to the USAO to facilitate a criminal investigation by the USAO. See 15 U.S.C. §§ 77t(b), 78u(d).").

\* \* \*

---

[8] The United States is not claiming that a court cannot prevent the sharing of information that has been improperly obtained or that has been obtained for improper purposes (e.g., civil discovery that has no connection to the issues in the civil litigation). *See, e.g., United States v. Rhodes*, 2019 WL 3162221, \*3 (S.D.N.Y. 2019) (identifying circumstances, not present here, in which the sharing of information between civil and criminal authorities may be inappropriate).

For the reasons stated above, the Court should deny the Defendants' motion.[9]

                              Respectfully submitted,

                              BREON PEACE
                              United States Attorney

By:     */s/ Michael S. Blume*
                              Michael S. Blume
                              Joseph Marutollo
                              Paulina Stamatelos
                              Assistant U.S. Attorneys
                              (718) 254-6479 / 6288 / 6198
                              Michael.Blume@usdoj.gov
                              Joseph.Marutollo@usdoj.gov
                              Pauline.Stamatelos@usdoj.gov

---

[9] For ease of reference, the existing protective order (Dkt. No. 47-1) is attached as Exhibit J. As explained *supra* pg. 1, the Protective Order negotiated by Defendants' prior counsel provides protection for Defendants' customers in that it allows information about them to be shielded from the public.