**Rebuttal statement of Daniel G. O'Kelly**

In ATF's Report of Technical Examination (UI #163080-21-0006) to Special Agent Michael T. Nuttall, I first noticed that they cite 28 CFR 0.130, adding that the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms. And pursuant to that, the Firearms and Ammunition Technical Division (FATD) "provides expert technical support" on firearms and ammunition to federal, state, and local law enforcement. However, shortly thereafter FATD "determines" that the item at issue is a machinegun, rather than merely offering their expert opinion as such. I find it disturbing that they offer their opinion as a determination because this "determination" is outside the scope of their authority. Any such determination is only within the authority of a court. Also, if FATD is going to offer "expert technical support", then that support should be in the form of expert technical opinions and should be based on facts and their ability to clearly interpret the elements called for in a definition within the U.S Code. However, they go on throughout the remainder of the report making "determinations" as though they are fact, while using vague and unclear terminology, often evading the pivotal point of the definition. They do so while making statements which are not only untrue but at times physically impossible. In their "Findings" on page 2, FATD cites the fact that "FTISB previously examine (sic) a "forced reset trigger" from (name redacted) (holder of U.S. Patent 10514223) and **determined** it to be a combination of parts, designed and intended for converting a weapon into a machinegun; and therefore a machinegun as defined in the GCA and NFA ... (bold added)"

This citation is also obviously a leap in logic which is being offered as "support" for their later-stated opinion that the Rarebreed FRT is a "machinegun". The reason that I find this disturbing is the fact that ATF's FTISB, previously known as "FTB" has commonly reversed themselves months or even years later as to their opinions of other items as firearms under the purview of the NFA, and then back again in some cases[1]. In this respect, how can logic dictate that item B should be classified as something because item A previously was, since item A can later be re-classified as something else? Also, I find it disturbing that ATF takes so much liberty with the use of the words "classify" and "classification" as they refer to a device or item. While it is the Court which is the finder of fact, ATF serves to give opinions as to which definition or "class", if any, an item falls according to the definitions in the CFR and the U.S. Code. They are supposed to do this according to their training and experience by applying the required elements contained in a given definition, and by further taking notice of the adjectives and adverbs found in said definition which further qualify a given element(s). However, the "classification" of an item as to whether it satisfies a given definition is an act which can be performed by anyone with enough command of English to read the definition in detail and comprehend its nuances, along with enough knowledge of the mechanical features of the item in question. This is a feat easily done by may laypersons and especially by those in the firearm industry. However, due to the lack of one or both of

---

[1] On 11/26/12 ATF's FTB letter to Alex Bosco (903050:MMK, 3311/2013-0172) stated that a forearm brace does not alter the classification of the firearm and would not be subject to the NFA, although the intentional shouldering of the brace would. Then on 3/5/14, ATF's FTB letter to Sergeant Joe Bradley (903050:AG 3311/301737), stated that even the intentional shouldering of a brace-equipped firearm would not violate the NFA. Then on 10/28/14, ATF's FTB letter to Eric Lemoine (907010:MCP, 3311/302492) again stated that should a person shoulder a brace as a stock, that it would be "classified" as a firearm within the NFA. Then on 3/21/17, ATF's FTB letter to Mark Barnes, Esq. (90000:GM 5000), stated that shouldering a forearm brace is "not necessarily a violation". Then on 6/10/21 ATF filed an NPRM in the Federal Register, proposing to make braces fall within the NFA.

1

these abilities, individuals and companies have acquiesced to ATF for decades, asking them to make such "determinations" or "classifications" for them. In years of being a paid Consultant for a number of licensed firearm manufacturers, I have repeatedly seen FATD take great advantage of the opportunity to get away with "classifying" or "ruling" items to be something that it does not satisfy the definition of. They are often completely subjective in their findings. This has clearly been the result of the latitude that FATD has been afforded by those with insufficient knowledge to apply the item to the definition themselves. Countless times FATD has taken advantage of the opportunity to call something as they prefer it be classified when either no one knew better, or was afraid to challenge them, or could not afford to due to because ATF has numerous Attorneys on salary who can bankrupt a challenger who would need to pay enormous legal fees. Too often, FATD also says that they determine something to be an NFA firearm based on elements which do not even appear in said definition[2].

Further in ATF's "Findings" in the second paragraph on page 3, they make a statement that the item covered in U.S. Patent 10514223 does not function by "hammer-follow". I find this issue disturbing as it is being offered as a "red herring". Even firearms which do experience "hammer-follow"[3] merely jam in most cases. Although a firearm which does fire more than one shot with a single function of the trigger due to hammer-follow would qualify as a machinegun, hammer-follow itself is not illegal.

