August 26, 2021

**VIA E-MAIL ONLY**
kevincmaxwell@gmail.com

Kevin C. Maxwell, Esquire
Law Offices of Kevin C. Maxwell
733 West Colonial Drive
Orlando, Florida 32804

Subject: Rare Breed FRT-15 Rebuttal

Dear Kevin:

My consulting firm, Rick Vasquez Firearms, LLC was asked to provide an opinion concerning the classification of Rare Breed Triggers model FRT-15 trigger by ATF as a machinegun. This classification is found in FTCB# 2021-595-DAS 317066 in which ATF FTISB has classified the FRT-15 as a machinegun.

As part of my research and analysis, I have reviewed a Rare Breed Trigger installed in a firearm, along with an animated video on the operating principles. Provided to me for review were videos demonstrating how the FRT-15 works side by side of a Giessele trigger of the same design that ATF classified as a non-machinegun. While an employee of ATF and as the Acting Branch Chief of the Firearms Technology Branch I wrote opinions and classifications on machineguns, to include the Akins Accelerator. I additionally reviewed previous ATF Firearms Technology Branch rulings on machineguns and rate of fire increasing triggers and utilized my extensive experience in firearms technology classification related matters.

## I. LEGAL DEFINITIONS AND BACKGROUND:

Under 18 U.S.C. § 921(a)(3), the Gun Control Act of 1968 ("GCA") defines the term "firearm" to include "any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive ... [and] ... the frame or receiver of any such weapon..." Moreover, under 26 U.S.C. § 5845(b), the National Firearms Act of 1934 ("NFA") defines "machinegun" to include "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically <u>more than one shot</u>, without manual reloading, <u>by a single function of the trigger</u>. This term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." (emphasis added). Thus, the question presently under consideration is whether the Rare Breed Triggers FRT-15 falls within the definition of "machinegun" under the NFA.

## II. APPLICATION AND ANALYSIS:

As a preliminary matter, it has long been ATF's position (dating back to the late 2000) that semi-automatic rifles that did not use electronics, springs, or hydraulics to reset the trigger were not

RICK VASQUEZ FIREARMS, LLC
August 26, 2021, Page 2 of 3

machineguns. The FRT-15 has a redesigned trigger, hammer, and a locking bar that functions as a disconnector. This system forces the trigger to mechanically reset and allows the shooter to pull the trigger in a rapid movement.

The FTISB report provided is very heavy on statutes and previous case law but light on explaining the Rare Breed trigger. For example, this trigger is not electric or an electrically fired minigun as one of the cited cases, nor does it have hydraulics or spring as cited in the Akins case. The pertinent information is the description of the method of operation. The FTISB description of operation is cited and clarified

FTCB# 2021-595-DAS 217066 "Below is a description of how the Rare Breed Trigger, FRT-15 device operates with attached diagrams found on the Rare Breed Trigger website.

First, the FRT-15 device must be installed into an AR 15-type weapon which includes a H3 weight buffer and M 16-type bolt carrier. These components are necessary because the specific design of the FRT-15 requires these to function as designed.

The picture on page 4 of the attached, shows the position of the hammer (orange), trigger (red), and locking bar (green) in the FRT-15 device once the weapon is charged and the selector is placed in the fire position. In this configuration, the hammer is held in place with its sear surface against the front of the trigger.

When the trigger is pulled (rearward pressure applied to the trigger), the hammer is released and strikes the firing pin, igniting the cartridge primer, and starting the cycle of operations (See attachment page 5 picture 7).

As the bolt carrier moves to the rear, the hammer is driven into the top of the trigger forcing it forward. The bolt carrier then strikes the locking bar moving, it to lock the trigger in the forward position (See attachment page 6 picture 8).

As the bolt carrier moves forward, the trigger is held in the forward position by the locking bar and the hammer engages the sear surface on the front of the trigger (See attachment page 7 picture 9). As the bolt carrier continues to move forward, it strikes the rear surface of the locking bar releasing the trigger. If the shooter maintains constant rearward pressure to the trigger, that single constant pull will continue the cycle of operation and fire a subsequent projectile. (See attachment page 8, 9 picture 10, 11). This differs from a cycle of operations in a typical AR-type semiautomatic firearm in which a shooter must release and pull the trigger to fire a second projectile. As stated, a firearm assembled with the FRT-15 requires no such release and subsequent pull by the shooter to fire a second projectile. Instead, the shooter may fire a second projectile merely by maintaining the initial trigger pull and allowing the self-acting internal

RICK VASQUEZ FIREARMS, LLC
August 26, 2021, Page 3 of 3

mechanism to complete its automatic cycle of operation."

The areas from the FTISB report in red are critical missteps by FTISB whether purposeful or not; we do not know. When the bolt comes to the rear, it cocks the hammer, which forces the trigger to reset in the forward position allowing the trigger finger to travel forward, and the blocking bar (disconnector is engaged) captures the trigger. At this time the hammer is still engaged. As the bolt carrier goes forward, it trips the blocking bar leaving the trigger and front of the hammer engaged. The blocking bar does not work as an automatic sear trip. If the shooter applies continued rearward pressure on the trigger, it will fire again with a single function of the trigger. If the shooter applies too much pressure, the cycle of operation is interrupted.

If the shooter releases the trigger, it ceases firing. This is no different than the Giessele Trigger (that ATF has approved) demonstrated in the video provided. The mechanics of the trigger components are the same. The video demonstrates how each trigger is pushed forward, pushing the shooters finger forward and then the trigger finger pulls the trigger causing the firearm to fire one shot. The FRT-15 trigger works simply as a rapid reset device allowing for rapid firing. This is not automatic firing as ATF has previously explained.





### III. CONCLUSION:

The trigger works simply as a rapid reset device allow for rapid firing. This is not automatic firing as ATF has previously explained. The mechanics allow for a rapid reset and pulling of the trigger. The videos provided and missteps in the FTISB report clearly demonstrate that FTISB either deliberately attempted to mislead and obfuscate, or simply does not perform historical research and comparisons when making opinions. My previous opinion not only still

stands but is more strongly confirmed. The FRT trigger system is a self-contained trigger assembly with a redesigned hammer, trigger, and locking bar (disconnector).
The FRT trigger system does not have an automatic sear, nor does it operate by electronics, springs, or hydraulics, therefore, is not a "machinegun". Additionally, there is no verifiable history of ATF opinions to support this trigger being classified as a machinegun, both in general and specifically pertaining to the underlying design.

Please contact me with any questions or concerns that you may have or should you require any clarification of me opinion. <u>This letter and the opinions contained therein are intended solely for your law firm and your client and are not to relied upon by any other individual or entity for any purposes.</u>

Very truly yours,

Rick Vasquez