UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        Plaintiff,

-against-

RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC; LAWRENCE DEMONICO; KEVIN MAXWELL,

        Defendants.

Case No. 1:23-cv-00369-NRM-RML

---

**DECLARATION OF DEFENDANT LAWRENCE DEMONICO
IN SUPPORT OF DEFENDANTS' SUR-REPLY**

I, Lawrence DeMonico, have personal knowledge of the following facts set forth below, and if called as a witness I would testify as follows:

1. I am the president of Rare Breed Triggers, LLC ("Rare Breed Triggers").

2. The facts set forth in this declaration are based on my personal knowledge; knowledge obtained in my role as president of Rare Breed Triggers; information from other individuals, including Rare Breed Triggers owner Kevin Maxwell (Kevin Maxwell together with me referred to as "we"), and review of documents, including financial documents related to the operation of Rare Breed Triggers.

3. At all times during the development, promotion, and sale of the FRT-15, we believed that the FRT-15 was not legally a machinegun or otherwise illegal to sell, own, or possess. Accordingly, at no time did we have the intent to defraud anyone through misleading them about the legality of the FRT-15 and thereby inducing them to buy the product.

**Significant Investments Made in the FRT-15**

4. Our belief that the FRT-15 is legal and not a machinegun is reflected in our operation of Rare Breed Triggers. We operated Rare Breed Triggers with all of the strategy, investment, and operation that any business would by putting down roots with customers, making long term capital investments, and publicly promoting our product.

5. Reflecting our belief that the FRT-15 is legal, we made significant capital investments in the FRT-15 as a technology and a product. This is money we risked never getting back unless the product was both legal and popular enough for us to recoup our investment through sustained sales on an ongoing basis.

    a. <u>Investments in the FRT-15 Technology:</u> We invested a significant amount of money in developing the FRT-15 and related technologies and in defending the FRT-15 patent against infringers.

        i. We invested thousands of dollars in the patent for the FRT-15.

        ii. We spent tens of thousands of dollars to develop the FRT-15 from a prototype into a production-quality trigger.

        iii. We spent tens of thousands of dollars to develop new models of forced reset triggers in the same vein as the FRT-15 for the AR-15 platform.

        iv. We spent tens of thousands of dollars to purchase patents for use in future forced reset triggers.

        v. We spent tens of thousands of dollars to develop variants of the FRT-15 to be used in firearms platforms other than the AR-15.

        vi. We spent tens of thousands of dollars to develop and patent new technology for implementation into forced reset triggers.

      vii. We spent approximately a million dollars defending the FRT-15 patent against patent-infringers in the marketplace.

6. Because we knew that the FRT-15 would face challenges from anti-firearm activists or questions from the public about its legality, we invested thousands of dollars in obtaining technical and legal opinions confirming its legality from expert authorities: former ATF officials whose careers were spent making such determinations.

      i. We received an expert opinion from former ATF Special Agent Daniel O'Kelly.

      ii. We received a legal opinion from former ATF Special Agent and practicing attorney Kevin McCann.

      iii. We received an expert opinion from former ATF Special Agent Brian Luettke.

      iv. We received an expert opinion from former ATF Special Agent and former Acting Chief of the ATF's Firearms Technology Brach Rick Vasquez.

7. Our belief in the FRT-15's legality was bolstered by these former ATF officials' unanimity that the FRT-15 is legal and not a machinegun under the law. Importantly, these ATF experts rendered their opinions separately and independently. We approached the FRT-15 thoughtfully, relying on experts and the current state of the law, not with threats or subterfuge.

**We Put Our Names, Reputations, Livelihoods, and Futures on the Line**

8. Because we believe that the FRT-15 is legal, we directly and personally involved ourselves in promoting it and publicly explaining why it is not a machinegun. We both put our names, faces, and reputations on the line where everyone could see. We embraced the public's

questions about the FRT-15's legality, which were natural because it is so effective in facilitating a high rate of semi-automatic fire, and put ourselves out there to provide answers.

