UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

            Plaintiff,

- v. -

RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC; LAWRENCE DEMONICO; KEVIN MAXWELL,

            Defendants.

1:23-CV-00369
(NRM) (RML)

# THE UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE*

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

July 5, 2023

Michael Blume
Paulina Stamatelos
Assistant United States Attorneys
(Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STANDARD OF REVIEW ..................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

CONCLUSION ........................................................................................................................ 6

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion to preclude Defendants from offering duplicative expert testimony at the upcoming August 1, 2023 preliminary injunction hearing in this action.

The Government intends to call one expert witness at the upcoming hearing: ATF Firearms Enforcement Officer Anthony Ciravolo, who will provide expert testimony regarding whether, *inter alia*, the FRT-15 is a machinegun. Defendants have named four experts—Daniel O'Kelly, Brian Luettke, Kevin McCann, and Rick Vasquez—who all will testify that, in their view, the FRT-15 is not a machinegun. The Court need only hear from one of these experts to understand Defendants' position and, in the Government's view, to understand that Defendants' expert's opinion misses the mark. Permitting Defendants to call four experts to opine on the same topic would be needlessly cumulative and only serve to waste the Court's time.

What is more, Mr. McCann's opinion is a legal opinion; nothing more. As such, it is an improper subject of expert testimony as it is usurping the role of the Court.

## STANDARD OF REVIEW

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted); *see also Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005); *see generally* Fed. R. Evid. 104. *In limine* motions serve the goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

## ARGUMENT

The Government respectfully requests that the Court preclude Defendants from relying on *four* redundant experts, as, their anticipated testimony would be duplicative and cumulative.[1] In light of Rules 401 and 403 of the Federal Rules of Evidence, the Court should limit Plaintiffs to, at most, one expert on the issue of whether an FRT-15 is a machinegun.

Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Rule 403 limits a party's use of "duplicative" experts, including those whose opinions substantially overlap with one another. *See Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 596 (2d Cir. 1996) ("A district judge has discretion to exclude evidence if it is cumulative of evidence already in the record."); *United States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir. 1995) ("Absent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence."); *Polec v. Nw. Airlines, Inc.*, 86 F.3d 498, 527 (6th Cir. 1996) ("[A] double helping of experts would be unfair."); Fed. R. Evid. 403 (presenting needlessly cumulative evidence creates one such danger of prejudice). "To avoid duplicative testimony, some courts permit each side to put on only one expert witness in any particular area of expertise." *United States v. Mermelstein*, 487 F. Supp. 2d 242, 266 (E.D.N.Y. 2007).

The rationale behind the provision is to prevent a party from obtaining an unfair advantage by calling more than one expert on an issue and thus influencing the factfinder because that party's

---

[1] Defendants reserve the right to assert any appropriate *Daubert* challenge with respect to Plaintiffs' designated experts, should the Court be inclined to consider their testimony.

position appears to be supported by more than one expert. Such an unfair advantage would be difficult to overcome. Moreover, minor differences or additions in expert testimony are not enough to avoid such testimony being duplicative or cumulative. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 184 (S.D.N.Y. 2008) (affirming district court's exclusion of expert testimony as cumulative noting it was "unnecessary and . . . a waste of time for all of these experts to opine on the same subjects"); *see also US Airways, Inc. v. Sabre Holdings Corp.*, No. 11 CIV. 2725 (LGS), 2022 WL 986232, at *2 (S.D.N.Y. Apr. 1, 2022) (granting motion barring "cumulative opinions of any expert on any subject"); *F.H Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1258 (2d Cir. 1987) (affirming district court's exclusion of expert testimony as cumulative where other witnesses testified on the same subject).

Here, if the Court is inclined to allow any expert testimony, the Court should at least limit Defendants to one such expert. All of Defendants' purported experts opine on the same subject, on the same issues, and rely on virtually the same source materials and references.

Examples of the overlap among the Defendants' opinions abound. We provide two such examples here. The first concerns a component part of the FRT-15 called a "locking bar." The United States' expert, Mr. Ciravolo is expected to testify, consistent with his written report, that the locking bar functions in the FRT-15 the same way that an "auto-sear" functions in a fully automatic trigger. That is, to simplify a bit, the locking bar is a timing mechanism that allows the hammer to pause, after the firearm fires a round, before automatically striking the firing pin to fire the next round. That fraction-of-a-second pause ensures that the firearm has fed a new round into the chamber and that the bolt, which moves backward and forward, has fully returned to the forward position. Without that pause, the automatic firearm will malfunction.

