Page 1

UNTIED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

Civil Action No. 1:23-CV-369

(Morrison, J.) (Levy, M.J.)

- - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

Plaintiff,

v.

RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC;

LAWRENCE DEMONICO; and KEVIN MAXWELL,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF

LAWRENCE ALEXANDER DEMONICO

Friday, July 7, 2023

Reported by:

SUSAN ASHE, CSR, RMR, CRR

Page 2

         Deposition of LAWRENCE ALEXANDER DEMONICO, taken on behalf of the Plaintiff, beginning at 10:07 a.m., on Friday, July 7, 2023, before Susan Ashe, CSR, RMR, CRR, and a Notary Public for the Commonwealth of Virginia.

Page 25

1           And I think it's fair to say there's a
2   lot more here than just the preservation order.
3           So did we honor the TRO?  Absolutely, we
4   honored the TRO.
5           But as far as the preservation order, it
6   wasn't addressed -- I think, thoroughly addressed by
7   counsel until we retained new counsel.
8       Q   **Okay.  So what did you do, personally,**
9   **to preserve records related -- relating "to the**
10  **manufacture, possession, receipt, transfer, customer**
11  **base, and/or historical or current sales of the**
12  **FRT-15s, Wide Open Triggers, forced reset triggers,**
13  **and/or machinegun conversion devices"?**
14      A   I have not gotten rid of anything after
15  we were served with this TRO.
16      Q   **Okay.**
17      A   I'd like to add, intentionally -- I know
18  we have an issue with my other cell phone, and I
19  don't want my words to be mixed up there.  But I
20  have not intentionally gotten rid of anything since
21  we were served with this TRO.
22      Q   **What was your involvement -- do you**
23  **understand the difference between preserving and**
24  **destroying documents?**
25      A   Would you please explain it to me.

```
 1      Q     I'm asking you if you understand the
 2   difference between preserving a document as opposed
 3   to destroying a document.
 4            MR. CONTARINO:  Objection to form.
 5      Q     When you see this -- I'll rephrase.
 6            What is your understanding of "preserve
 7   all documents"?
 8      A     My understanding would be that they
 9   would still be available.
10      Q     Okay.  What is your understanding of
11   "customer base" in this part of the order?
12      A     (Reading:)
13                  B. required to preserve all
14                  documents related to the
15                  manufacture, possession, receipt,
16                  transfer, customer base, and/or
17                  historical or current sale of the
18                  FRT-15s, Wide Open Triggers, forced
19                  reset triggers, and/or machinegun
20                  conversion devices.
21            What is my understanding of the term
22   "customer base"?
23      Q     Um-hum.
24      A     Our customer list.
25      Q     Okay.  Can you identify every cell phone
```

Page 30

1          MR. BLUME:  You can give it to the court
2     reporter (referring to exhibit).
3     A     I have multiple group messages that are
4  set up.
5          I have a group message that pertains to
6  intellectual property litigation that's with more
7  than one of our IP attorneys on the group.
8          I've got a group with attorneys for Rare
9  Breed Triggers litigation.
10         You've already mentioned the RBT admin
11 group.
12         To the best of my recollection, I
13 believe I also had a group with individuals from 3rd
14 Gen.
15         I don't want to commit to that being a
16 full list, but that's what I can recall at the
17 moment.
18    **Q     Okay.  So on the RBT admin group, who**
19 **was on that list?  Who was included in that chat --**
20 **excuse me, group messages?**
21    A     To the best of my recollection, myself,
22 Cole Leleux, Kelly Leleux, Gabriella -- and I don't
23 know her last name.  And I believe Jennifer Pierson
24 was in that group.
25         I believe that is who was in that group.

Page 32

```
 1      A     You know what, I will expand on that.
 2            What was addressed by prior counsel was
 3   that we needed to prepare our emails, but anything
 4   in addition to that was not addressed by prior
 5   counsel.
 6      Q     And when you say "prepare our emails,"
 7   what does that mean?
 8      A     In order to answer that question, I'm
 9   going to have to give you context.
10            After we received the TRO, in order --
11   in order to comply, it wasn't easy for us to just
12   simply make a change to the website.  So what we did
13   was take the website down entirely.
14            When we took the website down, it
15   essentially broke that server that hosted the
16   website but also hosted our email.
17            When that server went down, all those
18   emails were basically unavailable to us.  We no
19   longer could access them as -- I don't really have
20   like the tech experience to log in as like a, you
21   know, a techy and gain access to those emails.  So
22   they were locked away.
23            We knew that we needed to provide those
24   emails.  Prior counsel was unable to be assist.
25            We went to another one of our law firms,
```