UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

               Plaintiff,

- v. -

RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC; LAWRENCE DEMONICO; KEVIN MAXWELL,

               Defendants.

1:23-CV-00369 (NRM) (RML)

# THE UNITED STATES OF AMERICA'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM RAISING IRRELEVANT AND PREJUDICIAL INSINUATIONS AGAINST THE UNITED STATES' EXPERT WITNESS

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

July 20, 2023

Michael Blume
David Cooper
Paulina Stamatelos
Assistant United States Attorneys
(Of Counsel)

Defendants say that "[t]he central issue in this case is the proper classification of Defendants' product, a trigger known as the FRT-15" and "[s]pecifically, whether it is a 'machinegun' according to the law based on its mechanical operation." Dkt. No. 80. Perhaps recognizing that they cannot prevail on the merits of this issue, Defendants intend to make irrelevant and inflammatory insinuations, based upon extrinsic evidence, about the United States' firearms expert, Anthony L. Ciravolo, a Firearms Enforcement Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Specifically, Defendants plan to attack Mr. Ciravolo because he, in his personal capacity, interacted with the late James Yeager,[1] who owned an organization called Tactical Response and who, according to news reports, provided protection to Cliven Bundy in 2014. Defendants will also try to connect Mr. Ciravolo to an individual named Ben "Mookie" Thomas, an Iraq War veteran who worked with, and later had a dispute with, an organization called Spike's Tactical and an individual whom Mr. Ciravolo has never met in person.

While it is not clear what Defendants will try to imply by attempting to link Mr. Ciravolo to Mr. Yeager and Mr. Thomas, any implication would be, at best, a pointless red herring and, at worst, a needless and baseless attempt to impugn Mr. Ciravolo's character with allegations that have no bearing on the issues in this case or Mr. Ciravolo's expertise. The United States therefore submits this motion in *limine* to preclude Defendants from (1) raising irrelevant and prejudicial insinuations against Mr. Ciravolo; and (2) introducing a declaration from an individual named Douglas Hill that maligns Mr. Ciravolo.

By way of background, Mr. Ciravolo will be the testifying expert for the United States at the upcoming August 1, 2023 preliminary injunction hearing. Pursuant to Federal Rule of Civil

---

[1] Upon information and belief, Mr. Yeager died of complications stemming from ALS, or Lou Gehrig's disease, in 2022.

Procedure 26(a)(2), the United States has provided Mr. Ciravolo's expert disclosures and reports to Defendants. Defendants have not brought a *Daubert* motion to challenge Mr. Ciravolo's expertise, nor could they, as Mr. Ciravolo is, indeed, an expert on firearms and firearms regulations. As a Firearms Enforcement Officer at the Firearms and Ammunition Technology Division (FATD), Mr. Ciravolo provides technical information regarding firearms identification, operation, and design for the purpose of assisting the ATF, the law enforcement community, the firearms industry, and the public in general in the implementation federal laws. Mr. Ciravolo has received extensive training and gained valuable experience throughout his career related to firearms and the regulation of the firearms industry.

At Mr. Ciravolo's deposition, Defendants asked Mr. Ciravolo questions related to interactions with Mr. Yeager and Mr. Thomas. Based on those questions, as well as the identification of Mr. Hill as a witness who will offer impeachment material about Mr. Ciravolo by declaration, Defendants will try to tie Mr. Ciravolo to actions or comments of Mr. Yeager and Mr. Thomas. The Court should reject Defendants' last-ditch effort to obfuscate the record and assail Mr. Ciravolo.

Mr. Ciravolo first met Mr. Yeager sometime in 2019. Mr. Ciravolo took a training class at Mr. Yeager's business and, in the course of that class, met Mr. Yeager (who was not leading that particular course). Mr. Ciravolo took additional classes at Mr. Yeager's business over time. Mr. Ciravolo became friendly with Mr. Yeager; they did not, however, interact on a regular or frequent basis, did not speak on a regular or frequent basis and, if they socialized at all, it was in the context of larger group events that both attended. Mr. Ciravolo lived and worked about an hour and half drive west of where Mr. Yeager's business was located in Tennessee. Mr. Ciravolo also provided a limited amount of gunsmithing work for Mr. Yeager, who later promoted Mr. Ciravolo's work in an online video.

