UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC; LAWRENCE DEMONICO; KEVIN MAXWELL,<br><br>Defendants. | Case No. 1:23-cv-00369-NRM-RML |

## DECLARATION OF WILLIAM AKINS

I, William Akins, have personal knowledge of the facts set forth below, and if called as a witness I would testify as follows:

1. In 1996 I invented what is now known as the bump-stock. Around the same time, I received a memorandum of legal advice from James H. Jeffries, III, a leading gun rights attorney of his time, in which he said my bump-stock invention was legal because it only permitted one shot per function of the trigger.

2. I applied for a patent for my device in 1998 and was awarded a patent in 2000.

3. Around that time or thereafter I wrote to ATF for classification that the device was not a machinegun. ATF did not respond for almost a year and a half, at one point saying it lost the letter.

4. Eventually I was contacted by Thomas Bowers, who was introduced to me by Mr. Jeffries. Mr. Bowers wanted to partner on bringing the device to market.

5. Mr. Bowers wrote to the ATF with a sample bump-stock for review, and the ATF wrote back that the sample did not qualify as a machinegun (attached as Exhibit A). Also

1

in the ATF's response was that the sample broke when it was tested. It was therefore unclear whether the ATF decided the issue on the merits or because the device broke.

6. Mr. Bowers wrote back on January 21, 2004, seeking clarification, and on January 29, 2004, the ATF said, with clarity, that the device was not a machinegun (attached as Exhibit B). ATF stated that it was basing its classification on the device's method of operation.

7. After spending significant funds developing and manufacturing the bump-stock, in 2006 the ATF rescinded its approval and classified the device as a machinegun.

8. The ATF's based its rescission on the bump-stock's "springs," I took out the springs and used isometrics for a new bump-stock. (However, the spring is a red-hearing. It doesn't matter if it has a spring, but under the NFA it only matters that it fires one shot per function of the trigger. Indeed, all triggers have a trigger return spring to help the trigger reset.)

9. The ATF approved springless bump-stocks in response to classification requests from third parties, and for around nine years it maintained this position that the springless bump-stocks were not machineguns.

10. Thereafter a Mr. Judd Foster contacted me about working together on the springless bump-stock, and we entered an agreement regarding it in around 2011.

11. We sold springless bump-stocks up until 2018, when the ATF reversed its nine-year-approval stance on springless/isometric bump-stocks.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on July 25, 2023

By: *William E. Akins*
William Akins

# EXHIBIT A



**DEPARTMENT OF THE TREASURY**
**BUREAU OF ALCOHOL, TOBACCO AND FIREARMS**

NOV 1 7 2003

903050:RDC
3311/2004-096

Mr. Thomas Bowers
Post Office Box 430
Cornelius, Oregon 97113

Dear Mr. Bowers:

This refers to your recoiling metal stock assembly, designed for use on an SKS type semiautomatic rifle, that was received by the Firearms Technology Branch, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), on August 21, 2003 for the purposes of examination and classification.

Our evaluation indicates that the submitted sample stock assembly measures approximately 36 inches long and approximately 9-7/8 inches at its widest point. It is marked "BOWERS", "CORNELIUS OR", and "AA1". The following is a list of its physical characteristics:

- rectangular channel, approximately 22-5/16 inches long;
- barrel mounting block/spring actuated recoiling mechanism affixed to the forward end of the rectangular channel;
- access cutout in the bottom of the rectangular channel for the trigger group and magazine;
- two adjustable screws affixed to the underside of the rectangular channel; and
- tubular pistol grip/shoulder stock assembly welded to the underside of the rectangular channel.

The proposed theory of operation of this stock involves the application of the movement of the counter recoiling rifle to initiate a rapid succession of semiautomatic fire. The shooter places his trigger finger behind the two adjustable screws and forward of the weapon's trigger. After the weapon is initially fired and the action is moved to the rear (by the recoiling mechanism), the subsequent forward movement of the action is halted

Mr. Thomas Bowers

by the shooter's trigger finger being held against the adjustable screws. The trigger is then depressed, and a second firing of the weapon commences. The movements of the action within the stock assembly are used to consecutively fire the weapon in lieu of the traditional method of manually pulling the trigger.

The action of a semiautomatic SKS-type 7.62x39mm rifle from our firearms reference collection was placed within the submitted stock. The weapon was then test fired. Both of the adjustable screws fractured, breaking away from the underside of the stock. These fractures occurred on the second test firing. The weapon did not fire more than one shot by a single function of the trigger.

The National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines the term "machinegun" to include the following:

...any weapon that shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. This term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

Our examination has determined that the submitted stock assembly does not constitute a machinegun as defined in the NFA. It is not a part or parts designed and intended for use in converting a weapon into a machinegun.

We thank you for your submitted assembly and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

# EXHIBIT B



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

JAN 2 9 2004

903050:RDC
3311/2004-308

www.atf.gov

Mr. Thomas Bowers
Post Office Box 430
Cornelius, OR  97113

Dear Mr. Bowers:

This refers to your letter of January 21, 2004, to the Firearms Technology Branch, ATF, in which you request clarification of our previous correspondence (3311/2004-096) regarding the manufacture of a recoiling metal stock assembly that is designed for use on an SKS-type semiautomatic rifle.

As noted previously, the proposed theory of operation of this stock involves the application of the movement of the counter recoiling rifle to initiate a rapid succession of semiautomatic fire. Our examination and subsequent classification revealed that the stock did not constitute a "machinegun" as that term is defined in the National Firearms Act (NFA), 26 U.S.C. Chapter 53.

As indicated, during the course of our examination and testing of the item (SKS barreled action installed into the submitted stock), two set-screws dislodged from the frame. The weapon did not fire more than one shot by a single function of the trigger at any point throughout the testing.

Our classification of the stock assembly was rendered despite the fact that the screws dislodged from the frame. The theory of operation was clear even though the rifle/stock assembly did not perform as intended.

In conclusion, your prototype shoulder stock assembly does not constitute a "machinegun" as defined in the NFA. This evaluation is valid *provided that when the*

-2-

Mr. Thomas Bowers

stock is assembled with an otherwise unmodified SKS semiautomatic rifle, the rifle does not discharge more than one shot by a single function of the trigger.

We trust the foregoing has been responsive to your follow-up inquiry.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch