**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:23-cv-00369-NRM-RML |
| -against- | |
| RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC; LAWRENCE DEMONICO; KEVIN MAXWELL, | |
| Defendants. | |

## DECLARATION OF BRIAN BLAKLEY

I, Brian Blakley, have personal knowledge of the facts set forth below, and if called as a witness I would testify as follows:

1.      Prior to December 2003, I developed and manufactured a trigger system device that I named an "AR 16."

2.      I held (and still hold) a license to manufacture firearms, and was (and still am) a special occupational taxpayer under the National Firearms Act ("NFA").

3.      I filed for a patent in April 2003, and was granted the patent in 2008.

4.      Having manufactured two functionally identical models of the trigger system device, I submitted one ("Device 1") to the ATF seeking an opinion that it was not a machinegun within the meaning of the NFA.

5.      The other identical model of the trigger system device ("Device 2") was registered with the ATF (on ATF Form 2) and a $200 tax-paid transfer was made (on ATF Form 4).

6.      On June 2, 2004, ATF approved the tax-paid transfer and cashed my $200 check

for the transfer tax.

7.     In September 2004, the ATF provided a classification that categorized my trigger system device as a machinegun.

8.     On November 15, 2004, I filed a claim for a refund of the $200 tax paid on the transfer of Device 2 with the ATF based on my position that the trigger system device was not a machinegun.

9.     On June 15, 2005, the ATF denied my claim for a refund. In relevant part, the ATF wrote:

> Mr. Blakley is a Special Occupational Taxpayer, Class 2 manufacturer, made the "AR 16" at issue and properly registered it on an ATF Form 2. Mr. Blakley then paid the $200 transfer tax and filed an ATF Form 4 to effectuate the transfer of the firearm to another Special Occupational Taxpayer. The transfer of the firearm took place and the transfer application was approved in accordance with the law and regulations. Accordingly, the only basis for refunding the $200 transfer tax is your client's allegation that the item is not a "firearm" within the purview of the NFA.

Attached as Exhibit A is a copy of the ATF's June 15, 2005 denial letter.

10.     On November 3, 2006, I filed a lawsuit the United States Court of Federal Claims against the United States seeking a refund of the $200 because Device 2 was not a machinegun and should not have been subject to the tax. See *Blakley v. United States*, Dkt. No. 1:06-cv-00749-SGB. The parties agreed to a scheduling order whereby expert reports would be due August 31, 2007 and fact discovery would close November 30, 2007.

11.     The United States filed its Answer on March 2, 2007.

12.     More than four months later, and only shortly after I served on the United States a slow motion video showing the trigger function every time a shot was fired, on July 10, 2007, the United States filed a motion for entry of judgment *in my favor*.

13.     In support, the United States contradicted the reasoning in the ATF's June 15, 2005, refund denial letter, now contending that machineguns transferred between special occupational taxpayers are exempt from paying the tax pursuant to 26 U.S.C. 5811. Attached as Exhibit B is a copy of the United States' June 28, 2007, reversal letter.

14.     The problem with the United States' newfound analysis, as I understand it, is the transferor (me) had to elect the tax exemption on a Form 3 and I neither elected the exemption nor filed a Form 3. See 27 CFR, Ch. II, Sections 479.84 and 479.88.

15.     The United States stated it "conce[eded]" the case, but only so much as it defeated my jurisdiction to bring the claim and not as to the requested relief that a court determine whether my trigger system device constituted a machinegun. *See* Ex. B.

16.     The trial court granted the United States' request to enter judgment against itself and in my favor, but did not rule on whether the trigger system device constituted a machinegun under the NFA. The Court of Appeals for the Federal Circuit affirmed the trial court's decision without a written opinion. *Blakley v. United States*, 280 F. App'x 968, 969 (Fed. Cir. 2008).

