UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC; LAWRENCE DEMONICO; KEVIN MAXWELL,<br><br>Defendants. | Case No. 1:23-cv-00369-NRM-RML |

**DECLARATION OF KEVIN MCCANN**

I, Kevin McCann, have personal knowledge of the facts set forth below, and if called as a witness I would testify as follows:

1. My name is Kevin McCann, and I am an attorney and the owner of the Law Office of Kevin P. McCann, which provides legal representation in criminal investigations, criminal defense, firearms laws, wrongful conviction projects, business matters, real estate matters, civil disputes and litigation, personal injury, and estate planning. My status as an expert in firearms laws and regulations of firearms is based on my current employment as a lawyer for six years and my prior employment for twenty-five years with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, including seventeen years as a criminal investigator and eight years as a supervisory special agent.

2. On or around March 25, 2020, I was contacted by Kevin Maxwell, Esq. on behalf of Rare Breed Triggers, LLC ("Rare Breed Triggers") to provide an expert legal opinion on whether the FRT-15 trigger device is a machinegun or not under the Gun Control Act ("GCA") and the National Firearms Act ("NFA") as part of Rare Breed Triggers' due diligence

1

before bringing the FRT-15 to market. I was contacted based on my lengthy experience with ATF and my legal expertise in firearms laws and regulations.

3. On or around July 31, 2020, I provided Rare Breed Triggers a legal opinion letter concluding that the FRT-15 is ***not*** a machinegun (attached as Exhibit A). My determination was based on my knowledge as a practicing attorney specializing in firearms law and my experience with the ATF, which involved a quarter century of consistent and continual technical and legal instruction from ATF regarding the definition, functionality, and identification of firearms, including machineguns. As part of my determination, I reviewed the FRT-15 patent and a video simulation of the FRT-15's function, I observed a demonstration of a prototype of the FRT-15 at a firing range, and I reviewed an expert technical report on the FRT-15 prepared by Daniel O'Kelly, who is firearm technology expert and the owner of International Firearm Specialist Academy, as well as a retired ATF special agent. I reached my determination that the FRT-15 is not a machinegun because the standard for what defines a machinegun under the GCA and NFA is clear. A machinegun is a weapon that fires more than one round by a single function of the trigger. As the FRT-15 requires a separate function of the trigger for each round fired, it is not a machinegun under the GCA and NFA.

4. My determination was not influenced in any way by anyone at Rare Breed Triggers or by anyone else. It reflected my full, accurate, and honest opinion about the FRT-15.

5. On or around August 4, 2021, I was contacted again by Mr. Maxwell to provide an additional legal opinion letter analyzing the examination report prepared by ATF Firearms Enforcement Officer ("FEO") David Smith, dated July 15, 2021 (attached as Exhibit B), which erroneously identified the FRT-15 is a machinegun.

6. On or around August 27, 2021, I provided Rare Breed Triggers a legal opinion letter analyzing FEO Smith's report (attached as Exhibit C). My opinion letter stated that FEO Smith's report did not persuade me to alter my initial finding that the FRT-15 is not a machinegun. FEO Smith's report inaccurately cited prior legal precedents and court determinations about other firearms, firearm parts, and firearm trigger systems to improperly claim that the FRT-15 is a machinegun based on his assertion that a user may maintain continuous pressure on the trigger while firing repeated rounds. FEO Smith's claims are not supported by the precedents he cited and his "continuous rearward pressure" standard is contrary to the clear text of the GCA and NFA, which focuses solely on the actual function of the trigger itself. As the FRT-15 requires a separate function of the trigger for each round fired, it does not fire more than one round for a single function of the trigger and is thus not a machinegun.

