IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>-against-<br><br>RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC; LAWRENCE DEMONICO; KEVIN MAXWELL,<br><br>*Defendants*. | Case No. 1:23-cv-00369-NRM-RML |

**OPPOSITION TO THE UNITED STATES OF AMERICA'S MOTION *IN LIMINE* (ECF NO. 89) AND ITS SUPPLEMENTAL MEMORANDUM IN SUPPORT (ECF NO. 111)**

I.     **PRELIMINARY STATEMENT**

Rare Breed Triggers, LLC; Rare Breed Firearms, LLC; Lawrence DeMonico; and Kevin Maxwell ("Defendants") respectfully respond to the United States of America's (the "Government") Motion *In Limine* (ECF No. 89) its Supplemental Memorandum in Support (ECF No. 111) (collectively, the "Motion") by submitting this Opposition. The Government is correct that "[t]he central issue in this case is the proper classification of Defendants' product, a trigger known as the FRT-15" and "[s]pecifically, whether it is a 'machinegun' according to the law based on its mechanical operation." *See* ECF No. 89 at 1 (citing ECF No. 80), though the Government's fraud-based claims certainly add more elements to their burden of proof than mere disagreement or error on this point. In any event, the Government has chosen to put Anthony Ciravolo, a Firearms Enforcement Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), an expert witness with an impeachable history, on the stand.

The Government forgets that any witness, including expert witnesses like Mr. Ciravolo, called to testify in a case not only puts his truthfulness at issue, but also his prior inconsistent

statements, bias, interest, motives, and wrongs, among other things. The scope of cross-examination is controlled by Fed. R. Evid. 611(b). Furthermore, Mr. Douglas Hill's declaration (ECF No. 107-3) is probative of and relevant to Mr. Ciravolo's association with the so-called "Camden Mafia," a group Mr. Hill states Mr. Ciravolo was a part of, just as Mr. Ciravolo admitted in his deposition, and a group of which the Government adamantly states Mr. Ciravolo was not a part. *See* ECF. No. 111 at 3 n.2. For the reasons set forth herein, this Court should deny the Government's Motion, allow Defendants' questioning of the Government's expert witness to proceed unencumbered, and permit introduction of a declaration from Douglas Hill for the upcoming August 1, 2023 Preliminary Injunction Hearing.

## II.     LEGAL STANDARD

*In limine* rulings developed pursuant to a district court's "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c) & Fed. R. Crim. P. 12(e)). "The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Generally, evidence must be relevant to be admissible. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### III. ARGUMENT

This Court should deny the Government's Motion. Pursuant to Fed. R. Evid. 611(a), "[t]he Court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Moreover, Fed. R. Evid. 611(b) makes clear that "[c]ross-examination should not go beyond the subject matter of the direct examination and *matters affecting the witness's credibility*. The court may allow inquiry into additional matters as if on direct examination." (emphasis added). "Any party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607. Federal Rule of Evidence 608 permits a witness's credibility to be attacked by testimony about the witness's reputation for having a character for untruthfulness, and permits on cross-examination extrinsic evidence of specific instances of misconduct, including untruthfulness of the witness "to be inquired into if they are probative of the character for truthfulness or untruthfulness." Fed. Rule Evid. 608.

Calling forthcoming attacks on a witness's credibility "irrelevant and prejudicial insinuations," when the Government admits that "it is not clear what Defendants will try to imply by attempting to link Mr. Ciravolo to Mr. Yeager and Mr. Thomas," does not make the act of impeaching a witness's credibility any less permissible. *See* ECF No. 89 at 1. Furthermore, inasmuch as Mr. Ciravolo failed to include in his application with the ATF relevant information that reasonably could have prevented his hire, this goes to his credibility. (*See infra* pp. 4-5.)

The Government's conclusory argument that "Defendants' attempts at smearing Mr. Ciravolo will only serve to unfairly prejudice the United States (and Mr. Ciravolo), waste the Court's time, and create unnecessary delay . . ." does not offer any more detail for this Court to

3

determine *how* the aforementioned outweighs the probative value in impeaching Mr. Ciravolo's testimony via inquiry into specific acts as to untruthfulness and introduction of extrinsic evidence for any other purpose. *See* ECF No. 89 at 5. Saying so does not make it so.

