

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 18, 2023

**By ECF**
Honorable Nina R. Morrison
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Rare Breed Triggers, LLC, et al.*,
              No. 23-cv-369 (Morrison, J.) (Levy, M.J.)

Dear Judge Morrison:

      Pursuant to the Court's Order at the August 15, 2023 oral argument, the United States respectfully informs the Court that it seeks a preliminary injunction that provides relief beyond that required by the temporary restraining order currently in effect. To be specific, the United States asks that the Court require Defendants to create and implement a refund program to allow their customers to return FRT-15s or Wide Open Triggers ("WOTs") to them in return for cash payments. Attached as Exhibit A is a proposed Preliminary Injunction.

      A refund program is well within the grant of authority that 18 U.S.C. § 1345 offers this Court. By its explicit terms, § 1345 provides the Court with broad equitable authority to "enter such a restraining order or prohibition, *or take such other actions*, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." 18 U.S.C. § 1345 (emphasis added). Section 1345 thus vests federal courts with broad remedial powers. *See United States v. William Savran & Associates, Inc.*, 755 F. Supp. 1165, 1182 (E.D.N.Y. 1991) (Spatt, J.) (noting that remedies available under § 1345 include appointment of receiver, restitution, disgorgement, and asset freeze). Such broad powers allow courts flexibility to fashion relief that is necessary to protect the public. *See United States v. Narco Freedom, Inc.*, 95 F. Supp. 3d 747, 761 (S.D.N.Y. 2015). Federal courts have used those remedial powers in a variety of ways. For example, courts have:

- frozen assets, *see, e.g., Willaim Savran & Assocs.*, 755 F. Supp. at 1184-85; *see also Luis v. United States*, 578 U.S. 5 (2016) (prohibiting the freezing of funds untainted by a defendant's fraud, but otherwise allowing the freezing of funds);
- appointed an independent monitor to conduct an accounting of a business' entire finances and to oversee all aspects the business to ensure its compliance with the law, *see, e.g.*, Stip. & Prelim. Inj. Order, *United States v. Payment Processing Ctr., LLC*, 2:06-cv-00725 (E.D. Pa. Apr. 7, 2006);

- prohibited a residential drug treatment program from closing any residences to ensure that its clients were not thrown out on the street, *see, e.g., Narco Freedom, Inc.*, 95 F. Supp. 3d at 761; and
- required that a company play a recording on their telephone system directing callers to the Social Security Administration and away from the company itself for help concerning Social Security Numbers, *see United States v. Fed. Record Serv. Corp.*, No. 99 Civ. 3290 (BSJ), 1999 WL 335826 at *24 (S.D.N.Y. May 24, 1999).

Most relevant here, a court has also required that defendants advise their customers that they had a right to a refund for fees they were misled into paying the defendants for help in obtaining credit cards. *See William Savran & Assocs.*, 755 F. Supp at 1182 (describing the relief offered in *United States v. Cen-Card Agency/C.C.A.C.*, 724 F. Supp. 313 (D.N.J. 1989)).

The relief that the United States seeks at this stage – a refund program – is far from the kind of intrusive and all-encompassing (though appropriate) relief that other courts have ordered under § 1345. It is also narrowly tailored to the harm that the United States is seeking to alleviate. Moreover, it is consistent with the legislative history of § 1345, which evinced "a [c]ongressional concern over the possibility that the consuming public could be victimized by permitting the continuance of a fraudulent scheme." *See William Savran & Assocs.*, 755 F. Supp. at 1178 (summarizing S. Rep. 225, 98th Cong., 2d Sess. 401-02, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3539-40).

As the Court is aware, the United States brought this action, in primary part, to keep illegal firearms off of the streets and to reimburse consumers who were misled into purchasing illegal products. A refund program achieves both of those goals. In addition, as designed, it does so in a way that acknowledges that the relief is preliminary and that respects the privacy of Defendants' consumers.[1]

The proposed refund program would require Defendants to do the following:

1. Post a notice ("the Notice") on the Rare Breed Triggers ("RBT") and Rare Breed Firearms ("RBF") websites (a) that states that this Court has issued an Order concerning the legality of the FRT-15 and the WOT; (b) that provides a link to the Order itself; and (c) that informs purchasers of an FRT-15 or a WOT that they can ship their product to RBT via FedEx, postage to be paid by RBT, for a full cash refund.
2. Send the Notice, by mail, to the last known address of every individual who purchased an FRT-15 or WOT from RBT.
3. Send the Notice, by email, to every individual on any email mailing list or listserv that RBT maintains.

---

[1] The United States reserves the right to seek additional relief after proceedings in support of a permanent injunction. Such relief could, for instance, include the requirements that RBT produce its complete customer list to ATF, that RBT reimburse each purchaser of an FRT-15 or a WOT (regardless whether that purchaser affirmatively seeks a refund), and that RBT pay any taxes that it may owe for the manufacture and sale of any FRT-15 or WOT.

4. Maintain records sufficient to track all of the notices sent pursuant to (3) and (4) above, such records to include the names and addresses of all those to whom notices were sent.
5. Provide a full cash refund to any consumer who mails an FRT-15 or WOT to RBT.
6. Maintain records sufficient to identify all instances in which RBT provided a refund to a consumer pursuant to the refund program.

The proposed refund program would not require RBT to provide the United States with the names or addresses of any of RBT's customers, at this point. RBT would then provide to ATF all of the FRT-15s and WOTs returned to it. ATF would store the products until the conclusion of this matter. Should this matter conclude with a determination that the FRT-15 and the WOT are machineguns, then ATF would destroy the products. If this matter were to conclude with a determination that the FRT-15 and the WOT are not machineguns, then ATF would return all of the products to RBT.[2]

The United States thanks the Court for its consideration of this matter.

.

---

[2] As the Court is now aware, parties associated with – and actively supported by – Defendants in this action filed suit on August 9, 2023, in the Northern District of Texas seeking to prevent the United States from taking any enforcement action against anyone for selling or possessing an FRT-15 or WOT, followed by their August 14 filing of a motion for a temporary restraining order and their August 15 filing of a motion for preliminary injunction for such relief. *See Nat'l Ass'n for Gun Rights v. Garland*, No. 4:23-cv-00830 (N.D. Texas). The United States will vigorously oppose plaintiffs in that matter. The Court here is under no obligation to craft injunctive relief in this matter in a way that will avoid a potential conflict with the Northern District of Texas. Nor is the United States endeavoring to avoid such a conflict (other than working to oppose the plaintiffs in the Northern District of Texas, whose case should fail on the merits). Among other reasons, the matter in the Northern District of Texas appears to be little more than an attempt to do an end run around this Court and the United States will not reward such gamesmanship by helping to shield Defendants from facing the potential dilemma of being subject to conflicting court orders. Such a dilemma would be of their own making.

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

                         By:     */s/ Michael S. Blume*
                                        Michael S. Blume
                                        David A. Cooper
                                        Paulina Stamatelos
                                        Assistant U.S. Attorneys
                                        (718) 254-6479 / 6288 / 6198
                                        Michael.Blume@usdoj.gov
                                        David.Cooper4@usdoj.gov
                                        Pauline.Stamatelos@usdoj.gov

Encl.

cc:  All Counsel of Record (By ECF)