

2121 Eisenhower Avenue, Suite 608
Alexandria, Virginia 22314

**David A. Warrington**
Phone: 703.574.1206
DWarrington@dhillonlaw.com

August 23, 2023

**VIA ECF**
Honorable Nina R. Morrison
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: *United States v. Rare Breed Triggers, LLC, et al.*
       Civil Action No. 1:23-cv-00369-NRM-RML

Dear Judge Morrison:

  Pursuant to the Court's Order at the August 15, 2023, oral argument and its corresponding Minute Entry and Order the defendants respectfully submit the following additional legal argument and record citations on the matters discussed on the record. We will address the applicability of *Ciminelli v. United States*, 598 U.S. 306 (2023), in a separate filing.

  **1. Applicability of *Staples* Footnote 1**

  As an initial matter, in reviewing the transcript of last Wednesday's hearing, I realize that I may have been unclear about my clients' position in response to one of Your Honor's questions. Accordingly, I write to clarify. During the hearing, Your Honor asked for my views on whether the Court was bound by footnote 1 in *Staples v. United States*, 511 U.S. 600 (1994). To be clear, for the reasons that I explained on the record, my clients' position is that footnote is consistent with our position in this case but it is not binding on this Court.

  The issue of the statutory definition of an automatic weapon was not before the Supreme Court in Staples[1] and, accordingly, its footnote on that issue does not constitute a holding of the Supreme Court on that or any other issue. *See, e.g., Webster v. Fall*, 266 U.S. 507, 511 (1924) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *see also D.C. v. Heller*, 554 U.S. 570, 625 n.25 (2008) (characterizing statement in previous decision as "dictum" because "the point was

---

[1] *See Guedes v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 920, F.3d 1, 30 (D.C. Cir. 2019) ("Nor does *Staples v. United States*, 511 U.S. 600 (1994), compel a particular interpretation of 'single function of the trigger.'…[T]he precise definition of "single function of the trigger" was not at issue in *Staples*. *See id*. at 602, 114 S.Ct. 1793. And the Court did not purport to exclude any interpretation as foreclosed by the statute.").

not at issue and was not argued" and refusing to follow that "dictum"); *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) ("[S]ince we have never squarely addressed the issue, and have at most assumed [it], we are free to address the issue on the merits.*"); Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting) (explaining that "judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed" and collecting cases); *Chavis v. Chappius*, 618 F.3d 162, 168 (2d Cir. 2010) ("Because the Pettus panel had no reason to consider the definition of a strike, its gloss on the three strikes rule does not constitute a holding on the question.") (citing *Webster, supra*).[2]

I apologize for any confusion my lack of clarity may have caused.

## 2. Applicability of Rule of Lenity

During the hearing, the Court also asked about the relevance of the rule of lenity in the preliminary injunction context. In that connection, I would note that the Supreme Court held in *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004), that where a statute has both criminal and noncriminal applications, "[b]ecause we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies." *Accord, e.g., KCG Holdings, Inc. v. Khandekar*, No. 17-CV-3533 (AJN), 2020 WL 1189302, at * 15 (S.D.N.Y. Mar. 12, 2020) ("Although *Valle* was a criminal case, the Supreme Court has instructed that courts analyzing statutes having 'both criminal and noncriminal applications … must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context.'") (citing *Leocal, supra*).

## 3. When Defendants First Saw the AR1 Determination Letter

There is no evidence in the record, or that we are aware of, that shows that the defendants were aware of the ATF's Determination Letter regarding the AR1 until early 2021, at the earliest, as testified to by Mr. LeLeux at the preliminary injunction hearing. Prelim. Inj. Hr'g Tr. 578:22-579:20. Further,

---

[2] Had *Staples* analyzed the statutory definition, it very likely would have reviewed other portions of the statute that in fact include the word "pull," like the Fifth Circuit did in *Cargill*:

> Specifically, context tells us that Congress knew how to write a definition that explicitly turns on the action of a shooter rather than the action of a trigger, but chose not to do so here. Immediately following the definition of machinegun provided in 26 U.S.C. § 5845(b), Congress defined the term "rifle" to mean a weapon designed "to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore *for each single pull of the trigger.*" § 5845(c) (emphasis added). The statute next defines "shotgun" to mean a weapon designed "to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile *for each pull of the trigger.*" *Id.* § 5845(d) (emphases added). "[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Reading Law* at 170.

