### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RARE BREED TRIGGERS, LLC, *ET AL.*, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Case No. 1:23-cv-00369-NRM-RML |

### SUPPLEMENTAL BRIEFING

Consistent with the Court's Order dated August 15, 2023, and with discussion during the hearing on August 15, 2023, *see* Hearing Transcript at 105, Defendants submit this additional brief addressing the application of *Ciminelli v. United States*, 143 S.Ct. 1121 (2023), to this case.

### INTRODUCTION

*Ciminelli* is relevant to this case for two reasons.

First, it once again reaffirms that, as a basic matter of statutory interpretation, "the federal fraud statutes criminalize only schemes to deprive people of traditional property interests." *Ciminelli*, 143 S.Ct. at 1124 (citing *Cleveland v. United States*, 531 U.S. 12, 24 (2000)). This holding is irreconcilable with the notion of a *Klein* conspiracy, whereby the object of the conspiracy is not to deprive people of traditional property interests but rather "impair or impede" the functions of government.

Second, *Ciminelli* rejects the "right-to-control theory" of fraud, under which a jury could find that fraud occurred if a putative victim was "'deprived of potentially valuable economic information that it would consider valuable in deciding how to use its assets.'" *Id*, at 1126 (citation omitted). While the government seeks to drape its mail and wire fraud allegations in the cloth of traditional property interests, when critically examined, the crux of the government's

1

allegation is that buyers would have considered it valuable to know additional information about the purported history of the FRT-15 and Wide Open Trigger before purchasing one.  This is an impermissible attempt to reclassify a right-to-control theory as a traditional property interest.

## ARGUMENT

### I.   *Klein* Conspiracies are Irreconcilable with the Text of the Statute

The Plaintiff alleges in Count I that Defendants have violated 18 U.S.C. § 371 because they "knowingly and intentionally conspired to **defraud** the United States by impeding, impairing, obstructing, and defeating the lawful Government functions of the ATF in their regulation of machineguns under the NFA and the GCA, Compl. (ECF No. 1) ¶ 196 (emphasis added), and it moves this Court to issue an injunction based on that allegation. Mot. Prelim. Inj. (ECF No. 5) at 1. That statue states in relevant part that it is an offense "to defraud the United States." 18 U.S.C. § 371.  The words "impeding, impairing, obstructing, and defeating," as pertaining to the lawful functions of the United States or its agencies, or otherwise, appear nowhere in the text of the statute.  The question then is, necessarily, what does it mean to "defraud" the United States.

*Ciminelli* answers this question: "[T]he 'common understanding' of the words 'to defraud' when the statute was enacted referred to 'wronging one in his property rights.'" *Ciminelli*, 143 S.Ct. at 1126 (quoting *Cleveland*, 531 U.S. at 19).[1] As matter of basic statutory interpretation, this understanding of the word "defraud" invalidates the viability of a *Klein* conspiracy—the phrase "to defraud" is textually limited to wrongs related to a property right and

---

[1] The federal mail fraud statute was "first enacted" in 1872. *McNally v. United States*, 483 U.S. 350, 356 (1987). *Ciminelli* noted that the Court has read the mail fraud statute and the wire fraud statute *in pari materia*. *Ciminelli*, 143 S.Ct. at 1126 n.2 (citing *Pasquantino v. United States*, 544 U.S. 349, 355 n. 2 (2005)).  Section 371 was first enacted in 1867, roughly contemporaneously with the mail fraud statute. *See* Act of March 2, 1867, ch. 169,  30, 14 Stat. 484; *see also* Petition for Writ of Certiorari, *Coplan v. United States*, Case No. 12-1299, 2013 WL 1819823 at *10 (U.S. Apr. 26, 2013); Abraham S. Goldstein, *Conspiracy to Defraud the Government*, Yale L. J. 405, 418 (1959) (describing the history of the conspiracy statute).

cannot be extended to vague and amorphous concepts like "impeding" or "impairing" functions of government.[2]

Instead, the extension of the statute to include "impeding," "impairing," *etc*, government functions is an example of an impermissible creation of a federal common law crime.  *See generally United States v. Coplan*, 703 F.3d 46, 61 (2d Cir. 2012) *cert. denied* 571 U.S. 819 (2013) ("The Government thus appears implicitly to concede that the *Klein* conspiracy is a common law crime, created by the courts, rather than by Congress.").  As Justice Scalia previously noted, "the notion of a common-law crime is utterly anathema today . . . ." *Rogers v. Tennessee*, 532 U.S. 451, 476 (2001) (Scalia, J., dissenting).  Rather, "Federal crimes are defined by Congress, not the courts." *United States v. Lanier*, 520 U.S. 259, 267 n.6 (1997).

In seeking to distinguish the term "defraud" in section 371 from its use in the mail and wire fraud statutes, "courts have occasionally implied that a conspiracy to defraud the *Government* is to be read more broadly than a conspiracy to defraud a private person." *Coplan*, 703 F.3d at 61. But there is no textual support for this argument.  The predecessor to section 371 and the current mail fraud statute were both adopted around the same time period, the late 1860s/early 1870s, and both use the same word: defraud.

