

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 28, 2023

**By ECF**
Honorable Nina R. Morrison
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Rare Breed Triggers, LLC, et al.*,
No. 23-cv-369 (Morrison, J.) (Levy, M.J.)

Dear Judge Morrison:

This letter responds to certain legal arguments made by Defendants in two filings (ECF Nos. 130, 132) that purport to address issues raised by the Court at the August 15, 2023 oral argument in this case.

First, *Ciminelli v. United States*, 598 U.S. 306 (2023), has no bearing on this matter. The case addressed the scope of the mail and wire fraud statutes, *see* 18 U.S.C. §§ 1341, 1343, and held that they criminalize schemes to deprive others of property. *See Ciminelli*, 598 U.S. at 312. That is precisely what the United States alleges here: Defendants misled their customers to deprive them of money. Such allegations lie at the heart of the mail and wire fraud statutes and nothing in *Ciminelli* suggests otherwise.

Defendants would have this Court re-characterize the United States' allegations to make *Ciminelli* relevant. They suggest that the United States is really alleging that the object of Defendants' mail and wire fraud schemes has been customer "right to control" rather than customer money. That is plainly not true. Defendants are equating the *means* of the fraudulent scheme with the *end* (*object)* of the scheme in a way that is contrary to *Ciminelli*. The Supreme Court held only that, if the object of a fraud is to deprive a victim of information, without more, then that fraud does not fall within the mail or wire fraud statutes. Information *per se* is an intangible interest that is not protected by these statutes. If the defendant carries out the fraud by depriving a victim of information, leading the victim to be deprived of money, then such a fraud is within the mail or wire fraud statutes. The object of such a fraud is money, which is protected by the mail and wire fraud statutes. *Ciminelli* did not hold otherwise; it did not even hint otherwise. That is so because equating the means of a fraud with its end, as Defendants ask this Court to do, would lead to an absurd result in this and all other cases alleging mail or wire fraud. It would suggest that any time a defendant deprives a victim of potentially valuable information such conduct falls outside of the mail and wire fraud statutes. But such conduct can be found in every mail or wire fraud case. It is how fraud is accomplished; a defendant provides mis-information – a lie, an omission, a distortion,

a half-truth – to induce a victim to part with something of value. Were Defendants correct in their reading of *Ciminelli,* then mail and wire fraud would no longer exist.

Defendants' attempt to shoehorn *Ciminelli* into an analysis of their conspiracy to defraud the *United States* in violation of *18 U.S.C. § 371* should also be rejected. Defendants are asking this Court to set aside well-settled law, established in rulings from the Supreme Court on down, that defines the term "defraud" in § 371. *See United States v. Coplan*, 703 F.3d 46, 59-62 (2d Cir. 2012) (discussing that case law beginning with *Haas v. Henkel*, 216 U.S. 462 (1910)). And Defendants are asking this Court to do so based on a case (*Ciminelli*) that does not discuss that precedent – dating back more than a century – let alone discuss § 371 itself. In other words, Defendants are suggesting that the Supreme Court overturned decades of law without even mentioning that law.

That *Ciminelli* is at best a Procrustean fit on the § 371 bed is underscored by the fact that § 371 uses different statutory terms from §§ 1341 and 1343 to address different conduct. The mail and wire fraud statutes at issue in *Ciminelli* are explicit in defining the unlawful conduct as targeting "money and property." 18 U.S.C. §§ 1341, 1343. Section 371 nowhere uses those limiting terms, but instead outlaws fraud against the United States "for any purpose." 18 U.S.C. § 371. In addition, § 371 concerns frauds on the government itself, a singular victim with unique interests that go well beyond "money or property." It is thus little wonder that more than one hundred years of precedent has defined the term "defraud" in § 371 to mean something different from the term "defraud" in §§ 1341 and 1343.[1]

Second, Defendants rightly conceded at the preliminary injunction hearing that *Staples v. United States*, 511 U.S. 600 (1994), answers the question as to what a "single function of the trigger" means. *See id*. at 602 n.1. A single function of the trigger is the same as a single pull of the trigger. Even if the Court were to agree with Defendants' new position that the operative language in *Staples* was not well considered, the language cannot be ignored. The Supreme Court's equating "single function" with "single pull" makes clear that the natural, plain English reading of "single function" is "single pull." That is, as a matter of statutory interpretation, reading "single function" to mean "single pull" is proper.

