Contarino Roth LLC
2255 Glades Road, Suite 324A
Boca Raton, FL 33431

Jacob William Roth
561-872-6508
jroth@contarinoroth.com

September 8, 2026

***VIA ECF & EMAIL***

Hon. Nina R. Morrison
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** ***United States of America v. Rare Breed Triggers, LLC et al.*****, Case No. 1:23-cv-00369-NRM-RML**

Dear Judge Morrison:

This firm represents Defendant Rare Breed Triggers in this matter. Pursuant to Rule 5.1.3 of Your Honor's Individual Practice Rules, we submit this letter to respond to the letter requesting a pre-motion conference from Peak Tactical, LLC ("Peak Tactical"). Peak Tactical asks Your Honor to unseal certain docket entries in this Action so it may use them in its ongoing patent litigation with Defendant Rare Breed Triggers, Inc. ("RBT").[1] Defendants oppose Peak Tactical's request in its entirety because it is based on a fundamentally mistaken premise and because the law does not support unsealing the redacted materials.

## I. The records Peak Tactical identifies are irrelevant to its patent litigation with RBT.

There were two main issues before Your Honor during this action. The first issue was whether RBT and the other defendants were misleading customers into believing that purchasing the FRT-15 carried no risk of meeting the legal definition of a machinegun. The other issue, which was predicate to the first, was whether the FRT-15 met the definition of a "machinegun" under 18 U.S.C. § 922(o)(1) .

The FRT-15 is a trigger device that forcibly resets the trigger to its forward, ready-to-fire position after each shot, enabling the user to fire follow-up shots faster than if he had to manually release the trigger between shots. As Your Honor may recall, the United States argued that the FRT-15 met the definition of a machinegun because it enabled the user to fire consecutive rounds without consciously releasing his pull on the trigger; Defendants argued that the FRT-15 did not meet the definition because the trigger resets for each individual round fired. The ATF had previously approved another device called the TacCon 3MR—which is a device that partially resets the trigger after each shot to enable faster follow up shots; though unlike the FRT-15, the TacCon 3MR, which is covered by U.S. Patent No. 9,146,067, does not completely reset the trigger and requires manual release of the trigger before the trigger can reset fully.

[1] RBT is the successor to Defendant Rare Breed Triggers, LLC.

In the current patent infringement litigation against Peak Tactical, RBT asserts that Peak Tactical made a literal copy of RBT's product, which fully resets the trigger, and as a defense, Peak Tactical is now arguing that there is no difference between how the FRT-15 and the TacCon 3MR operate. At the same time, Peak Tactical is misleading its customers into believing that the copied product (1) is covered by the 9,146,067 patent. and, therefore, protected by ATF's prior determination regarding the TacCon 3MR, (2) is covered by Judge O'Connor's ruling in the Northern District of Texas—which Peak Tactical was not a party to—and (3) is protected by RBT's settlement with the government—which Peak Tactical was also not a party to.

At no point during the proceedings before Your Honor did Defendants or the United States ever opine on the underlying, patent-related mechanical design of the TacCon 3MR or compare that design to the FRT-15's. The sole purpose of any references to the TacCon 3MR in this action was with regard to the ATF's classification of the device in comparison to the FRT-15, with no analysis or discussion comparing their patents or mechanisms.

To that point, U.S. Patent No. 9,146,067 is not mentioned in any of the materials identified in Peak Tactical's letter and the TacCon 3MR is only mentioned in passing in some of the materials as a point of comparison to the FRT-15 for the purposes mentioned above:

- ECF Nos. 82 and 82-1 concern excerpts from a deposition of Defendant DeMonico's deposition regarding Defendants' possession of another type of forced reset trigger called the WOT—they contain no mention of the TacCon 3MR or the '067 Patent or the FRT-15's design.
- ECF No. 100 is a letter motion by the United States seeking a protective order prohibiting Defendants from deposing a particular witness—it contains no mention of the TacCon 3MR or the '067 Patent.
- ECF Nos. 104, 124, and 129 and their associated exhibits are filings designating certain excerpts from the depositions of Defendants DeMonico and Leleux and of Jenner Pierson for use in the preliminary injunction hearing Your Honor held on August 1–2, 2023. All of these materials are already publicly available and none of the redacted material was submitted to Your Honor. Of these materials, only ECF No. 124-1 and 124-3 contain passing references to the TacCon 3MR as a product that had been compared to the FRT-15 and as a product that, like the FRT-15, moves the trigger, though only partially resetting it. *See* ECF No. 124-1 186:14–23; 124-3 86:12–19.
- ECF No. 108-1, 108-2, and 108-3 are three declarations that contain no mention of the TacCon 3MR or the '067 Patent and relate to the FRT-15's design only insofar as it is relevant for the machinegun classification. ECF No. 120-1, 120-2, and 120-3 are refiled versions of these same three declarations pursuant to Your Honor's July 27, 2023, order.

Mr. Blume's letter on behalf of the United States, ECF No. 152, reaches the same conclusion: simply put, what Peak Tactical thinks it will find if those records are unsealed is not there. There is no gold for it to mine from them—only protected material belonging to other parties and addressing topics of no relevance to the '067 Patent, all of which was obtained and filed under seal or redacted based on the protective order entered by Your Honor and agreed to by the parties in recognition of the sensitive competitive, personal, tax, and law enforcement information at play in this matter. Accordingly, Peak Tactical's premise for unsealing the records is mistaken and its purported goal will not be achieved by the relief it seeks.

**II. There is no basis warranting unsealing of the records Peak Tactical identifies.**

Peak Tactical's request also fails on the merits. A record may be unsealed only after a three-step analysis is conducted: (1) the Court first determines whether the record is a "judicial document;" (2) then the Court determines the weight of the presumption of public access that should be given to that particular "judicial document" under the circumstances; (3) finally, the Court balances the considerations competing against the presumption of public access. *Conservation Law Found., Inc. v. Shell Oil Co.*, No. 3:21-cv-00933 (VDO), 2026 U.S. Dist. LEXIS 56438, at *11 (D. Conn. Mar. 18, 2026).

**A. Many of the records identified by Peak Tactical are not "judicial documents" subject to public access.**

Under the first step, none of the portions of the deposition transcripts that were redacted—i.e., ECF Nos. 104-1, 104-2, 104-3, 124-1, 124-2, 124-3, 124-4, 129-1, 129-2—are judicial documents because they were not submitted for the Court's consideration in connection with a motion or other judicial action; only the unredacted portions that are already publicly accessible were. A record is only a judicial document if its contents were relevant to the judicial proceedings and used by the Court in taking judicial action, such as deciding a motion or granting relief. *Conservation Law*, No. 3:21-cv-00933 (VDO), 2026 U.S. Dist. LEXIS 56438, at *11–12. The redacted portions of the transcripts obviously do not meet this definition since the Court could not see or consider them. Nor are ECF Nos. 82 and 82-1 judicial documents: ECF No. 82 is only a letter from the United States notifying the Court of certain content from Mr. DeMonico's deposition contained in ECF No. 82-1, which is a redacted excerpt of the transcript. They make no further request of the Court and are unrelated to any further motion or judicial action. While the other records identified by Peak Tactical may arguably be "judicial documents," there is no basis to unseal them under steps two and three.

**B. The balance of competing interests favors leaving the sensitive materials sealed rather than unsealing them solely because Peak Tactical incorrectly thinks it can use them against RBT in unrelated litigation.**

A record's status as a judicial document creates a presumption that the record should be publicly accessible, but the strength of this presumption varies widely depending on the record's role in the proceeding. *Id.* at *6–*7 ("Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995))). While the presumption is highest for records relied on in moving for summary adjudication, it is lower for records filed in connection with discovery disputes. *Id.* at *7. The presumption applied to records "submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower than the presumption applied" to dispositive motions, and the reasons for sealing them "need not be as compelling as those required to seal summary judgment filings." *Id.*; *see also Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) ("[I]f the transcript is filed for purposes of a motion to compel, the presumption that would attach to the transcript would be low.").