At the end of the fourth paragraph on page 3 ATF incorrectly quotes the definition of a machinegun in their favor by saying that "Machinegun classifications are based on ... whether the device converts a weapon to shoot automatically." Here they have conveniently left out the phrase of the definition which adds," ... by a single function of the trigger". This is especially disturbing because the missing phrase is the key difference between what ATF alleges that the FRT does and what it in fact does. That is, fire fewer than one shot per function of the trigger.

In the fifth paragraph on page 3, ATF erroneously explains the meaning of the word "automatically" as it is defined in 27 CFR 479.11. Mr. Curtis states that "automatically" "means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger". As true as that may be, it has no application to the FRT. The FRT requires two separate functions of the trigger to fire each shot. Despite the fact that the FRT automatically assists the resetting of the trigger to the ready position, the FRT still requires a second manual <u>and</u> intentional function of the trigger, on the part of the shooter, to fire each shot. The FRT does not <u>shoot automatically</u>. He only thing that it does <u>automatically</u> is to <u>reset its trigger</u> to the ready position. In order for an item to qualify as a machinegun within the specified definition it must satisfy all of the several qualifiers in the definition. For example, the adverb "automatically", describes how the weapon must shoot. The adjectival phrase "more than one shot" describes what it must shoot. And further, the weapon must do these qualified things "without manual reloading". Finally, it must do all of the aforementioned actions "by a single function of the trigger". ATF Chief Counsel's Office has repeatedly

---

[2] FATD letter to Standard Manufacturing re the DP12 being a Destructive Device because it weighs eleven pounds.
[3] Hammer follow is a condition which may occur in a malfunctioning semiautomatic firearm, wherein the hammer can fail to remain in the cocked position during cocking, and then ride the bolt forward. In some cases, this can cause chain-firing and result in the gun becoming a machinegun as defined in 26 USC 5845. It most cases it only results in a jammed firearm which must be cleared before firing a subsequent shot.

determined that "a single function of a trigger means a single movement of a trigger.[4]" The below email was addressed to me as well as to hundreds of other ATF personnel at the time.

From: Galbraith, A.
Sent: Friday, March 20, 2009 8:51 AM
To: Turner, R.; TPD-NEXUS
Subject: A system that fired upon release of the trigger also.
All,

FTB looked at the original device back in the day. As long as the gun only fires one shot on the pull and one on the release, it is NOT a machinegun. The ATF-counsel-approved interpretation of "single function of the trigger" is a single movement of the trigger, making systems like this OK.
A. Galbraith

Firearms Enforcement Officer
Firearms Technology Branch
244 Needy Road, Suite 1600
Martinsburg, WV 25405


Since that time, Franklin Armory has developed and marketed their BFS Binary Triggers©. A Binary Trigger© is an ATF-approved trigger system which allows a firearm to fire one shot upon the pull function of the trigger, and another shot upon the release function of the trigger. FATD has considered this to be a legal and semiautomatic device since approximately 2015. Extremely fast follow up shots can be fired with a Binary Trigger©, which only requires one function of the trigger per shot fired, however ATF has an issue with the FRT which requires two functions of the trigger per shot fired. I find it very arbitrary that ATF has a problem with a device which requires twice the trigger functions per shot as one which they consider perfectly legal, let alone the fact that the FRT does not satisfy the definition.

In his examination report, Mr. Smith references a letter, regarding a different trigger, from Mr. Curtis. In his letter Mr. Curtis cites Staples vs. United States by pointlessly saying that "...once it's trigger is depressed the weapon will automatically continue to fire until it's trigger is released or the ammunition is exhausted." Here he is playing with the various connotations of the word "pressed". At risk of being redundant, upon "functioning" the trigger of an FRT by moving it rearward from the ready position to the fire position, the weapon only fires one shot. To fire a second shot, the shooter must wait for the FRT to force the trigger forward into the ready position. Only then can the shooter fire another shot by again pulling (functioning) the trigger to the rear, causing it to release the hammer. As a result of the design of the FRT, two separate functions of the trigger must occur for each shot fired. This is double the number of functions required for legal semiautomatic firing[5]. Mr. Curtis, in his Staples quote, attempts to use the word "depressed" as though it means "functioned". I notice throughout the ATF Report that

---

[4] See email from ATF FEO Adam Galbraith on 3/20/09 at 8:51am to Richard Turner and all ATF-trained Interstate Nexus Agents (TPD-Nexus).