9. We put out many videos to inform the public with our bases for the belief that the FRT-15 is legal and to give updates on what we were doing to fight abuse or overreach by the ATF. Our videos included detailed animations we paid for that showed how the FRT-15 functions and how it differs from an actual machinegun. We took every step we could to be transparent with our customers and the public about how the FRT-15 functions, how that compares to a machinegun, and why the FRT-15 was different technically and legally from a machinegun.

10. I personally did numerous interviews with some of the largest YouTube channels in the firearms community to inform the public about our position and reasoning for why the FRT-15 is legal, to give updates about the actions by the ATF to disrupt the sale of the FRT-15, and to explain how we were fighting these abuses and overreaches by the ATF.

11. At no point did we hide from the controversy surrounding the FRT-15, obscure the basis for our genuinely-held belief that the FRT-15 is legal, or pretend that the ATF was not challenging the FRT-15's legality.

12. As is evident in concerns we have raised in this litigation, we value the privacy of our customers, who are gun owners across the country. USPS packages referencing Red Beard Treasures furthered our goal of protecting customer privacy. In addition, before this time period, we used UPS, which we understood to be more secure and where we had our shipments insured, and did not reference Red Beard Treasures.

13. Our honesty and integrity in promoting the FRT-15 and explaining its legality has earned us the support and respect of the firearms community. The community has embraced us and the

4

FRT-15. We received support from the National Association for Gun Rights and donations from many members of the firearms community to support us in this very litigation.

14. I personally flew to Washington, D.C. and was hosted by Congressional representatives hich we understood to be more secureto speak with them about the FRT-15's legality and our effort to push back against the ATF's abuse of its authority.

15. Reflecting our belief in the FRT-15's legality and our commitment to establishing Rare Breed Triggers as a legitimate, long-term business, we took the initiative to clear ourselves of the cloud put around the FRT-15 by the ATF's overreaches. We initiated litigation against the Department of Justice and ATF in two different circuits to obtain declaratory relief establishing that the FRT-15 is legal. In doing so, we put a large amount of money at stake, opened ourselves up to the expansive sweep of civil discovery, and earnestly sought a court's ruling on the legality of the FRT-15. We willingly assumed these risks and burdens because we have nothing to hide, have always believed in good-faith that our conduct is legal, and are confident that any court's determination of the FRT-15's legality would be favorable. Far from abandoning those lawsuits, one was dismissed on procedural grounds and the other dismissed based on the ATF's venue motion.

**We Did Not Interfere with the ATF Doing its Job, Nor Did We Intend to**

16. The Government's claims that we intended to prevent the ATF or any other government officials from doing their jobs is false.

17. We did not take property subject to a warrant when we retrieved our materials from 3rd Gen. Machine, Inc. The items in question were not at 3rd Gen during the execution of the warrant and were later brought there. Indeed, the warrant was dated and issued March 24, 2022, and required the execution of the warrant "on or before April 7, 2022." Apparently the materials

the Government identified in paragraph 156 of the Complaint (ECF No. 1) were not at 3rd Gen when the ATF "executed the warrant in March 2022." (ECF No. 1 ¶ 151.) I did not travel to pick up the materials until April 14, 2022, well after the warrant expired. (ECF No. 1 ¶ 153). Apparently even after the ATF learned there were additional FRT-15s in the unsecured parking lot at 3rd Gen, they let them sit there for three weeks.

18. When I went to pick up Rare Breed Triggers' property and was pulled over by ATF agents and other law enforcement, I was told by ATF agents while in handcuffs that they were not authorized to arrest me and that they were only there to take the property. Assuming the ATF truly considered these 1000+ FRT-15s "machineguns," it surprises me that the ATF would not arrest me at that time.

19. The ATF did not comply with its own seizure procedures: it did not properly notice Rare Breed Triggers of the property seizure or bring a claim for that seized property. The ATF only started to comply with these procedures after Rare Breed Triggers sued them for not doing their job properly.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on June 16, 2023.

By: _____
Lawrence DeMonico