Defendants' experts take issue with Mr. Ciravolo's description of the locking bar. They each go on, at some length, to describe how the locking bar works and how, in their view the locking bar and an auto-sear are two different things. Their description of the locking bar does not vary, nor does their conclusion. As Mr. Luettke puts it, "[t]his shows that the locking bar in an FRT-15 is NOT the same as an M16 auto sear;" Luettke Report p. 6; similarly, Mr. O'Kelly states, "[t]he only things which the locking bar and an automatic sear trip have in common are that they are both pivoted, upon being impacted by the bolt-carrier as it moves forward," O'Kelly Report p. 8; and Mr. Vasquez also says, "[t]he locking bar does not work as an automatic sear trip," Vasquez Report p. 2.

As a second example of how Defendants' experts' opinions overlap, consider the discussion of what happens when a shooter puts constant rearward pressure on the FRT-15. Mr. Ciravolo is expected to testify, consistent with his written report, that, when a shooter puts constant rearward pressure on the FRT-15, the firearm will continue to fire rounds until it runs out of ammunition or it malfunctions. The same thing would occur with any fully automatic machinegun but would not occur with a semi-automatic firearm. Instead, with a semi-automatic firearm, when a shooter puts constant rearward pressure on the trigger, one and only one round will be fired.

Defendants' experts disagree with Mr. Ciravolo's explanation. They each spend considerable pages attempting to persuade a reader that (again to simplify a bit) a shooter who puts constant rearward pressure on the FRT-15 will fire only one round. Their description of what happens does not vary, nor does their conclusion. As Mr. O'Kelly states, "[t]he report misleadingly states that a shooter using an FRT-15 can fire multiple shots through "constant rearward pressure to the trigger,"" O'Kelly Report p. 5; and Mr. Vasquez says, "the "external force" of constant rearward pressure is irrelevant and the reference to it appears intended to mislead the reader," Vasquez Report p. 3.

4

The anticipated testimony of Defendants' purported experts is substantively identical and duplicative, and there is no need for the Court, in this bench hearing, to hear from all four of these experts. To allow Defendants' to present these purported experts' testimony would substantially prejudice the Government by piling on redundant evidence, all of which has little if any probative value and, thus, should be excluded pursuant to Rules 401 and 403.

In addition, the opinion of Mr. McCann is a pure legal opinion. He is upfront about that, as he states in the first sentence of his report, "[t]his letter serves as my legal opinion" regarding the classification of the FRT-15 as a machinegun. McCann Report p. 1. Mr. McCann does not describe the FRT-15 in any way, let alone in any way that is based on his "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). Rather, Mr. McCann takes the factual descriptions provided by other experts – both Defendants' experts and ATF experts – and offers a legal opinion as to whether, based on the factual descriptions of others, the FRT-15 is a machinegun. In other words, he is doing what the Court is tasked with doing and nothing that will help "the trier of fact" to understand the FRT-15. *Id.* Rather, his testimony seeks to usurp the role of the Court in determining what the law is and how to apply the facts to that law. *See, e.g., Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (explaining the proper role of expert testimony). Such an expert opinion is not permitted under the rules. *See, e.g., Kalyna v. City of New York*, No. 16-CV-273, 2018 WL 11361019, *5 (E.D.N.Y. Sep. 11, 2018) ("Expert testimony is not admissible when it expresses a legal conclusion.") (Pollak, M.J.); *Cerbelli v. City of New York*, No. 99 CV 6846, 2006 WL 2792755, *11 (E.D.N.Y. Sept. 27, 2006) (Levy, M.J.) ("[T]he law in the Second Circuit is clear that although an expert may provide an opinion to help the jury or the judge understand a particular fact, the expert may not offer testimony stating ultimate legal conclusions based on those facts.") (citation omitted).

5

In sum, Defendants should be limited to offering the oral testimony of no more than a single expert, as allowing otherwise would result in "needlessly presenting cumulative evidence." And Defendants should not be permitted to offer Mr. McCann's legal opinion.

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's motion *in limine* and Order that (1) Defendants are limited to offering the oral testimony of only one expert witness and (2) Defendants are precluded from offering the expert Opinion of Kevin McCann.

Dated: Brooklyn, New York
      July 5, 2023

                                                BREON PEACE
                                                United States Attorney

By:       /s/
          Michael Blume
          Paulina Stamatelos
          Assistant United States Attorneys
          (718) 254-7000

**cc:**    **BY ECF**
       Counsel of Record