At Mr. Ciravolo's deposition, Defendants focused on actions of Mr. Yeager that took place years before Mr. Ciravolo had met Mr. Yeager. One action t concerned Mr. Yeager's involvement with a dispute concerning the so-called Bundy ranch. That dispute, between Nevada rancher Cliven Bundy and the Bureau of Land Management, played out for some two decades. It appears that Mr. Yeager, who was from Tennessee, traveled to Nevada in support of Mr. Bundy. He was among many people – scores if not hundreds – who did the same. The dispute at the Bundy ranch led to criminal charges against Mr. Bundy and several others. Mr. Yeager was not among those charged with anything. Ultimately, the criminal charges against Mr. Bundy were dismissed.[2]

The second focus of Defendants at Mr. Ciravolo's deposition was a video that Mr. Yeager posted online during the Obama Administration. In the video, Mr. Yeager threatened violence should anyone attempt to limit his ability to own firearms; his remarks may have been directed at the then-Vice President. Mr. Yeager later apologized for these remarks. Mr. Yeager was never charged with anything in connection with this video.

Beyond simply seeking to smear Mr. Ciravolo with Mr. Yeager's conduct (which, again, occurred years before the two of them met), Defendants try to connect Mr. Yeager's conduct to him by referencing a questionnaire Mr. Ciravolo was required to complete in connection with his ATF employment. That questionnaire, a Standard Form 86 (SF-86), is a form that the United States uses to gather information to conduct background checks for certain employees and appointees. Defendants asked Mr. Ciravolo whether he had listed Mr. Yeager on the form, presumably in response to a section on the form that asks applicants to list three people that they know well. They also asked Mr. Ciravolo if he had ever been a member of an organization dedicated to the use of violence to

---

[2] *See* https://www.npr.org/2020/08/06/899886777/federal-appeals-court-upholds-dismissal-of-cliven-bundy-case.

overthrow the government or had engaged in activities designed to overthrow the government. Presumably, Defendants were alluding to sections in the SF-86 that asked the same type of questions.

This line of questioning seems to be designed to suggest that Mr. Ciravolo was somehow not truthful on the SF-86 because he did not list Mr. Yeager as one of the three people who knew him well and that he did not state that his association with Mr. Yeager somehow meant that Mr. Ciravolo was supporting the overthrow of the government. The absurdity of this line of questioning is evident on its face.[3]

The questioning about Mr. Thomas is no less absurd. As far as the United States can tell, Mr. Thomas had business dealings with Spike's Tactical, a company owned in part by Cole Leleux, who is a key player in RBT's operations. Defendant Lawrence DeMonico had a relationship of some kind with Mr. Thomas, which may have led to Mr. Thomas' dealings with Spike's Tactical in the first place. It appears that the business dealings between Spike's Tactical and Mr. Thomas soured; Spike's Tactical filed a lawsuit against Mr. Thomas in 2018 concerning conduct that ended in 2017. The lawsuit resulted in a judgment against Mr. Thomas in 2020. Defendant Kevin Maxwell was the attorney who litigated the matter on behalf of Spike's Tactical. It also appears that Mr. Thomas and Mr. Yeager knew each other.

Drawing on these connections – none of which involve Mr. Ciravolo – Defendants probed whether Mr. Ciravolo was somehow biased in this matter. Perhaps Mr. Thomas has some kind of ax to grind with Defendant Maxwell, Defendant DeMonico, and Mr. Leleux. And because Mr. Thomas knew Mr. Yeager, who knew Mr. Ciravolo, Mr. Thomas must be exerting some kind of influence on

---

[3] It appears that Defendants will want to introduce screen shots from Mr. Ciravolo's social media accounts. The shots show, among other things, a picture of Mr. Ciravolo with Mr. Yeager, pictures of Mr. Ciravolo with close friends of his (not Mr. Yeager), a picture of Mr. Ciravolo fishing (from 11 years ago), and a post from Mr. Ciravolo. None of the posts involves the Bundy ranch or Mr. Yeager's comments concerning gun rights.

4

Mr. Ciravolo.[4]  Again, the absurdity of a multiple-degrees-of separation conspiracy leading to his line of questioning is evident on its face.[5]

Pursuant to Fed. R. Evid. 403 "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "A District Court has 'broad discretion' to admit or exclude evidence under Rule 403." *United States v. Yousef*, 327 F.3d 56, 121 (2d Cir. 2003).  While no jury will be impaneled for the upcoming preliminary injunction hearing, Defendants' attempts at smearing Mr. Ciravolo will only serve to unfairly prejudice the United States (and Mr. Ciravolo), waste the Court's time, and create unnecessary delay in a hearing in which two days of live testimony is already expected.