17.     I do not feel I received "my day in court." The parties agreed in joint preliminary status report that the "sole issue in this case is whether plaintiff's firearm is a 'machinegun,' as defined in 26 U.S.C. § 5845(b), and thus subject to the transfer tax imposed on firearms by 26 U.S.C. § 5811," yet the United States seemed to want to avoid a decision on that sole issue once it saw my slow motion recording of the trigger my trigger system device functioning for each shot fired.

3

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on July 25, 2023

By: _____

Brian Blakley

# EXHIBIT A

Gammon and Grange;                    17037615023;            Jun-16-05  2:00PM;              Page 2



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

.JUN 1 4 2005

Washington, DC 20226
www.atf.gov
CC-86,298  FE:TMH

Robert G. Nath, Esq.
7th floor
8280 Greensboro Drive
Mclean, Virginia 22102

Dear Mr. Nath:

This letter responds to the claim for refund submitted on behalf of your client Brian Alan Blakley
on November 15, 2004. We apologize for the delay in responding.

Our records indicate that on December 21, 2003, Mr. Blakley submitted an "AR 16" firearm,
serial number ATF 0000001, along with a completed Notice of Firearms Manufactured or
Imported (Form 2) and accompanying illustrations for examination by the Bureau of Alcohol,
Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch. He indicated that
registration on the Form 2 was "Subject to Firearms Tech. Branch Determination."

On May 14, 2004, Mr. Blakley filed a Form 4 (Application for Tax Paid Transfer and
Registration of Firearm) and $200 with the NFA Branch to transfer and register the firearm to a
third party. The transfer application was approved on June 2, 2004.

By letter dated September 16, 2004, ATF, through the Chief of the Firearms Technology Branch,
classified the prototype firearm as a machinegun pursuant to the statutory definition in the
National Firearms Act, 26 U.S.C. § 5845(b).

In your November 15, 2004 letter, you state that Mr. Blakley does not believe that the firearm,
AR 16 0000001, is a machinegun and is seeking a refund of the $200 transfer tax. Your letter
included a completed Form 5620.8, signed by Mr. Blakley, setting forth the same basis for the
claim. By this letter, ATF is denying Mr. Blakley's claim for refund.

Title 18, section 922(o) of the United States Code generally prohibits the transfer or possession
of a machinegun which was not lawfully possessed as of May 19, 1986. This prohibition does
not apply to a transfer to or by, or possession by or under the authority of the United States, a
State or a department, agency or political subdivision thereof. Section 479.105, 27 C.F.R.
provides that the transfer and registration of a machinegun manufactured after May 19, 1986 will
be approved for qualified dealers if it is established by specific information that governmental
customers require a demonstration of the weapon or have a need for a particular model.

-2-

Robert G. Nath, Esq.

Likewise, the regulation provides that manufacturers may manufacture machineguns on or after May 19, 1986 for sale or distribution to any department or agency of the United States or any State or political subdivision thereof, or for use by dealers qualified under the NFA as sales samples and their subsequent transfer shall be conditioned upon and restricted to the sale or distribution of such weapons for the official use of Federal, State or local Governmental entities. See 27 C.F.R. § 479.105(c).

Mr. Blakley, as a Special Occupational Taxpayer, Class 2 manufacturer, made the "AR 16" at issue and properly registered it on an ATF Form 2. Mr. Blakley then paid the $200 transfer tax and filed an ATF Form 4 to effectuate the transfer of the firearm to another Special Occupational Taxpayer. The transfer of the firearm took place and the transfer application was approved in accordance with the law and regulations. Accordingly, the only basis for refunding the $200 transfer tax is your client's allegation that the item is not a "firearm" within the purview of the NFA.

Pursuant to 26 U.S.C. § 5845(b), the firearm provided to FTB on December 21, 2003, by Mr. Blakley was a machinegun and, for the reasons stated below, the classification issued on September 16, 2004, remains valid.

The firearm that was submitted was characterized as an AR 15 clone. Based on the information provided and our examination of the sample, the firearm is designed in such a manner that pressure on the trigger will allow a series of shots to be fired.