7. As with my first expert opinion letter, my legal opinion letter responding to FEO Smith's report was not influenced in any way by anyone at Rare Breed Triggers or anyone else. It reflected my full, accurate, and honest opinion about the FRT-15 and FEO Smith's report.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on July 24th, 2023

By: *Kevin McCann*
Kevin McCann



*Law Office of Kevin P. McCann*
*137 S. Courtenay Pkwy, Ste 830*
*Merritt Island, Florida 32952*

*Telephone: (321) 222-3270*
*Fax: (321) 978-0302*

July 31, 2020

Kevin Maxwell, Esq.
The Law Office of Kevin C. Maxwell
733 West Colonial Drive
Orlando, Florida 32804

    RE:    Legal Opinion of Firearm Trigger Mechanism
             United States Patent 10,514,223

Dear Mr. Maxwell:

    Per your request, this letter serves as my legal opinion regarding the legality of a Firearm Trigger Mechanism ("FTM"), United States Patent Number 10,514,223 ("Patent"). You requested my legal opinion based on my current firearms-related legal practice, as well as my former twenty-five (25) year career and experiences as a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in which I routinely determined the legality of numerous firearms and firearm parts.

    I reviewed the Patent and I observed a video simulation regarding the functionality of the FTM. On June 13, 2020, I observed the nomenclature and operation of a prototype of the FTM at an outdoor firing range. I reviewed the July 30, 2020 FTM expert technical report of Daniel O'Kelly, International Firearm Specialist Academy, and I reviewed applicable statutes, case law, and prior ATF opinions for similar devices.

    The Patent for the FTM states, "*The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms… In the disclosed embodiments, the normal resetting of the hammer, as the bolt or bolt carrier is cycled, causes the trigger to forcibly reset by contact between the hammer and a surface of the trigger member. Once reset, movement of the trigger is blocked by a locking bar and cannot be pulled until the bolt has been returned to battery, thus preventing "hammer follow" behind the bolt or bolt carrier.*"

    The mechanics and operation of the FTM, as described in the Patent, was visually presented in a video simulation of the device, which I observed and opined supports the mechanics and operation of the FTM as described in the Patent.

    Mr. O'Kelly, a firearms technology expert, conducted a technical examination of the FTM and prepared the above-mentioned expert technical report, which I reviewed and opined supports the mechanics and operation of the FTM as described in the Patent.

**EXHIBIT A**

Kevin Maxwell, Esq.
Legal Opinion
Page 2 of 2

The National Firearms Act ("NFA"), at Title 26, USC, §5845(b), provides the definition of a machinegun as follows: "*The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"

The critical element in the definition of a machinegun is, "… *by a single function of the trigger.*"  Thus, if a firearm fires more than one shot by a single function of the trigger, then the firearm is classified by statute as a "*machinegun*".  In contrast, if a firearm fires only one shot by a single function of the trigger, then the firearm is not classified as a "*machinegun*".

The Gun Control Act ("GCA"), at Title 18, USC, § 921(a)(28), provides the definition of a semiautomatic rifle as follows: "*The term "semiautomatic rifle" means any repeating rifle which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge.*"

Based on my review of the Patent and video simulation, my observance of the nomenclature and functionality of the FTM, my review of Mr. O'Kelly's expert opinion report, my review of applicable statutes and case law, my review of prior ATF opinion letters, and my knowledge and experience, I conclude that a rifle equipped with the FTM is not a "*machinegun*" as it does not fire more than one shot by a single function of the trigger.  I further conclude that a rifle equipped with the FTM utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and fires only one shot with each separate pull of the trigger, and is thus a "*semiautomatic rifle*".

As a device that delivers only semiautomatic firing when equipped and utilized within a rifle, I conclude and opine that the FTM is a legal device not subject to the provisions of the NFA.  Please let me know if you have any questions or require any additional information.

Very truly yours,

*Kevin McCann*

Kevin McCann, Esq.

.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Firearms Technology Criminal Branch**
**Report of Technical Examination**

| | 244 Needy Road #1600<br>Martinsburg, WV 25405<br><br>Phone: 304-616-4300<br>Fax: 304-616-4301 |
|---|---|
| To:<br>Special Agent Michael T. Nuttall<br>Bureau of Alcohol, Tobacco, Firearms and Explosives<br>99 New York Avenue NE<br>MS: 90K-250<br>Washington, DC 20026 | Date:<br><br>UI#: 163080-21-0006<br><br>RE: Rarebreed Firearms FRT-15<br>FTCB#: 2021-595-DAS 317066 |
| Date Exhibit Received: 06/04/2021<br><br>Delivered By: FedEx# 7738 9219 6853 | Type of Examination Requested:<br><br>Examination, Test, Classification |