Additionally, while Fed. R. Evid. 611(a)(3) authorizes courts "to protect witnesses from harassment and undue embarrassment," it is not harassment or undue embarrassment to inquire into matters bearing on witness's overall credibility when that witness is opining on an important, ultimate issue. The Government's concern that "[q]uestioning regarding an ATF official's personal relationship[s] . . . could be interpreted as threatening and chilling for future ATF officials . . ." is nonsensical on its face. *See* ECF No. 89 at 5. Mr. Ciravolo's associations, and particularly the extent to which they are probative of his personal bias against the Defendants or his credibility, are an important issue into which this Court should allow inquiry.

To the extent Defendants will cross-examine Mr. Ciravolo on matters of his truthfulness, Defendants intend to act within the bounds of the Federal Rules of Evidence to attack Mr. Ciravolo's credibility through cross-examination of his inconsistent statements. For example, the Government attempts downplay what Mr. Ciravolo included (or did not include) on his Standard Form 86, which the Government describes as "a form that the United States uses to gather information to conduct background checks for certain employees and appointees" (ECF No. 89 at 4), and which is titled "Questionnaire for National Security Positions." At least three sections of the SF 86 are implicated by Mr. Ciravolo's history with Mr. Yeager, the Camden Mafia, and Tactical Response. As Mr. Ciravolo describes it:

> 3 Q. Your Facebook profile picture
> 4 has you and James Yeager in there, right?
> 5 A. Yes.
> 6 Q. And the background picture on
> 7 your profile is also James Yeager?
> 8 A. Yes.

4

>9 Q. Would you say that James Yeager
>10 knew you well?
>11 A. Yes.
>12 Q. Did you list Mr. Yeager in
>13 Section 16 of your SF-86 as a person who
>14 knew you well?
>15 A. I don't believe so.
>16 Q. Did you list Mr. Yeager or
>17 Camen Mafia or Tactical Response in
>18 Section 29 of your SF-86?
>19 A. I am not sure what that is, but
>20 I do not believe I listed James or his
>21 company for anything.

(Attached as Exhibit A are relevant deposition transcript pages.)

Section 16 of the Questionnaire for National Security Positions concerns people who knew Mr. Ciravolo well, excluding family.[1] Mr. Ciravolo testified that James Yeager knew him well. Mr. Ciravolo also testified he did not include James Yeager on his completed Questionnaire for National Security Positions.

Section 29 of the Questionnaire for National Security Positions concerns people who Mr. Ciravolo associated with. One question within this section asks: "Have you **EVER** associated with anyone involved in activities to further terrorism?"[2] Mr. Ciravolo did not includes James Yeager in response to this question on the Questionnaire for National Security Positions.

Exploring Mr. Ciravolo's general association with Mr. Yeager and Mr. Thomas, two colorful figures who the Government likely understands will undermine Mr. Ciravolo, pursuant to Fed. R. Evid. 607, 608, 611, and 613. The Government knows how colorful these individuals are, spending pages upon pages detailing their histories and attempting to downplay Mr. Ciravolo's association with them (even though Mr. Hill has detailed these players' general association in his declaration). (*See* ECF Nos. 89, 111.)

---

[1] See https://www.opm.gov/forms/pdf_fill/sf86.pdf at 1-3, 38 (35).
[2] See *id.* at 132 (129).

And despite the Government's characterization of Mr. Hill's declaration as "an act of desperation," Defendants may nevertheless introduce the declaration pursuant to Fed. R. Evid. 607, 608, 611, or 613 and to generally impeach Mr. Ciravolo. Mr. Hill's declaration does not "malign[] Mr. Ciravolo." *See* ECF No. 89 at 1. Rather, the purpose of the Hill declaration is to show that the Camden Mafia, which Defendants directly asked Mr. Ciravolo about in his deposition at Ciravolo Tr. 198-99, is not some "joke of companies that are friends and in the same area" that Mr. Ciravolo was a part of, as his deposition testimony states. Under penalty of perjury and promising to make himself available to testify (in case the Government wishes to make good on its threat to call Mr. Hill as a live witness), Mr. Hill declared that because he was a part of the Camden Mafia, along with Mr. Thomas and Mr. Yeager, he also knew that Mr. Ciravolo was a member as well. The Government also misstates that Ciravolo is not part of the Camden Mafia, while his deposition states otherwise. See ECF. No. 111 at 3 n.2.