*Cargill v. Garland*, 57 F.4th 447, 461 (5th Cir. 2023).

Mr. DeMonico testified in his deposition that he recalled that he only became aware of the letter in the context of this litigation.  DeMonico Dep. 124:08-125:03, July 7, 2023. We also note that ATF classifications—which there is no requirement in the law for manufacturers to seek—are informal adjudications rather than rules issued through rulemaking, and are not precedent as to any device other than the specific one that was examined. *See Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 86 Fed. Reg. 30826, 30827 (June 10, 2021) ("Even though firearms may have a similar appearance (*i.e.,* shape, size, etc.), an ATF classification of a firearm pertains only to the particular sample submitted because of the vast variations in submissions, the application of different relevant statutes and judicial interpretations of these statutes, the manufacturer's or maker's stated intent, and the objective design features supporting or undercutting that stated intent that may be legally and technically significant"); see also *Porter & Dietsch, Inc. v. F.T.C.*, 605 F.2d 294, 307 n. 17 (7th Cir. 1979) ("Agency adjudications do not create industry-wide standards as rulemaking does."); see also *Neustar, Inc. v. F.C.C.*, 857 F.3d 886, 893 (D.C. Cir. 2017) (discussing informal adjudications and rulemaking).

For all of the reasons addressed in the evidentiary record, the AR1 and the FRT-15 had different designs, different patents, and operated differently. Accordingly, regardless of the date the Defendants first learned of the ATF's classification of the AR1, the Plaintiff's reliance on the precedential value of that classification to prove the Defendants "knew" or should have known the FRT-15 was a machinegun, whenever they first saw the letter, is misplaced. So, too, the Plaintiff's claim that Defendants were subject to an unwritten rule requiring them to inform customers of the ATF's treatment of the AR1 is contrary to the ATF's own position on the precedential value of their classifications.

4. **When and How Labeling Changed re Red Beard Treasures, etc.**

As Mr. DeMonico testified at the preliminary injunction hearing, the use of the names Red Beard Treasures and Red Barn Tools in the return address on its shipping packages was to avoid theft and preserve customer privacy and related to Rare Breed Triggers' use of the United States Postal Service (USPS) to ship WOTs.  DeMonico Dep. 91:09 – 94:02.  This was necessary because USPS leaves packages out in public while UPS delivers directly to the customer.  Prelim. Inj. Hr'g Tr. 444:14-446:15. The government merely speculates that Rare Breed Triggers used the alternate names as a result of the July 26, 2021, cease and desist letter. This speculation is contradicted by the fact that Rare Breed Triggers continued to use its own name on packaging it shipped via UPS for the 8 months after it received the cease and desist letter.  Prelim. Inj. Hr'g Tr. 524:12-17.

Indeed, it is common for high value products, including firearms, to be shipped in non-descript packaging intended to mislead potential porch pirates.  For example, the high-end shotgun manufacturer Genesis Arms ships its products in packages labeled "Genesis Industrial Sweeper—The Ultimate Broomstick" and pictures a large broom as evidenced by the picture below:



DeMonico Decl. at 3-4, Ex. A.

**5. Rare Breed Triggers' Website December 2022 "Out of Stock" Message Regarding WOTs**

The WOTs were listed as "out of stock" because RBT's e-commerce platform treats the sellers as if they have a shelf of products ready to ship. When the seller has no products ready to ship on their virtual "shelf" the e-commerce platform notes the product is "out of stock." DeMonico Decl. at 4-5.