Instead, this argument appears to be based on policy arguments that there may be reasons for wanting to distinguish fraud upon the government from fraud upon private individuals and principles of constitutional avoidance whereby broad concepts mail and wire fraud statutes implicate federalism concerns in a way that fraud upon the federal government do not.  *See*

---

[2] The government traditionally relies on language in *Hammerschmidt v. United States* that "fraud" against the federal government "also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest" to justify the notion of a *Klein* conspiracy. 265 U.S. 182, 188 (1924). However, this language is dicta; the Court in *Hammerschmidt* actually overturned defendants' convictions. *Id*. at 189 ("We think the demurrer to the indictment in this case should have been sustained and the indictment quashed.").

generally *McNally v. United States*, 483 U.S. 350, 358 n.8 (1987); *see also Coplan*, 703 F.3d at 61 (recognizing the language in *McNally* as "[d]icta" and acknowledging "this conclusion appears to rest on a policy judgment—that in the nature of things, government interests justify broader protection than the interests of private parties—rather than on any principle of statutory interpretation."). These arguments are properly suited for Congressional—not judicial—resolution. If Congress believes it is important to adopt a broader definition of "fraud" for conspiracies against the United States, it can adopt a statute explicitly doing so. It has not done so in section 371.

In *Coplan*, the Court of Appeals for the Second Circuit acknowledged many of these deficiencies in the concept of a *Klein* conspiracy, including its lack of a textual foundation and its creation through federal common law. *See Coplan*, 703 F.3d at 61. However, the court upheld the continuing viability of the *Klein* conspiracy based on the history of its judicial application, stating that arguments about its viability "are properly directed to a higher authority." *Id*.

Since *Coplan*, the Supreme Court has repeatedly reaffirmed a narrow understanding of the term "fraud" that is irreconcilable with the doctrine of *Klein* conspiracy. For example, in *Kelly v. United States*, the Court rejected a creative interpretation of the federal fraud statutes to criminalize the realignment of access to traffic lanes on the George Washington Bridge to create traffic gridlock for political benefit. 140 S.Ct. 1565 (2020). And now, in *Ciminelli*, the Court has once again reaffirmed that it meant what it said before—as a matter of basic statutory interpretation, "fraud" requires "wronging one in his property rights." *Ciminelli*,143 S.Ct. at 1126 (quoting *Cleveland*, 531 U.S. at 19).

4

The government bases its section 371 claim on an allegation that Defendants impaired, impeded, obstructed, and defeated governmental functions. These alleged impacts are not traditional property rights. The government's section 371 claim should therefore fail in light of *Ciminelli*.

## II. The Government's Mail and Wire Fraud Claims are Just a Variation on the Right-to-Control Theory Rejected in *Ciminelli*

People who ordered forced reset triggers from Defendants received forced reset triggers that operated as they expected. As the Court noted, "nobody disputes that the product did what was advertised; meaning, you could install it with minimal skill into a traditional semiautomatic weapon and it would shoot a lot faster if the shooter chose to exercise that option." Prelim. Inj. Closing Arg. Tr. 87:11-15. Defendants' customers got exactly what they asked for.

In order to transform this straightforward transaction into a civil offense, the government claims that Rare Breed Triggers' clients were "defrauded" out of their money based on Defendants' alleged failure to tell their customers purported "key facts," specifically that the ATF determined that the AR-1 is a machinegun, that the FRT-15 purportedly functions similarly to the AR-1, and that Defendants did not seek an ATF classification for the FRT-15. *See* Pla. Mem. of L. in Support of Its Mot. For a Temporary Restraining Order and Preliminary Injunction (ECF No. 5) at 29.

The crux of the government's argument is that Defendants' customers would have found it economically valuable to have more information about the process behind the creation of the FRT-15 and the ATF's view on its legal status before making their purchases. In *Ciminelli*, the District Court "defined 'economically valuable information' as 'information that affects the victim's assessment of the benefits or burdens of a transaction, or relates to the quality of goods or services received or the economic risks of the transaction.'" *Ciminelli*, 143 S.Ct. at 1126

5

(citation omitted). In this case, the government believes Defendants should have provided more information about the benefits or burdens of the transaction and economic risks involved, specifically, the risk of losing property to ATF seizures if the ATF sought to enforce a disputed interpretation of the definition of "machinegun." This is the right-to-control theory by another name.

Moreover, the fact that Defendants hoped to profit through the sale of FRT-15's does not automatically make money the "object" of the alleged fraud. Petitioner in *Ciminelli* hoped to make money by engaging in bid rigging. *See Ciminelli*, 143 S.Ct. at 1125-1126. The crux of the "fraud" was still failing to provide "economically valuable information."

## CONCLUSION

For the foregoing reasons, Plaintiff's fraud claims are foreclosed under the rule set forth in *Ciminelli*, making it unlikely to succeed on the merits of its claims. Therefore, Plaintiff's Motion for Preliminary Injunction should be rejected.

Dated: August 23, 2023, 2023

DHILLON LAW GROUP INC.
A CALIFORNIA PROFESSIONAL CORPORATION

*/s/ David Warrington*
DAVID A. WARRINGTON
(*pro hac vice*)
2121 Eisenhower Avenue
Suite 608
Alexandria, VA 22314
dwarrington@dhillonlaw.com

JOSIAH CONTARINO
50 Park Place, Suite 1105
Newark, NJ 07102
jcontarino@dhillonlaw.com

MICHAEL A. COLUMBO
(*pro hac vice*)
177 Post St., Suite 700
San Francisco, CA 94108
415.433.1700
mcolumbo@dhillonlaw.com

*Attorneys for Defendants*