Third, the rule of lenity has no place here. The rule of lenity is a tool of last resort that a court may use to interpret a statute when the other tools of statutory interpretation leave a court guessing as to what a statute means. *See, e.g.*, *Guedes v. ATF*, 45 F.4th 306, 321-22 (D.C. Cir. 2022). There is no need to resort to the rule here as the usual tools of statutory interpretation make clear that "single function" means "single pull." *See id.*

Fourth, there is no question that Defendants Rare Breed Triggers ("RBT") and Rare Breed Firearms ("RBF") can be – and are – liable for the unlawful acts here. Corporate entities are liable, under criminal statutes, for the conduct of their agents acting within their authority. *See, e.g.*, *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 660 (2d Cir. 1989); *United*

---

[1] Of course, the United States is in fact alleging that Defendants deprived the Government of money – the payment of taxes.

*States v. George F. Fish, Inc.*, 154 F.2d 798, 801 (2d Cir. 1946).[2] Defendants RBT and RBF can – and are – liable here because their agents – Defendants DeMonico and Maxwell – engaged in unlawful conduct while acting within their authority as officers and owners of the LLCs.[3]

Fifth, Defendants' attempt to muddy the conspiracy waters has no support in the record. The evidence establishes that all the key decisions about the sale and marketing of the FRT-15, including the decision to keep selling the product though told that doing so was illegal, were made by agreement among a group of people and entities. That group included Defendants along with Cole Leleux and Michael Register. *See, e.g.*, Plaintiff's Proposed Findings of Fact (Pl.'s FOF), ¶ 91 (discussing the group decision not to seek ATF approval of the FRT-15); ¶ 158 (discussing the group decision to disregard ATF's July 2021 cease and desist letter).[4]

It appears that Defendants may be suggesting that the conspiracy theories here are barred by the "intracorporate conspiracy doctrine," under which certain courts hold that, with respect to civil conspiracies, members of the same corporate entity (e.g., employees or officers) acting within the scope of corporate authority cannot conspire with each other. That doctrine does not apply to criminal statutes, like those at issue here. *See, e.g.*, *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1038-41 (11th Cir. 2000) (discussing doctrine and holding that it did not apply to civil cause of action with criminal statute predicate); *United States v. Basroon*, 38 F. App'x 772, 778 (3d Cir. 2002); *United States v. St. John*, 625 F. App'x 661, 664-65 (5th Cir. 2015). Put another way, agents of a corporate entity (like Defendants DeMonico and Maxwell) can both conspire with each other and with the corporate entity itself (like RBT and RBF). That is precisely what happened.

---

[2] Notably, in *Twentieth Century Fox* and *George F. Fish*, both the corporation and the corporation's agent were liable criminally.

[3] There is no dispute, as far as the United States is aware, that the actions Defendants DeMonico and Maxwell took here were as agents for RBT and RBF, within their authority as officers and owners of RBT and RBF, and for the benefit of RBT and RBF, both of which gained financially from those actions.

[4] Defendants minimize the role of RBF. They state that RBF merely sold some springs. It is true that RBF sold some springs, but those springs were spare parts for the FRT-15 itself. *See* Pl.'s FOF ¶ 3. In addition, Defendants used RBF to post social media marketing content about the FRT-15 for RBT. *See* Prelim. Inj. Hr'g Tr. 523:11-23. RBF did all of this knowing (via Defendant DeMonico) that the sale of FRT-15s was unlawful. That is, RBF supported the unlawful sale of FRT-15s; it was thus part of the overall *Klein* and mail and wire fraud conspiracies. *See, e.g.*, *United States v. Dupree*, 870 F.3d 62, 78 (2d Cir. 2017) (discussing a drug conspiracy and noting that a defendant joins a conspiracy when that defendant knows of the conspiracy and intentionally joins it with the intent to commit the object of the conspiracy, even if the defendant is not aware of all of the conspiracy's details).

The United States thanks the Court for its consideration of this matter.

Respectfully submitted,

BREON PEACE
United States Attorney

By: *\/s/ Michael S. Blume*

Michael S. Blume
David A. Cooper
Paulina Stamatelos
Assistant U.S. Attorneys
(718) 254-6479 / 6228 / 6198
Michael.Blume@usdoj.gov
David.Cooper4@usdoj.gov
Pauline.Stamatelos@usdoj.gov

cc: All Counsel of Record (By ECF)