"Finally, after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *Amodeo II*, 72 F.3d at 1050). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 72 F.3d at 1050). The Second Circuit has expressly directed "that courts *should* consider personal motives (including an applicant's desire to pursue an 'individual

vendetta') at the third, balancing step of the inquiry, in connection with any asserted privacy interests, 'based on an anticipated injury as a result of disclosure.'" *Mirlis v. Greer*, 952 F.3d 51, 62 (2d Cir. 2020) (citation omitted). Further, the Second Circuit has "instructed courts that weighing '[t]he nature and degree of injury' requires 'consideration not only of the sensitivity of the information and the subject *but also of how the person seeking access intends to use the information*'" and that this consideration "is relevant particularly when an individual, and not a news media organization, seeks copying access to sensitive information," because "personal vendettas 'need not be aided' by the court." *Id.* (citations omitted). The Second Circuit has found that unsealing records is not warranted where a third party's purpose in obtaining the records would only be to use them against one of the parties in a separate context and the disclosure of the records is not relevant to an issue of broader public interest. *Id*. at 63–64.

Here, there is no compelling basis for unsealing the remaining records identified by Peak Tactical under steps two and three of the analysis. The presumption in favor of disclosure for ECF Nos. 100, 108, and 120 is lower because they relate to discovery matters, not dispositive motions. *Conservation Law*, No. 3:21-cv-00933 (VDO), 2026 U.S. Dist. LEXIS 56438, at *7. ECF No. 100 is a letter motion from the United States to prevent the deposition of one of its confidential sources, and ECF Nos. 108 and 120 merely relate to Defendants' filing of certain declarations containing material that was protected from public disclosure by a government privilege or a protective order in another matter.

In the balance of competing considerations regarding their disclosure, the contest is not close. On the one hand is the lower presumption of their public accessibility; on the other hand are all the reasons they were (and should remain) sealed. First, Peak Tactical's only identified interest in unsealing the records is its desire to use them against RBT in unrelated patent litigation—Peak Tactical identifies no general public interest or benefit to their disclosure and only seeks to wield them to RBT's detriment. Not only is this the kind of "personal vendetta" that the Second Circuit has expressly warned courts against aiding, it is also misguided because the records Peak Tactical seeks to unseal are not even relevant for that purpose, as discussed above and in Mr. Blume's letter.

Second, the records were sealed pursuant to the Protective Order entered by Your Honor and agreed to by the parties. The Protective Order specifically recognized that records in this matter concern protected "taxpayer return information" pursuant to 26 U.S.C. § 6103(b)(2), (b)(3) that "may not be disclosed[] except under certain statutorily authorized circumstances," as well as sensitive commercial and personal data and information subject to the law enforcement privilege, and accordingly may be filed under seal. ECF No. 84-1 at 5. These confidentiality interests are compelling and weigh against unsealing. As Mr. Blume explained, the United States' letter motion at ECF No. 100 contains sensitive information about the identity of a confidential informant—unsealing that record could only hamper law enforcement while serving no relevant purpose for Peak Tactical or the public, and ECF No. 108-1[2] is a declaration containing privileged and sensitive information that predates Peak Tactical's patent issues by decades. The declaration at ECF No. 108-2 contains what is likely protected tax information and trade secrets belonging to a third party, Mr. Cooper Rounds, regarding a device that was examined by the ATF, including the ATF's report. *See* 26 U.S.C. § 6103(a); *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 143 (2d Cir. 2016). It also contains sensitive business information about payments RBT has made in conducting its business.

[2] ECF Nos. 108-1, 108-2, and 108-3 are the same documents as ECF Nos. 120-1, 120-2, and 120-3, respectively.

For the above reasons, there is no reasonable basis for granting Peak Tactical's request to unseal and unredact the identified records. They are irrelevant to its stated purpose; many of them contain material that is not subject to public access; Peak Tactical seeks to obtain them only to wield them against RBT; their disclosure serves no public interest; and unsealing them would harm the interests of law enforcement, third parties such as the ATF's informant and Mr. Cooper Rounds, and Defendants. The Court should deny Peak Tactical's request for a pre-motion conference accordingly.

Respectfully submitted,

*/s/ Jacob William Roth*
Jacob William Roth

cc: All Counsel of Record (via ECF)