[5] Compare to a machinegun, which fires two or more shots for each time the trigger performs the single function of releasing the hammer. Further, compare it to the Binary© type of legal semiautomatic triggers which fire a shot upon functioning the trigger to the rear, and fire another shot by functioning the trigger forward to the ready position.

3

the words "pressure", "pull", and "depressed" are used as though they are synonymous with "function". They are not. Function is defined as *"an activity or purpose natural to or intended for a person or thing. Verb: Work or operate in a proper or particular way[6]."*

With an FRT, the shooter may exert constant "pressure" against the trigger, although the trigger cannot be "pulled" (moved) to the rear again until after each time it is forced forward by the hammer, at which point it can be "functioned" again by intentionally moving it to the rear with the finger. Constant pressure on a trigger does nothing. It is akin to leaning against a locked door until someone unlocks the door from the other side, which then allows the door to be pushed open by the weight leaning against it. It is only then that the weight of the person who is leaning against it functions the door to the open position. Upon the person falling through the then open door, the door is again forced closed, and locked by a mechanical apparatus (e.g. FRT's locking bar). During this time, another person leans against the door waiting for it to be unlocked so that their weight allows them to fall through it once unlocked.

Mr. Smith then cites the Freedom Ordnance 3:16-cv-00243-RLY-MPB case, stating that " ... a firearm is a machinegun when an internal mechanism or operation automatically forces the individuals finger forward instead of requiring that the shooter release the trigger." Again, there is nothing in the National Firearms Act to support this. The definition of a machinegun makes no such claim. This is yet another example of FATD's decades long practice of insisting that items fall within definitions which they clearly do not satisfy the elements of[7]. The word "automatically" is used in the definition to describe how the gun must shoot. That is, <u>with a single function of the trigger.</u> The FRT's trigger's return to the reset and forward position is forced by the FRT's hammer, but this movement (function) is still a "release". The definition says nothing about requiring the shooter to "release" or to remove their finger from the trigger.

At the top of page 4, Smith erroneously states that "If a device is designed to assist in preventing the hammer from positively resetting or which utilizes a spring, electric motor or non-manual source of energy which assists in the automatic resetting of the hammer and causes the firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, such an item or device would be classified as a combination of parts designed and intended, for use in converting a weapon into a machinegun; ... " Firstly, this verbiage is not found in any definition of a machinegun within the U.S. Code. It is merely another example of FATD writing their opinion to suit a situation. Additionally, the FRT does none of these things. It does not "assist in preventing the hammer from resetting". In the FRT the hammer positively resets and re-engages with the trigger after each shot. Secondly, every semiautomatic firearm ever made utilizes a "non-manual source of energy which assists in the automatic resetting of the hammer". That is the energy generated by burning gunpowder to drive

---

[6] Google.

[7] From 1968 to 2021 ATF insisted that a part of 60% of new firearms on the market have a part which qualifies as a firearm "frame or receiver" as defined in 27 CFR 478.11. However, based on my testimony in the Lycurgan, Jiminez, Roh, and Rowold/Robison cases, Attorney General Loretta Lynch notified Speaker of the House Paul Ryan in 2015 that ATF needed to correct the issue. ATF took no action. In 2018 Judge Selna, and in 2020 Judge Carr, ruled that ATF was wrong. In June of 2021 ATF finally filed a New Proposed Rulemaking in the Federal Register to change the definition of a "frame receiver" to include the previously referred to parts. The process is ongoing.

4

the bolt or breechblock[8] to the rear, which in turn causes the reset of the hammer by its reengagement with the trigger[9]. This is a non-manual source of energy, so if FATD's above position were to be given merit, then every semiautomatic firearm in the U.S. would be deemed a machinegun. Further, the phrase "and causes a firearm to shoot automatically more than one shot" precludes the FRT from FATD's position because it does not shoot more than one shot per function of the trigger.

On page 4, 8th paragraph, Mr. Smith states that "This differs from a cycle of eoprations (sic) in a typical AR-type semiautomatic firearm in which the shooter must release and pull the trigger to fire a second projectile". His statement here is misleading, because in a typical AR-type firearm, the shooter does not have to release the trigger to allow the trigger to reset. The trigger resets due to the fact that it is under spring pressure to return to the forward position. In fact, the trigger-return spring in a typical AR-type firearm performs the same function as the FRT hammer. It returns the trigger to the forward/reset position. The only difference between the way the typical system works vs. the FRT is the amount of force with which the trigger is forced forward. The shooter must only lessen the pressure that he/she is exerting against the trigger in a typical AR-type firearm to allow the spring to do its job. The finger is never required to break contact with the trigger. In an FRT the hammer performs the movement (function) of returning the trigger to the forward position without the need for the shooter to break contact with the trigger.