Moreover, Federal Rule of Evidence 611 provides that courts should exercise control over the questioning of witnesses to "protect witnesses from harassment and undue embarrassment."  Fed. R. Evid. 611(a)(3).  Questioning regarding an ATF official's personal relationship (if any) with two individuals having no bearing on the litigation or expertise at issue could be interpreted as threatening and chilling for future ATF officials, who may also seek to testify in future civil litigation against illegal gun sellers around the country.  Whether Mr. Ciravolo knew (or did not know) Mr. Yeager or Mr. Thomas (or, for that matter, any advocate of expansive gun rights) has no impact on the Court's ability to assess Mr. Ciravolo's ability to analyze and opine on the mechanics of the FRT-15.

---

[4] It appears that Defendants will want to introduce screen shots of social media posts concerning Mr. Thomas.  Mr. Ciravolo is nowhere to be seen on any of those posts; all of them appear to pre-date the time when Mr. Ciravolo first Mr. Yeager.  In addition, these posts make no mention of RBT or the FRT-15.  In fact, these posts were made several years before RBT ever existed.

[5] Mr. Ciravolo has never met Mr. Thomas in person and does not recall ever speaking to him.  Mr. Ciravolo did communicate with Mr. Thomas, on a very limited basis, about a raffle ticket that Mr. Ciravolo purchased to support a charity event that Mr. Thomas was involved in.

And, to the extent Defendants seek to use extrinsic evidence to impeach Mr. Ciravolo by trying to connect him to Mr. Yeager or Mr. Thomas, such an effort must be barred. "Under the plain mandate of [Fed. R. Evid.] 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness." *United States v. Brown*, No. 07-CR-874 (KAM), 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) (citing Weinstein's Evid. Manual § 12.03[3][a]). There would be no basis to impeach Mr. Ciravolo with any extrinsic evidence related to Mr. Yeager or Mr. Thomas or any purported connection to those individuals.

Finally, while the parties are attempting to enter declarations into evidence where prudent to avoid needlessly extending the length of the in-person hearing, the United States certainly objects to Mr. Hill providing a written statement merely to impeach Mr. Ciravolo's character. Indeed, should the Court permit Mr. Hill to submit his written statement into evidence[6], the United States will reserve its right to depose Mr. Hill and then call Mr. Hill as a live witness for cross-examination purposes at the hearing. Of course, any testimony from Mr. Hill would be a sideshow and would provide nothing of value related to the Court's determination of whether a preliminary injunction should be issued.[7]

Were the Court to permit Defendants to question Mr. Ciravolo about Mr. Yeager and Mr. Thomas, the United States would be left with little choice but to respond. Such a response would likely delve into, among other things, the history of the Bundy Ranch, the activities at the ranch over the course of decades, the criminal cases against those who had some connection to the ranch, the meaning and purpose of the SF-86, various statements that the now-deceased Mr. Yeager made online, the history of Mr. Thomas's relationship with Spike's Tactical, and the facts underlying the lawsuit brought by Spike's Tactical against Mr. Thomas. There would be one mini-trial after another.

---

[6] The Government reserves its right to move to preclude the Mr. Thomas's forthcoming declaration.
[7] It is not clear that Mr. Ciravolo even knows who Mr. Hill is.

And after all of that we would be no closer to a determination of how the FRT-15 operates. Such an exercise would be utterly futile and serve only to provide Defendants a platform to harass and potentially intimidate Mr. Ciravolo based on the conduct of others, conduct that he had no involvement with whatsoever.

For the foregoing reasons, the Court should grant this motion *in limine*. While the parties can—and indeed, should—cross-examine their respective expert witnesses at the hearing, cross-examination questions focused on wholly irrelevant issues only serves to waste the Court's time and prejudice the United States.

Dated: Brooklyn, New York
      July 20, 2023

BREON PEACE
United States Attorney

By:    /s/
Michael Blume
David Cooper
Paulina Stamatelos
Assistant United States Attorneys
(718) 254-7000

**cc:** **BY ECF**
Counsel of Record