The essential features of the design are as follows:

- A hole has been drilled in both sides of the receiver to accommodate a new cam and pivot pin (the hole is not in the same position as the hole for an M-16 type automatic sear.)

- A cam pivot pin is mounted in the hole and the cam is mounted on the pin.

- The cam engages an extension mounted on the trigger.

Additional modifications have been made to the hammer, trigger, disconnector, and bolt carrier to accommodate the new parts.

Based on the description and illustrations provided the firing cycle is initiated by pulling the trigger. (Illustration provided as attachment).

- When the trigger is pulled the hammer is released.

- The hammer strikes the firing pin.

-3-

Robert G. Nath, Esquire

* The firing pin strikes the primer in the cartridge located in the chamber at the rear of the barrel.

* The cartridge discharges and the bullet is propelled through the barrel.

* The propellant gases from the barrel enter the gas tube, causing the bolt carrier to move to the rear.

* As the bolt carrier moves to the rear, the hammer is cocked and the empty cartridge case is extracted and ejected.

* As the bolt carrier moves to the rear, it engages the cam which forces that trigger forward. [1]

* As the bolt carrier moves forward a new cartridge is loaded from the magazine into the chamber and the hammer is held in the cocked position by the trigger.

* As the bolt closes, the cam is released and the trigger is no longer held in the forward position.

* Continued pressure on the trigger will allow the trigger to move rearward allowing the hammer to fall again and additional shots will be fired until the trigger is released or the magazine is empty.

As defined in the National Firearms Act (NFA), the term "machinegun" means any weapon which shoots, is designed to shoot or can readily be readily restored to shoot, automatically more than one shot without manual reloading, by the single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. 26 U.S.C. § 5845(b).

Our examination indicated that the submitted firearm shoots automatically and is designed to shoot automatically more than one shot without manual reloading by single function of the trigger. Mr. Blakley's explanation in the December 21, 2003 letter: Fig. *3 Bolt carrier has just*

---

[1] We note that ATF's September 16, 2004 letter incorrectly states: "when the bolt travels forward, it connects the cam." This statement erroneously referenced forward movement instead of rearward movement of the bolt. This transposition of terms does not impact the classification. The movement of the bolt has been correctly described in this letter.

-4-

Robert G. Nath, Esq.

*reached battery and has rotated the cam in the reverse direction thereby removing the impediment to the trigger and allowing the operator to once again pull the trigger"* is incorrect. The shooter does not pull and release the trigger. Pressure is applied on the trigger and the rifle fires; unless the pressure from the trigger finger is removed the rifle will continue to fire. Therefore, a single pull of the trigger by the user of the firearm results in the firing of more than one shot. The fact that operation of the firearm causes movement of the trigger is not relevant to this determination.

We understand that you may believe that because the trigger moves slightly forward, then back again in order for each round to be discharged that this firearm should not be classified as a machinegun. However, since the user of the firearm only needs to pull the trigger once to initiate the firing of multiple shots, the firearm fires automatically by single function of the trigger. Regardless of the fact that the cam causes the trigger to move back and forth with continuous finger pressure, it is still one single pull of the trigger by the user of the firearm which allows the rifle to continue to fire automatically. Upon removing pressure from the trigger the rifle ceases firing. Because multiple rounds are fired automatically without manual reloading by a single function of the trigger, the firearm is a machinegun. See Staples v. United States, 511 U.S. 600, 603 (1994) (automatic refers to a weapon that "once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted"); See also JOHN QUICK, PH.D., DICTIONARY OF WEAPONS AND MILITARY TERMS 40 (McGraw-Hill 1973) (defining automatic fire as "continuous fire from an automatic gun, lasting until pressure on the trigger is released").

Additionally, the receiver has been physically altered to accept the automatic components of a machinegun. As altered, the firearm at issue has the frame or receiver of a machinegun and therefore, is a machinegun as defined in § 5845(b).