**Exhibit:**

1. Rare Breed Triggers, model FRT-15, no serial number (suspected machinegun).

**Pertinent Authority:**

Title 28 of the United States Code (U.S.C.) provides the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) the authority to investigate criminal and regulatory violations of Federal firearms law at the direction of the Attorney General. Under the corresponding Federal regulation at 28 CFR. 0.130 the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms, in relevant part, under 18 U.S.C. Chapter 44 (Gun Control Act) and 26 U.S.C. Chapter 53 (National Firearms Act). Pursuant to the aforementioned statutory and regulatory authority, the ATF Firearms Ammunition and Technology Division (FATD) provides expert technical support on firearms and ammunition to federal, state, and local law enforcement agencies regarding the Gun Control Act and National Firearms Act.

The amended Gun Control Act of 1968 (GCA), defines the term **"machinegun"** has *"the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))."* (See 18 U.S.C. § 921(a)(23).)

The National Firearms Act of 1934 (NFA) **Identification of firearms other than destructive devices.** *"Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the Secretary may by regulations prescribe."* (See 26 U.S.C. § 5842(a).)

The NFA, defines **"firearm"** to mean, in part: *"...(6) a machinegun...."* (See 26 U.S.C. § 5845(a).)

ATF Form    3311.2
Revised September 2014

**EXHIBIT B**

Special Agent Michael T. Nuttall

163080-21-0006
2021-595-DAS
Page 2

The NFA, defines the term "**machinegun**" as follows: "*...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*" (See 26 U.S.C. § 5845(b).)

27 CFR § 479.11 defines the term "**machinegun**" and includes, in part: "*...For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machinegun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.*" (See 27 CFR § 479.11.)

**Findings:**

*Note: FTISB previously examine a similar "forced reset trigger" from* ▓▓▓▓▓▓▓▓ *(holder of U.S. Patent 10514223) and determined it to be a combination of parts, designed and intended for use in converting a weapon into a machinegun; and therefore, a "**machinegun**" as defined in the GCA and NFA (see FTISB letter 307385, dated August 28, 2018 attached).*

**Exhibit 1** is a Rare Breed Triggers, model FRT-15, AR15-type drop-in fire-control group, manufactured by Rare Breed Triggers in Orlando, Florida. I observed that the Exhibit has no serial number in accordance with 26 U.S.C. § 5842.

I examined Exhibit 1 and found it to be an AR15-type drop-in fire-control group with the following features and characteristics:

- ¼ inch wide hammer, trigger, and locking bar
- Aluminum housing
- Two (2) tubular pins
- One (1) solid pin
- Three (3) springs
- Two (2) pins with interior threads at both ends
- Four (4) hex head screws with exterior threads

During my examination, I observed the following markings on Exhibit 1:

    Aluminum housing (right side):    **RARE BREED**
                                               **-TRIGGERS-**
                                               **US PAT. 10514223**

Special Agent Michael T. Nuttall

163080-21-0006
2021-595-DAS
Page 3

**Findings (Cont.):**

Exhibit 1 is identifiable from U.S. Patent #10,514,223 B1 and functions on the same mechanical principle as U.S. Patent #10,254,067 B2.

U.S. Patent #10,514,223 B1 specifically states that this is a device which *"causes the trigger to be forcibly reset,"* and *"once reset, movement of the trigger is blocked by a locking bar and cannot be pulled until the bolt has returned to battery, thus preventing "hammer follow" behind the bolt or bolt carrier."* My examination determined Exhibit 1 does not function by "hammer follow."

As explanation, FATD has also evaluated devices which prevented the trigger from positively resetting and resulted in a "hammer-follow" scenario. A device designed to prevent the hammer from positively resetting could cause a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger, and would also be classified as a combination of parts designed and intended, for use in converting a weapon into a machinegun; thus a "**machinegun**" as defined in 26 U.S.C. § 5845(b).