> Q. Have you ever heard of the name
> 24 Camen Mafia?
> 25 A. Yes, I have.
>
> Q. What's that?
> 3 A. It is several businesses that
> 4 are all close friends in that area.
> 5 Q. Were you ever part of the Camen
> 6 Mafia?
> 7 A. I don't believe that's actually
> 8 a real thing as much as it was a joke of
> 9 companies that are friends and in the same
> 10 area.
> 11 Q. Were you part of that friend
> 12 group and company?
> 13 A. Yes.
> 14 Q. Do you know of a person named
> 15 Ben Thomas a/k/a Mookie?
> 16 A. Yes, I do.

(Attached as Exhibit A are relevant deposition transcript pages.)

Even if the Court refuses to allow the declaration into evidence, despite declarations being a common practice for the Court's consideration in all types of motions, that refusal does not mean the declaration cannot be used during Defendants' cross-examination of Mr. Ciravolo. Nothing in Rule 608(b) prevents Defendants from providing copies of the declaration, or other documents, to the witness during his cross-examination and asking the witness about it.

### IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Government's Motion, allow Defendants' questioning of the Government's expert witness to proceed unencumbered, and permit introduction of a declaration from Douglas Hill for the upcoming August 1, 2023 Preliminary Injunction Hearing.

DHILLON LAW GROUP INC.
A CALIFORNIA PROFESSIONAL CORPORATION

*/s/ Josiah Contarino*
JOSIAH CONTARINO
50 Park Place, Suite 1105
Newark, NJ 07102
jcontarino@dhillonlaw.com

DAVID A. WARRINGTON
(*pro hac vice*)
2121 Eisenhower Avenue
Suite 608
Alexandria, VA 22314
dwarrington@dhillonlaw.com

MICHAEL A. COLUMBO
(*pro hac vice*)
177 Post St., Suite 700
San Francisco, CA 94108
415.433.1700
mcolumbo@dhillonlaw.com
*Attorneys for Defendants*

**EXHIBIT A**

Page 198

1                CIRAVOLO
2    Q.    Are you familiar with this
3  video of Mr. Yeager?
4          (Video being played.)
5    Q.    Have you seen that video
6  before?
7    A.    I have not seen that specific
8  news segment before, no.
9    Q.    But you saw the rant that was
10 featured in it?
11   A.    Yes, I have.
12   Q.    In your interaction with
13 Mr. Yeager, was there any discussion ever
14 mentioning Ruby Ridge?
15   A.    No, not that I recall.
16   Q.    Any discussion regarding Waco?
17   A.    No, none that I recall.
18   Q.    At Tactical Response, is there
19 a name for the inner circle there?
20   A.    Yes, there is.
21   Q.    What's that?
22   A.    Alumni.
23   Q.    Have you ever heard of the name
24 Camen Mafia?
25   A.    Yes, I have.

```
                                                    Page 199
 1                      CIRAVOLO
 2       Q.      What's that?
 3       A.      It is several businesses that
 4   are all close friends in that area.
 5       Q.      Were you ever part of the Camen
 6   Mafia?
 7       A.      I don't believe that's actually
 8   a real thing as much as it was a joke of
 9   companies that are friends and in the same
10   area.
11       Q.      Were you part of that friend
12   group and company?
13       A.      Yes.
14       Q.      Do you know of a person named
15   Ben Thomas a/k/a Mookie?
16       A.      Yes, I do.
17       Q.      Where do you know him from?
18       A.      I know that he is or was
19   friends with James.
20       Q.      Have you ever met Ben Thomas?
21       A.      No, I have not.
22       Q.      What kind of training did you
23   receive at Tactical Response?
24               (Witness's Internet connection
25   was lost momentarily.)
```

```
                                            Page 201
 1              CIRAVOLO
 2   it's Joey Glover or Heather Glover.
 3       Q.      Your Facebook profile picture
 4   has you and James Yeager in there, right?
 5       A.      Yes.
 6       Q.      And the background picture on
 7   your profile is also James Yeager?
 8       A.      Yes.
 9       Q.      Would you say that James Yeager
10   knew you well?
11       A.      Yes.
12       Q.      Did you list Mr. Yeager in
13   Section 16 of your SF-86 as a person who
14   knew you well?
15       A.      I don't believe so.
16       Q.      Did you list Mr. Yeager or
17   Camen Mafia or Tactical Response in
18   Section 29 of your SF-86?
19       A.      I am not sure what that is, but
20   I do not believe I listed James or his
21   company for anything.
22       Q.      Were you aware that Ben Thomas,
23   who we discussed before, was sued by Kevin
24   Maxwell for embezzling money on behalf of
25   Spikes Tactical?
```