To be considered on the shelf and ready to ship, the item has to be assembled, boxed, labeled, and able to be sent out, and the seller must be ready and able to accept payment and act on fulfillment. Only items for which all these conditions are met are considered "on the shelf." If the seller tells the system it has at least one item on the shelf, the platform has the web page for the item say that it is "in stock." If the seller tells the system it does not have any items on the shelf, the platform automatically shows on the web page that the item is "out of stock." For these platforms, "out of stock" means that the seller does not have a ready to sell inventory, but the reason why it is not ready to sell isn't stated. "Out of stock" is the standard term used by e-commerce platforms for when a seller does not have items to sell for any reason. DeMonico Decl. at 5.

Thus, "out of stock" on RBT's e-commerce platform does not mean that the seller does not have the physical item itself. It means that RBT had no inventory of WOTs "in stock" on the virtual shelf because they couldn't accept payment for them because they did not have a payment platform after Chase Paymentech cancelled RBT's account. DeMonico Decl. at 4-5. To state the obvious, no customers were defrauded of their funds by not being able to buy a WOT because they thought RBT had none in stock.

### 6. Potential Liability of Rare Breed Triggers, LLC, and Rare Breed Firearms, LLC, Based on Liability of Messrs. Maxwell and DeMonico.

At the August 15, 2023, oral argument, the Court asked the Government "as to how an LLC could have the requisite *mens rea* for purposes of fraud and whether a corporation can be a member of the conspiracy for purposes of the conspiracy, or are you only asking me to find those with respect to the individuals?" Tr. 102-103.
Plaintiff's counsel answered "I don't think this comes up in the scheme part of the claims." Tr. 103. He then proceeded to discuss a hypothetical ("And even if it did . . .") *id.*, that further emphasizes the Plaintiff's preferred distinction between "the scheme part of the claims" and the other claims.

Counsel's answer reflects a distinction made in the Plaintiff's Motion between Count I, the so-called *Klein* conspiracy, and the remaining counts regarding consumer fraud-related claims. In its Motion, the Plaintiff addressed the alleged "scheme" as an element of its allegations of mail and wire fraud. See Mot. Prelim. Inj. (ECF No. 5) at 28 ("To establish the 'scheme to defraud' element for mail and wire fraud, the United States must demonstrate that . . . "). Moreover, in this section of its motion, the Plaintiff describes the companies involved as things created by the "Defendants," not as the perpetrators of the fraud scheme themselves. *Id.* at 32 ("Defendants created a convoluted corporate structure to deliberately avoid a clear accounting of what was being sold."). By contrast, the Plaintiff's analysis of its *Klein* conspiracy allegation does not include any element requiring proof of a "scheme" and the *Klein* conspiracy section of its Motion does not use the word "scheme." *Id.* at 20-27. We therefore take counsel's answer to reflect a principal position that Plaintiff is <u>not</u> alleging that the LLC Defendants committed Mail and Wire Fraud.

To the extent there is any ambiguity in the government's Complaint, Motion, and statements before the court, that ambiguity must be construed in favor of the Defendants in light of the strict requirement that fraud claims must satisfy Rule 9(b)'s standard for particularity. Fed. R. Civ. Pro. 9(b).[3] In cases with multiple defendants, the Plaintiff must specifically describe each defendant's alleged participation in the fraud. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 279 (S.D.N.Y.1990) (Rule 9(b) "is designed to provide the defendant fair notice of the plaintiff's claims, and to enable the defendant to prepare a suitable defense"). "Therefore the complaint cannot generally refer to fraudulent acts by all or some of the defendants because each defendant is entitled to be informed of facts surrounding the allegations so that they may respond." *Center Cadillac, Inc.,* 808 F.Supp. 213, 230 (SDNY 1993). "Plaintiffs must demonstrate that each Defendant had a specific intent to defraud either by devising, participating in, or aiding and abetting the scheme. General allegations that the defendants "conspired" in the scheme do not sufficiently attribute responsibility for fraud to each individual defendant." *Id.* (citations omitted).