Mr. Smith continues by saying that "… a firearm assembled with the FRT requires no such release and subsequent pull by the shooter to fire a second projectile. … the shooter may fire a second projectile merely by maintaining the initial trigger pull and allowing the self-acting internal mechanism to complete its automatic cycle of operation". Although Mr. Smith is correct that an FRT equipped firearm doesn't require a "release" (break in contact from the finger) with the trigger to fire a subsequent shot, it does require the trigger to <u>function</u> by moving back to the reset position before firing another shot. However, he is incorrect by stating that the "shooter may fire second projectile by maintaining the initial trigger pull." This is physically impossible, due to the forced return (function) of the trigger to the reset position by the steel hammer, and then by the locking bar which holds it locked into that position until the cycle of firing that shot is complete. In this instance ATF again takes liberty in blurring the lines between "pull", "pressure", and "function". The truth is, that a shooter of an FRT may maintain pressure on the trigger throughout the firing of a string of several shots, but even then, the trigger functions to release the hammer and then functions to reset the hammer/trigger for each shot fired. Of course, the shooter must consciously cause one of these functions to occur for each shot.

The most disturbing statement in Mr. Smith's' entire report is on page 5 in the second paragraph. He describes his test-firing of the FRT, stating that he "…fired two rounds automatically with a single pull/function of the trigger" and that he repeated this an additional time. The reason that I say this statement is so disturbing is because his claim is physically impossible. Unless he was test-firing some other device, this could not have occurred. As I've previously stated, every time an FRT-equipped firearm fires a shot, the trigger is forced to return to the forward reset position where it began before

---

[8] Depending on it's design, every firearm utilizes either a bolt or breechblock to support the rear of a cartridge upon firing. This support prevents pressure from moving rearward until after the bullet exits the barrel and prevents injury to the shooter.
[9] Some semiautomatic firearms utilize a striker instead of a hammer. A striker is a spring-loaded firing-pin which is released from the cocked position by the sear upon a function of the trigger.

5

firing. Resultingly, during a string of rapidly fired shots, the shooter will physically feel his finger moving rearward and forward once each, for each shot fired. This movement is approximately .13 inch both fore and aft. It is imperative to note here that firearms are precise machines which rely on extremely close tolerances in order to function, and to do so safely. There is no measurable "play" or "stretch" in an operable firearm. The trigger of an FRT must make this movement both aft and then again forward for each shot fired. Therefore, I'm at a loss as to how Mr. Curtis can make this impossible claim. As such, Mr. Smith should reconsider this statement before testifying to it under oath. In the next paragraph, he claims to have fired 5 shots "by a single function of the trigger". This is again physically impossible as the trigger would have made the above-described movements (functions 2 time for each shot fired).

I note that this is the first time that ATF acknowledges the "pull" of a trigger as a function. This is a double-edged sword however, because Mr. Smith, and FATD in general, is noticeably liberal in their usage of the various connotations of this word "pull" as it suits their collective aim. I offer that a person can "pull" or add "constant pressure" on the knob of a locked door without causing a "function" to occur, whereas one can also "pull" or add "constant pressure" on the same door when not locked and effect the "function" of opening or closing the door in the process. Likewise, a person can or add "pressure" onto the steps of an escalator by stepping onto it. Yet the escalator continues to perform the "function" of moving the person up or down the incline by working against that pressure. There is a huge difference between "pull", "pressure" and "function", which is exactly why writers of the definition chose to use "function" as the definitive issue concerning what a trigger must do.

In referencing a prior examination of a different trigger, On page (46) Mr. Curtis states in the last sentence on the page that "... a single constant rearward *pull* will cause the firearm to fire until the trigger is released, the firearm malfunctions, or the firearm exhausts its ammunition supply." (italics added) Here is yet another misleading statement which is poorly worded, in an effort to support FATD's position. Not to mention the fact this is not an examination of the FRT-15. The accurate way to have stated this would be "a single rearward movement will cause the trigger to function twice for each shot fired, by repeatedly functioning the release of the hammer, and then functioning to reengage the hammer with the trigger." In summary, ATF regularly confuses the issue by saying "pressure" where it is immaterial because "function" is the issue. At other times ATF uses the word or "pull" despite the fact that they are referring to a pressure which is causing no function.