Furthermore, the components of this firearm are "a combination of parts designed and intended, for use in converting a weapon into a machinegun," thereby making the parts a machinegun as defined in § 5845(b).

-5-

Robert G. Nath, Esq.

Your claim for refund is hereby denied. If you have any questions regarding this determination, please contact Kenneth Houchens, Chief, National Firearms Act Branch at 202-927-8330.

Sincerely yours,

Audrey M. Stucko
Chief, Firearms and Explosives Services Division

Attachment



FIG 3

# EXHIBIT B



**U.S. Department of Justice**

**Tax Division**

Facsimile No. (202) 514-9440
Trial Attorney: Jacob E. Christensen, Esquire
Attorney's Direct Line: (202) 307-0878

Please reply to: *Court of Federal Claims Section*
*P.O. Box 26*
*Franklin Station*
*Washington, D.C. 20044*

EJO'C:DG:GRS:JEChristensen
154-2531
CMN 2007100624

JUN 28 2007

Robert G. Nath, Esq.
7th Floor, 8280 Greensboro Drive
McLean, Virginia 22101

Re: *Blakley v. United States*, Fed. Cl. No. 06-749 T

Dear Mr. Nath:

This refers to the above-referenced suit for refund of the transfer tax imposed by 26 U.S.C. § 5811 on certain transfers of firearms. It has come to our attention that plaintiff is entitled to recover the $200 transfer tax, paid with respect to the transfer of a machine gun, on the sole basis that the transfer was made between "special (occupational) taxpayers" and, therefore, is exempt from the transfer tax under § 5852(d). The United States reaffirms the proper classification of the firearm transferred by plaintiff as a "machine gun," within the meaning of § 5845(b); however, the exemption provided by § 5852(d) applies to all firearms, including machine guns, that are transferred between special occupational taxpayers.

Accordingly, this is to advise you that a concession in this case has been approved on behalf of the Attorney General. The Bureau of Alcohol, Tobacco, Firearms, and Explosives has been authorized and directed to schedule an overpayment of transfer tax with regard to plaintiff's transfer of the firearm, plus interest according to law. The overpayment is the amount plaintiff would have received (other than costs) had he prevailed in this litigation. Subject to the final paragraph of this letter, the refund check representing the overpayment and statutory interest will be sent by the Bureau to this office for delivery to you.

There is also enclosed a stipulation for dismissal with prejudice, each party to bear its own costs, including any attorneys fees or other expenses of this litigation. Please execute the stipulation and return it to this office. We will hold the stipulation until receipt of the refund check and will file the stipulation with the court, returning an executed copy to you, at the same time that the check is mailed to you.

-2-

Please note that under Section 6402 of the Internal Revenue Code, the overpayment and statutory interest resulting from this concession may be credited against certain liabilities of the taxpayer, including liability for an internal revenue tax.

Sincerely yours,

EILEEN J. O'CONNOR
Assistant Attorney General
Tax Division

By:

DAVID GUSTAFSON
Chief
Court of Federal Claims Section

Enclosures

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

No. 06-749 T
(Judge Braden)

BRIAN ALAN BLAKLEY,
d/b/a/ TCS

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

_____

STIPULATION OF DISMISSAL
_____

It is hereby stipulated and agreed that the complaint in the above-entitled case be

dismissed with prejudice, the parties to bear their respective costs, including any possible

-1-

2563286 1

attorneys' fees or other expenses of this litigation.

Respectfully submitted,

_____
ROBERT G. NATH
7th Floor, 8280 Greensboro Drive
McLean, VA 22102
(703) 761-5014

Dated: _____

Attorney for Plaintiff

_____
JACOB E. CHRISTENSEN
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0878

EILEEN J. O'CONNOR
 Assistant Attorney General
DAVID GUSTAFSON
 Chief, Court of Federal Claims Section
G. ROBSON STEWART
 Reviewer

_____
Of Counsel

Dated: _____

Attorneys for Defendant

−2−

2563286.1