However, the incorporation of a positive disconnecting or trigger resetting feature alone, does not preclude or remove such a weapon or device from the definition of a "**machinegun**" as defined in the NFA, 26 U.S.C. § 5845(b). Although the presence of hammer follow may require classification of a firearm as a machinegun, this is just one way in which a firearm may satisfy the "machinegun" definition. Therefore, the mere absence of "hammer-follow" in an AR-type firearm does not exclude such a firearm from being classified as a machinegun. Machinegun classifications are based on the examination of the device and whether the device converts a weapon to shoot automatically.

Federal regulation, 27 CFR § 479.11, states that the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger. Indeed, Federal courts have long held that automatically means that the weapon "fires repeatedly with a single pull of the trigger." *Staples v. United States*, 511 U.S. 600, 602 n. 1 (1994). "That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." Id.

Further, Federal regulation 27 CFR § 479.11, states that "single function of the trigger" means a single pull of the trigger and analogous motions. Courts have specifically affirmed ATF's interpretation that a single act of the shooter to initiate the firing sequence is a single function of the trigger. *Atkins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009); *Freedom Ordnance Mfg., Inc. v. Brandon*, 2018 U.S. Dist. LEXIS 243000 (S.D. Ind. Mar. 27, 2018). *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002)(in which electronic switch was the trigger when it served to initiate the firing sequence and the minigun continued to fire until the switch was turned off or the ammunition was exhausted). In *Freedom Ordnance* case, the United States District Court of Indiana confirmed that ATF was not arbitrary and capricious in the classification of an "electronic reset assist device" as a machinegun even though the firearm's trigger reset before each shot by pushing the shooter's finger forward. *Freedom Ordnance Mfg., Inc,* No. 3:16-cv-00243-RLY-MPB. In these cases, a firearm is a machinegun when an internal mechanism or operation automatically forces the individual's finger forward instead of requiring that the shooter release the trigger.

Special Agent Michael T. Nuttall

163080-21-0006
2021-595-DAS
Page 4

**Findings (Cont.):**

If a device is designed to assist in preventing the hammer from positively resetting or which utilizes *a spring, electric motor or non-manual source of energy which assists in the automatic resetting of the hammer and causes a firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger*, such an item or device would be classified as a combination of parts designed and intended, for use in converting a weapon into a machinegun; thus a "machinegun" as defined in 26 U.S.C. § 5845(b).

Below is a description of how the Rare Breed Trigger, FRT-15 device operates with attached diagrams found on the Rare Breed Trigger website.

First, the FRT-15 device must be installed into an AR15-type weapon which includes a H3 weight buffer and M16-type bolt carrier. These components are necessary because the specific design of the FRT-15 requires these to function as designed.

The picture on page 4 of the attached, shows the position of the hammer (orange), trigger (red), and locking bar (green) in the FRT-15 device once the weapon is charged and the selector is placed in the fire position. In this configuration, the hammer is held in place with its sear surface against the front of the trigger.

When the trigger is pulled (rearward pressure applied to the trigger), the hammer is released and strikes the firing pin, igniting the cartridge primer, and starting the cycle of operations (See attachment page 5 picture 7).

As the bolt carrier moves to the rear, the hammer is driven into the top of the trigger forcing it forward. The bolt carrier then strikes the locking bar moving, it to lock the trigger in the forward position (See attachment page 6 picture 8).

As the bolt carrier moves forward, the trigger is held in the forward position by the locking bar and the hammer engages the sear surface on the front of the trigger (See attachment page 7 picture 9).

As the bolt carrier continues to move forward, it strikes the rear surface of the locking bar releasing the trigger. If the shooter maintains constant rearward pressure to the trigger, that single constant pull will continue the cycle of operation and fire a subsequent projectile. (See attachment page 8, 9 picture 10, 11). This differs from a cycle of oeprations in a typical AR-type semiautomatic firearm in which a shooter must release and pull the trigger to fire a second projecile. As stated, a firearm assembled with the FRT-15 requires no such release and subsequent pull by the shooter to fire a second projectile. Instead, the shooter may fire a second projectile merely by maintaining the initial trigger pull and allowing the self-acting internal mechanism to complete its automatic cycle of operation.