---

[3] With the Court's permission, the Defendants' earlier Motion to Dismiss filed by prior counsel was withdrawn. Defendants have not yet answered the Complaint and, therefore, are still permitted to file a future Motion to Dismiss.

Here, the Plaintiff's undifferentiated allegations fail because they do not distinguish between the individual and corporate/LLC defendants as to their particular responsibility. Compl. (ECF No. 1) ¶¶ 195-199; Mot. Prelim. Inj. (ECF No. 5) at 27-35. Given that the Plaintiff bears the burden of proof in this Motion and that burden includes proof of a specific intent by each defendant, vague assumptions that the LLC defendants are vicariously liable for anything done by Messrs. DeMonico and Maxwell, or that a general conspiracy allegation is all that the Plaintiff needs, are insufficient.

And yet, that is what counsel asserted at oral argument, in his hypothetical alternative answer:

> And even if it did, you have to show intent of some of its members, right? Just like any corporation. You have to place the intent on some person. And there, the intent is the -- it can be shown by what Mr. DeMonico or really Mr. Maxwell did, because he's the owner of Rare Breed Triggers and/or Mr. DeMonico with Rare Breed Firearms. And you can have a conspiracy between a corporation and a member of the corporation.

Tr. 103. The specific intent standard as applied to the LLC defendants is not simply "intent of some of its members" or "intent of an owner" or established merely by an unsupported allegation of a conspiracy between an individual and an entity he owns or works for. The Court is not making a final decision on the merits, or a decision on the validity of the Complaint, so the Plaintiff will have a further opportunity to perfect this argument. But now, as to the Plaintiff's instant preliminary motion, the Plaintiff has simply not met its burden on this point.

Merely _implicit_ in the Plaintiff's argument is that the Court should disregard the separate legal personhood of the LLCs and conflate their liability, if any, with that of Messrs. DeMonico or Maxwell, as employees, contractors, or owners/members. Rare Breed Triggers is a North Dakota LLC and Rare Breed Firearms is a Texas LLC. Compl. (ECF No. 1) ¶ 22. The respective state laws of North Dakota and Texas establish that LLCs—limited _liability_ companies—do not share liability with their owners/members as if they were one person. S_ee_ N.D. Cent. Code Ann. § 10-32.1-26; Tex. Bus. Orgs. Code Ann. § 101.114 (West). That's the whole point of forming one.

The Plaintiff's allegations, evidence, and arguments to date are so vague that it is not even clear if, with respect to the two individual defendants and the two LLC defendants, the Plaintiff is alleging (A) the LLCs are vicariously liable for the actions of the individuals (as either a member, officer, or consultant of the LLC); (B) one individual is vicariously liable for the acts of the other individual; or (C) an individual LLC member/owner is liable for the actions of the LLCs (due to the action or collective actions of its member, consultant, or officer).

- For (A), the Plaintiff could have – but did not – allege, introduce evidence, and analyze liability under a theory of RBT's or RBF's vicarious liability for actions committed by an employee within the scope of their employment. _Oliva v. City of New York_, 297 A.D.2d 789, 790, 748 N.Y.S.2d 164, 166 (2002)

- For (B), the Plaintiff could have – but did not – allege, introduce evidence, and analyze liability under negligent supervision.  See *Oviedo v. Weinstein*, 102 A.D.3d 844, 847, 958 N.Y.S.2d 467, 469 (2013), which held that "A shareholder, employee, or officer of a limited liability company is liable only for negligent or wrongful acts "committed by him or her or by any person under his or her direct supervision and control while rendering professional services in his or her capacity as a member, manager, employee or agent of such professional service limited liability company."