Again referencing a examination of a trigger which is not the FRT-15, On page (50), Mr. Curtis states in the second paragraph that "...after firing several cartridges the sear failed to retain the hammer which simply followed the bolt forward leaving a substantial firing-pin mark on the primer of the chambered cartridge without firing the cartridge." Here I fail to see the point, as this merely resulted in a stoppage, commonly known as a "jammed gun". This is hardly a violation of the U.S. Code or a public safety issue. It would only be of consequence if the gun had fired multiple shots as a result.

Again referencing a examination of a trigger which is not the FRT-15, On page (51) Mr. Curtis describes a test-firing sequence wherein ATF modifies the gun by attaching a zip-tie around the trigger. This is a laughable demonstration because it has nothing to do with ATF's erroneous assertion that the FRT fires more than one shot by a single function of the trigger. Zip-ties have nothing to do with the FRT. If a person were to modify a firearm from its original legal design by redesigning it as a machinegun as defined in 26 USC, then the criminal violation would have been committed by the modifying individual. This "test" also gives no acknowledgement to the fact that a plastic zip-tie has some degree of elasticity

6

and that the installation of one as depicted still allows the firing to occur as a semiautomatic, with one shot being fired with at least one function of the trigger occurring each time. Further, if such a modified firearm were received from the field by FTSIB for determination, they would "classify the zip-tie as the machinegun, as they have other items in the past, such as shoestrings, pieces of a coat hanger, etc... In such cases their determination is that the item has been redesigned as an item solely intended for use in converting a weapon into a machinegun, under the third definition of a machinegun in 26 USC 5845(b). In fact, any, and every semiautomatic firearm can be modified to fire fully-automatically. However, this doesn't make every semiautomatic a machinegun.

Again referencing a examination of a trigger which is not the FRT-15, On page (52), Mr. Curtis states in paragraph 2 that " ... ATF has long held that a single function of the trigger is a "single pull" or alternatively, a single release of a trigger." Here FATD's statement fully supports my earlier point about Binary Triggers©. The ATF stated position clearly supports that either a function of the trigger to the rear for each shot fired is legal, or alternatively, a single function of the trigger forward is alone sufficient for the FRT to be recognized as a legal semiautomatic. Therefore, the FRT could ironically fire two shots for each pull and return of the trigger, regardless of the fact that it is mechanically returned to the reset position, and still be legal. Yet FATD erroneously argues otherwise.

Again referencing a examination of a trigger which is not the FRT-15, In paragraph 4 of page (52), Mr. Curtis begins by citing that "Federal courts have noted that automatically means the weapon "fires repeatedly with a single pull of the trigger"". Still, he blurs the issue with the use the word "pull". No firearm fires by merely adding pressure to a trigger without that trigger actually moving a distance. So, "pull" certainly does not mean "add pressure without movement". Clearly, the federal courts have intended the word "pull" to mean a movement which causes a function therefore we see the word "function" in the definition. Once again, the FRT fires one shot per rearward movement/function of the trigger.

Again referencing a examination of a trigger which is not the FRT-15, At the start of paragraph 5 on page (52), Mr. Curtis falsely states "FTISB testing indicated that continuous rearward pressure after the initial pull of the trigger initiates a "firing sequence" which discharges multiple rounds with a single function of the trigger." I can only shake my head at such an outlandish claim. The facts are that maintaining rearward pressure on the trigger after the initial pull of the trigger, initiates the repetition of a cycle wherein the firing of one shot occurs with each time the trigger is functioned aft and then functioned forward.

Finally in referencing a examination of a trigger which is not the FRT-15,, on page (53) in paragraph 2, Mr. Curtis says that "A device designed to prevent the hammer from positively resetting could cause a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, and would also be classified as a combination of parts designed and intended, solely and exclusively, for use in converting a weapon into a machinegun;..." I'm at a loss to see his point here as he again attempts to use technical descriptions and definitions which have zero applicability here. The hammer in an FRT absolutely makes a positive reset by interlocking with the trigger after each shot fired. Further, how does he propose to call something illegal by virtue of what it "could do"? Obviously, a baseball bat "could" be used as a deadly weapon, but until or unless it is that doesn't make them illegal. Even further, an FRT fires one shot per two trigger functions, let alone one per trigger function

7

(i.e. Binary Triggers©), let alone more than one shot per trigger function (i.e. machineguns). Lastly, since an FRT <u>does not</u> convert a firearm into a machine gun, it is not designed and intended for that purpose.

I reserve the right to amend my report.

_____
Daniel O'Kelly

_____8/26/21_____
Date

8