To confirm this, I assembled an AR15-type firearm from the National Firearms Collection (NFC) using a Bushmaster AR15-type receiver, H3 buffer, M16-type upper assembly, and the FRT-15 device (See attachment pages 10, 11 pictures 12, 13, 14, 15).

I test-fired Exhibit 1 on June 7, 2021, at the ATF test range, Martinsburg, West Virginia, using commercially available, Federal brand, 5.56x45mm caliber ammunition and a magazine from the NFC.

Special Agent Michael T. Nuttall

163080-21-0006
2021-595-DAS
Page 5

**Findings (Cont.):**

First, I inserted a one-round ammunition load, charged the weapon, and with the selector in the "FIRE" position, pulled the trigger. The NFC weapon, with Exhibit 1 installed, successfully expelled a single projectile by the action of an explosive. I repeated this method of test-fire one additional time, obtaining the same result.

Next, I inserted a two-round ammunition load, charged the weapon, and with the selector in the "FIRE" position pulled the trigger and held it to the rear, the NFC weapon, with Exhibit 1 installed, fired two (2) rounds automatically by a single pull/function of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

Finnaly, I inserted a five-round ammunition load, charged the weapon, and with the selector in the "FIRE" position, pulled the trigger and held it to the rear, the NFC weapon, with Exhibit 1 installed, fired five (5) rounds automatically by a single pull/function of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

The FRT-15 device incorporates parts that are novel to the operation of a typical AR-type semiautomatic firearm. These unique parts (hammer, trigger and locking bar) within the FRT-15 trigger mechanism are specifically designed to incorporate the standard rearward and forward movement of the AR-type bolt carrier in its cycle of operations allowing the weapon to function as a self-acting, or self-regulating, mechanism. Whereas in a typical AR-type firearm, the rearward movement of the bolt carrier extracts, then ejects a cartridge case, and cocks the hammer. However, in the FRT-15, the rearward movement is also utilized to eliminate the necessity for the shooter to release their pull of the trigger. In a typical AR-type firearm, the forward movement of the bolt carrier loads a subsequent cartridge, and locks the bolt, while the FRT-15 also utilizes this forward movement to automatically release the trigger and hammer, allowing the weapon to expel a second projectile without a separate pull of the trigger. In this way, one continuous pull of the trigger allows a semiautomatic firearm to shoot more than one shot. This mechanical action and principle is explained in U.S. Pat. #10,514,223 and U.S. Patent # 10,254,067 B2, and demonstrated in the test-fires above.

As received, Exhibit 1 is a combination of parts, designed and intended for use in converting a weapon (AR15-type) into a machinegun; therefore, it is a **"machinegun"** as defined in the GCA and NFA.

**Conclusions:**

**Exhibit 1** is a combination of parts, designed and intended for use in converting a weapon into a machinegun; therefore, it is a **"machinegun"** as defined in 26 U.S.C. § 5845(b).

**Exhibit 1** is a **"machinegun"** as defined in 18 U.S.C. § 921(a)(23).

**Exhibit 1**, being a machinegun, is also a **"firearm"** as defined in 26 U.S.C. § 5845(a)(6).

**Exhibit 1** is not marked in accordance with 26 U.S.C. § 5842(a).

ATF Form    3311.2
Revised September 2014

Special Agent Michael T. Nuttall

163080-21-0006
2021-595-DAS
Page 6

Examined By:

*David A. Smith* (signature)

Digitally signed by David A. Smith1
Date: 2021.07.15 15:43:05 -04'00'

David A. Smith
Firearms Enforcement Officer

Approved By:

GREGORY STIMMEL

Digitally signed by GREGORY STIMMEL
Date: 2021.07.15 15:50:02 -04'00'

Gregory Stimmel, Chief
Firearms Technology Criminal Branch

Attachment: 11 pages bearing a total of 15 photographs, U.S. Patents #10,254,067 B2; 10,514,223 B1, and ATF letter # 307385.