- For (C), the Plaintiff could have – but did not – introduce evidence and analyze whether the Court must 'pierce the veil' of an LLC. *Retropolis, Inc. v. 14th St. Dev. LLC*, 17 A.D.3d 209, 210, 797 N.Y.S.2d 1, 2 (2005) ("plaintiff bears a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences" (internal quotation omitted)).

The Court's immediate concern at the hearing seems to be with (A) – an LLC's liability for the actions of an employee. Mr. Maxwell was the owner of Rare Breed Triggers and provided it with legal counsel. Mr. DeMonico was its President.  Liability of RBT for Mr. Maxwell's or Mr. DeMonico's actions would need to be limited to their actions amounting to fraud undertaken with specific intent to deprive customers of their property and also within the scope of their employment, that is, vicarious liability. If the court were to find the evidence supports such findings, RBT would be vicariously liable for their violations.

As to RBF, Mr. Maxwell was not an employee of RBF and there do not appear to be any fraud allegations arising from Mr. DeMonico's actions (or anyone else's) on behalf of RBF, either as to the alleged *Klein* conspiracy or the alleged consumer fraud. The evidence before the Court as to RBF is limited to it merely selling some FRT-15 spare parts, like springs. Accordingly, RBF should not be liable under any count.

Consequently, if the Court were to conclude that Messrs. DeMonico and Maxwell in the course of their official duties for Rare Breed Triggers had an agreement to defraud the Plaintiff or their own customers, there was neither a *Klein* conspiracy nor a conspiracy to commit mail or wire fraud (Counts 1, 4, and 5) by the LLCs or any Defendant.

The Court also asked the Plaintiff to "explain to the extent any injunction, if I grant one, [applies] to the corporate entities." Tr. 103. Based on the foregoing, if the Court were to find that Messrs. Maxwell and DeMonico had the specific intent to defraud the Plaintiff and RBT's customers in the course of their duties for RBT, then RBT could be held vicariously liable for that fraud and ordered

to cease committing fraud while the case is pending a final resolution on the merits. RBF, for the reasons noted above, should not be liable for any of the counts, either directly or vicariously.

### 7. *Cargill v. Garland*

At oral argument there was a brief discussion of *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), and whether FRT-15s are similar to mechanical bump stocks. We highlighted that *Cargill* employed a two-part test: to be a machinegun it must (1) shoot more than one round per single function of the trigger and (2) shoot automatically. 57 F.4th at 462 ("Even if a non-mechanical bump stock caused a semi-automatic rifle to operate by a single function of the trigger, the rifle would still need to operate automatically in order to be a machinegun.").

In addition, mechanical bump stocks "are equipped with springs or other internal mechanical devices that automatically assist the shooter to engage in bump firing. For such a bump stock, the shooter does not have to maintain pressure on the barrel and trigger ledge in order to maintain this firing sequence." *Id.* at 454. The FRT-15 does not operate using a bump firing technique. For the FRT-15, and as even the government admits in paragraph 24 of its proposed findings of fact, there must be a "sufficient" amount of pressure applied so that it can fire. In other words, the pressure applied to the FRT-15 cannot be too little or too much.

As the government's expert has confirmed, if too much pressure is applied to the FRT-15 the gun will not operate. Defs.' Prelim. Inj. Hr'g Ex. U1, Deposition of Anthony Ciravolo (July 14, 2023) ("Ciravolo Dep.")121:24 – 122:6. If pressure is applied but with not enough force, the trigger will move but will not disengage the hammer and will therefore not cause a round to fire. Defs.' Prelim. Inj. Hr'g Ex. U1, Ciravolo Dep. 126:3 – 129:11. "Sufficient" force is required to fire the FRT-15 (in addition to firing only one round per function of the trigger), which further distinguishes it from the bump stock hypothetical posed at oral argument.

Respectfully submitted,

DHILLON LAW GROUP INC.

By: _____/s/_____
David A. Warrington (*pro hac vice*)
Michael A. Columbo (*pro hac vice*)
Josiah Contarino

cc: All Counsel of Record (via ECF)