**Enclosed is a Firearms Technology Criminal Branch report provided in response to your request for assistance. Please be aware that these documents constitute "taxpayer return information" that is subject to the strict disclosure limitations provided in 26 U.S.C. § 6103. Exceptions to the non-disclosure provisions that permit the disclosure internally within ATF are set forth in 26 U.S.C. §§ 6103(h)(2)(C) and (o)(1). Any further disclosure of these reports is strictly limited and must be reviewed and approved by the Office of Chief Counsel prior to any information dissemination. Failure to adhere to the disclosure limitations provided in 26 U.S.C. § 6103 could result in civil and/or criminal liability.**

ATF Form 3311.2
Revised September 2014



*Law Office of Kevin P. McCann*
*137 S. Courtenay Pkwy, Ste 830*
*Merritt Island, Florida 32952*

*Telephone: (321) 222-3270*
*Fax: (321) 978-0302*

August 27, 2021

Kevin Maxwell, Esq.
Law Office of Kevin C. Maxwell
733 West Colonial Dr.
Orlando, FL 32804

      RE:    Legal Opinion of ATF Report of Technical Examination, dated 7/15/2021
                Classification of Rare Breed Triggers, model FRT-15

Dear Mr. Maxwell:

      Per your request, this letter serves as my legal opinion regarding the ATF Report of Technical Examination of Rare Breed Trigger's forced reset trigger device, model FRT-15, dated July 15, 2021. As a result of ATF's examination of the FRT-15, ATF concluded that the FRT-15 device is a combination of parts, designed and intended, for use in converting a weapon (AR-15 type) into a machinegun, and therefore it is a "machinegun" as defined by the National Firearms Act ("NFA") of 1934 and the Gun Control Act ("GCA") of 1968.

      ATF's Report of Technical Examination does not persuade me to alter my original legal opinion that the FRT-15 is not a "*machinegun*" since it does not fire more than one shot with a single function of the trigger.

      In support of ATF's classification of the FRT-15 as a machinegun, ATF relied on the NFA, the GCA, 27 CFR § 479.11, *Staples v. United States*, 511 U.S. 600 (1994), *Atkins* [sic] *v. United States*, 312 F. App'x 197 (11th Cir. 2009), *Freedom Ordnance Mfg., Inc. v. Brandon*, 2018 U.S. Dist. LEXIS 243000 (S.D. Ind. 2018), and *United States v. Fleischli*, 305 F. 3d 643 (7th Cir. 2002).

      In 1934, the definition of a machinegun was statutorily established by the NFA, which had remained as follows since that time: "*Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*"

      On December 26, 2018, under pressure from President Donald Trump to ban bump-stock firearm devices, without direction or act of Congress, ATF arbitrarily revised the long-standing statutory definition of a machinegun by adding two (2) sentences at the end of the above definition to read as follows, "*For purposes of this definition, the term "automatically" as it modifies "shoots, is*

EXHIBIT C

Kevin Maxwell, Esq.
Legal Opinion
Page 2 of 3

*designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machinegun" includes a bump-stock-type device, i.e., a device that allows a semiautomatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter."* (see 83 FR 66554, 27 CFR § 478.11, and 27 CFR § 479.11)

In ATF's Report of Technical Examination, ATF provides that, "Federal courts have long held that automatically means that the weapon 'fires repeatedly with a single pull of the trigger.' *Staples v. United States*, 511 U.S. 600, 602 n. 1 (1994). 'That is, once its trigger is depressed, the weapon will automatically continue to fire until the trigger is released or the ammunition is exhausted.' Id.". As provided by the FRT-15 patent and video simulation, as well as by the examinations by firearm technical experts Daniel O'Kelly, Richard Vasquez, and Brian Luettke, the trigger does release with each function of the trigger, and firearms equipped with the FRT-15 do not fire more than one (1) round with a single function of the trigger. Thus, the FRT-15 does not satisfy the definition of a machinegun as provided in *Staples* and cited in the ATF Technical Examination Report.

In ATF's Report of Technical Examination, ATF provides that, "Federal regulation 27 CFR § 479.11, states that 'single function of the trigger' means a single pull of the trigger and analogous motions." As stated above, without direction or act of Congress, ATF arbitrarily rewrote the long-standing laws regarding machineguns and the definition of a machinegun, which include this language that in 2018 ATF itself codified in 27 CFR § 479.11. Although ATF is afforded deference to interpret, enforce, and provide regulations regarding Congressionally established laws, credibility is lost when ATF rewrites the laws and revises the definition of a machinegun, now classifying and reclassifying long-standing non-machinegun devices as machineguns. Furthermore, there currently exists numerous meritorious challenges across the nation against ATF regarding its arbitrary revision of federal statutes and its arbitrary classifications and reclassifications of long-standing non-machinegun devices into machineguns. Thus, citing its own language to support its classification of the FRT-15 is unreliable.

In ATF's Report of Technical Examination, ATF provides that, "In *Freedom Ordnance* case, the United States District Court of Indiana confirmed that ATF was not arbitrary and capricious in the classification of an 'electronic reset assist device' as a machinegun even though the firearm's trigger reset before each shot by pushing the shooter's finger forward." ATF's Report of Technical Examination continues by providing, "In these cases (*Freedom Ordnance, Akins,* and *Fleischli* cases), a firearm is a machinegun when an internal mechanism or operation automatically forces the individual's finger forward instead of requiring that the shooter release the trigger." The opinion of the *Freedom Ordnance* case (3:16-cv-00243-RYL-MPB) is provided by and within the Entry on Cross-Motions for Summary Judgment (Document 34) in which Judge Richard L. Young, United States District Court, Southern District of Indiana, denied Freedom Ordnance's Motion for Summary Judgment and granted ATF's Motion for Summary Judgment. However, despite ATF's assertions in its Report of Technical Examination as provided above, Judge Young did not state anything in his opinion

Kevin Maxwell, Esq.
Legal Opinion
Page 3 of 3

about the firearm's trigger resetting before each shot by pushing the shooter's finger forward. Furthermore, none of the opinions in the *Freedom Ordnance, Akins*, and *Fleischli* cases provide that a firearm is a machinegun when an internal mechanism or operation automatically forces the individual's finger forward instead of requiring that the shooter release the trigger. ATF's Report of Technical Examination has misquoted these cases by asserting that a firearm is a machinegun if a mechanism forces the shooter's finger forward. These cases do not provide support for this assertion.

     A device that increases the fire of a semiautomatic firearm by providing more rapid but continued semiautomatic mechanics of the firearm is not a machinegun. Semiautomatic firearms may also be manually manipulated to increase the rate of fire without any device added to the firearm through bump-firing. A semiautomatic firearm may be fired rapidly when the shooter provides forward pressure of the firearm with opposite rearward pressure of the trigger. Bump-firing occurs when the shooter's trigger finger is held in a stationary position while the shooter's support hand pushes forward on the firearm. The firearm's trigger is pushed into the shooter's finger as opposed to the normal process in which the finger presses the trigger. The pressure must be enough to pull the firearm forward and engage the trigger, but not so much that the recoil of the firearm isn't strong enough to move the firearm temporarily rearward removing the trigger from the finger. In a sense, the firearm is repeatedly recoiling away from the stationary trigger finger while the support hand is returning it forward for the trigger to be pulled again. Although bump-firing results in rapid firing, it does not make the firearm a machinegun. This is because the firearm's trigger is being pulled once for every shot fired. Should ATF's revision of the definition of a machinegun stand, then semiautomatic firearms must be reclassified as machineguns since they can operate by bump-fire rapid shooting in the same manner as ATF is trying to prohibit.

     As mentioned above, ATF rewrote the statutory definition of a machinegun to include bump-stocks and other devices that increases the rate of fire of semiautomatic firearms in an attempt to arbitrarily make long-standing legal devices now illegal. ATF's intent to protect the public from a potentially dangerous item is understandable; however, ATF's current process of redefining machineguns and rewriting the laws is improper and contrary to the Constitution in which only Congress is tasked with establishing and modifying laws. The checks and balance system serves to prevent the Government from acting unconstitutionally, and the judiciary must review ATF's current arbitrary actions of rewriting long-standing laws and then reversing their enforcement efforts in manners inconsistent with its own history of enforcing laws and classifying firearms.

                                       Very truly yours,

                                         *Kevin McCann*

                                       Kevin McCann, Esq.